**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
THE NORTHERN ASSURANCE COMPANY
OF AMERICA and AMERICAN HOME
ASSURANCE COMPANY,

                Plaintiffs,

    - against -                               **08 CV 3289 (CSH) (AJP)**

LAFARGE NORTH AMERICA, INC. and
AMERICAN STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY               **Electronically Filed**
ASSOCIATION, INC.

                Defendants.
------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION TO CONSOLIDATE

NICOLETTI HORNIG & SWEENEY
Wall Street Plaza
88 Pine Street, Seventh Floor
New York, New York 10005
(212) 220-3830

*Attorneys for Plaintiffs*
   *The Northern Assurance Company of America*
   *and American Home Assurance Company*

Of Counsel

John A. V. Nicoletti
Nooshin Namazi
Kevin J.B. O'Malley

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ i

PRELIMINARY STATEMENT ........................................................................................ 1

RELEVANT FACTUAL ALLEGATIONS
AND PROCEDURAL BACKGROUND ......................................................................... 1

    I.    AMERICAN CLUB ACTION ................................................................. 2

    II.   EXCESS ACTION ................................................................................... 4

ARGUMENT .................................................................................................................... 7

   POINT I

   THE TWO ACTIONS INVOLVE
   COMMON QUESTIONS OF LAW AND FACT ................................................... 8

   POINT II

   CONSOLIDATION WILL NOT UNREASONABLY
   DELAY RESOLUTION OF THE AMERICAN CLUB ACTION ......................... 10

CONCLUSION ............................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Devlin v. Transportation Communications Intern. Union*,
  175 F.3d 121 (2d Cir. 1999)........................................................................... 8

*Hanes Cos. v. Ronson*,
  712 F. Supp. 1223 (M.D.N.C. 1988) ............................................................. 7

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990)..................................................................... 7, 8

**Other Authorities**

8 *Moore's Federal Practice*, § 42.10 (Matthew Bender 3d ed.) ................................... 7

**Rules**

Fed. R. Civ. P. 42 ................................................................................................ 7

## PRELIMINARY STATEMENT

Plaintiffs The Northern Assurance Company of America ("Northern Assurance") and American Home Assurance Company ("American Home") submit this Memorandum of Law in Support of their motion to consolidate this action for all purposes with another action pending before the Court, *American Steamship Owners Mutual Protection and Indemnity Association v. Lafarge North America, Inc.*, 06 CV 3123.

## RELEVANT FACTUAL ALLEGATIONS
## AND PROCEDURAL BACKGROUND

Defendant Lafarge North America, Inc. ("Lafarge") is either a defendant or a third-party defendant in several lawsuits pending in Louisiana that arise out of the breakaway of a barge that was at Lafarge's New Orleans, Louisiana facility during Hurricane Katrina in August 2005. It is alleged that the barge, ING 4727, struck and caused, or contributed to, the collapse of the 17th Street Industrial Canal floodwall, thereby causing massive flooding in New Orleans.

Pending before the Court are two declaratory judgment actions concerning questions of Lafarge's right to a defense and indemnity for the claims asserted against it as a result of the breakaway barge.[1] The first is an action brought in April 2006 by American Steamship Owners Mutual Protection and Indemnity Association (the "American Club" or the "Club") against Lafarge entitled *American Steamship Owners Mutual Protection and Indemnity Association v. Lafarge North America, Inc.*, 06 CV 3123 (the "American Club Action"). The second is the instant action brought in April 2008 by Northern Assurance and American Home against Lafarge and the American Club (the "Excess Action"). The matter in controversy in both actions relates to demands by Lafarge – under primary liability coverage provided through the American Club

---

[1] A third declaratory judgment action pending before the Court concerning the same questions, *New York Marine and General Insurance Company v. Lafarge North America, Inc.*, 05 CV 9612, is not implicated by the motion to consolidate.

and under an excess liability policy of insurance issued by Northern Assurance, American Home and non-party New York Marine and General Insurance Company ("NYMAGIC") – for defense costs and indemnification in respect of the claims arising out of the breakaway of the Barge ING 4727.

## I.       AMERICAN CLUB ACTION

Lafarge was a member of the American Club in August 2005. *See* Exhibit "4" ("American Club Complaint") to Declaration of John A.V. Nicoletti in Support of Motion to Consolidate ("Nicoletti Decl.") at pp. 3-4 ¶¶ 11 & 12; Exhibit "5" ("Lafarge II Answer") to Nicoletti Decl. at p. 3 ¶ 12. Lafarge has claimed coverage through its membership in the American Club for its potential liability arising from Hurricane Katrina. *See* Lafarge II Answer at p. 4 ¶ 30; American Club Complaint at p. 7 ¶ 30. The American Club has denied that Lafarge is entitled to coverage. *See* American Club Complaint at p. 7 ¶ 31; Lafarge II Answer at p. 5 ¶ 31. The Club brought the American Club Action seeking a declaration that it is not obligated to defend or provide cover to Lafarge for the Hurricane Katrina claims. *See* American Club Complaint at pp. 1-2 ¶ 1.

"Lafarge's Certificate of Entry contains a Schedule of Vessels that Lafarge entered with the Club. The Barge ING 4727 was never listed on any Schedule of Vessels for Lafarge's entry with the Club." American Club Complaint at p. 4 ¶ 13; Lafarge II Answer at 3 p. ¶ 13. The American Club alleges that the Barge ING 4727 is not covered through the American Club. *See* American Club Complaint at pp. 4-5 ¶¶ 13-15, p. 6 ¶ 27 & pp. 7-8 ¶¶ 36-40. Even if the barge had been insured pursuant to Lafarge's Certificate of Entry, the Club asserts that coverage is excluded pursuant to the terms of the Club's Rules. *See id*. at pp. 1-2 ¶ 1 & pp. 8-9 ¶¶ 44 & 47-50. The Club first alleges that coverage is excluded under the "other insurance" clause contained

within the American Club rules "because Lafarge's liability for the breakaway of Barge ING 4727 is covered by" a primary policy issued by NYMAGIC.[2]  *Id*. at p. 9 ¶ 47.  The American Club also alleges that coverage is "excluded because Lafarge did not provide for review or obtain the Club's approval for" the agreement under which Lafarge utilized the Barge ING 4727 (the "Transportation Agreement"), which was allegedly required by the American Club rules before cover would attach.  *Id*. ¶ 48.

The American Club asserts two causes of action in its complaint.  First, it asserts that Lafarge cannot obtain cover from the Club for the Barge ING 4727.  *See id*. at pp. 7-8 ¶¶ 35-42.  Second, the American Club asserts that, even if the Barge ING 4727 could be covered through the Club, coverage is excluded under the Club's rules.  *See* American Club Complaint at pp. 8-9 ¶¶ 43-51.  In sum, "the Club maintains that it does not cover any of Lafarge's liabilities or defense costs arising from the breakaway of Barge ING 4727."  *Id*. at p. 7 ¶ 33.

Lafarge has denied that the American Club is entitled to the relief it seeks in its two causes of action.  *See* Lafarge II Answer at pp. 5-6 ¶¶ 35-51.  In addition, Lafarge has asserted two counter-claims against the American Club.  In the first, Lafarge alleges that it "has incurred significant legal expenses and litigation costs . . . in connection with the investigation and defense of claims asserted against it in connection with Hurricane Katrina ("Katrina claims")" for which the American Club is required to indemnify Lafarge.  *Id*. at p. 8 ¶ 61.  Lafarge further alleges that the American Club has breached its obligations "by failing to pay for and/or indemnify [Lafarge] for any of its recoverable legal expenses arising from the Katrina claims, despite [Lafarge's] due demand."  *Id*. ¶ 62.  In the second counter-claim, Lafarge "maintains that

---

[2] This allegation is easily disposed of by examination of the "other insurance" clause contained in the NYMAGIC policy *vis-à-vis* the "other insurance" clause in the Club rules.  Such an examination would reveal that, as between the two, the coverage through the American Club would be primary to that provided under the NYMAGIC policy.

3

the American Club is required to defend and indemnify [Lafarge] for any liability and expense arising from the defense of the Katrina claims . . . ." *Id.* at p. 9 ¶ 65. Lafarge alleges that the "American Club has wrongfully denied coverage for [Lafarge's] defense costs and potential liability arising from the defense of the Katrina claims asserted against it." *Id.* ¶ 66. Lafarge contends that it "is entitled to a judgment declaring that the American Club is obligated to indemnify [Lafarge] for any future defense costs incurred in defending the Katrina claims and for any liability [Lafarge] may have to third-parties as a result of the Katrina claims." Lafarge II Answer at p. 9 ¶ 68. The American Club has denied the allegations in Lafarge's counter-claims. *See* Exhibit "6" to Nicoletti Decl.

## II.    EXCESS ACTION

Northern Assurance and American Home (the "Excess Underwriters"), together with NYMAGIC, subscribed to an Excess Marine Liability Policy issued to Lafarge for the period from May 1, 2005 to May 1, 2006 with an insured limit of $45 million (up to $50 million under certain circumstances) excess of $5 million for any one accident or occurrence (the "Excess Policy"). *See* Exhibit "1" ("Excess Complaint") to Nicoletti Decl. at p. 9 ¶ 39.

As a true excess policy, the Excess Underwriters allege that the Excess Policy required that Lafarge maintain certain "Underlying Insurance" that is set forth in the policy. *See id.* ¶ 44. The Excess Policy provides, in relevant part:

    11.    <u>MAINTENANCE OF UNDERLYING INSURANCE</u>:

            A.    It is a condition of this policy that the Section(s) or Policy(ies) referred to below in the "Schedule of Underlying Insurance" shall be maintained in full effect during the currency of this insurance except for any reduction of the aggregate limit(s) contained therein solely by payment of claims in respect of accidents and/or occurrences, occurring during the term of this Policy.

4

> B.    Inadvertent failure of the Assured to comply with Paragraph A
> above or inadvertent failure to notify this Company of any changes
> in the Underlying Insurances shall not prejudice the Assured's
> rights of recovery under this Policy, but in the event of such
> failure, this Company to be liable only to the same extent as they
> would have been had the Assured complied with the said
> condition.

*Id*. at pp. 21-22 ¶ 84.  The Excess Underwriters allege that Lafarge's entry in the American Club,

with a limit of at least $1 billion, is listed as an "Underlying Insurance" in the Excess Policy.  *See*

*id*. at p. 9 ¶ 46.

The Excess Underwriters assert, among other things, that the American Club "has

wrongfully declined [Lafarge's] demand for payment of defense costs and indemnification under

the Certificate of Entry and Club Rules."  *Id*. at p. 9 ¶ 38.  The Excess Underwriters further

contend that if the American Club is permitted to maintain its wrongful denial of Lafarge's claim

for defense costs and possible indemnification, the Excess Underwriters, together with

NYMAGIC, will sustain damage by Lafarge's pursuit of coverage under the Excess Policy.  *See*

Excess Complaint at p. 17 ¶ 64.

The Excess Underwriters brought the Excess Action seeking a declaration that, *inter alia*,

coverage for defense costs and indemnity for the Hurricane Katrina claims exists under Lafarge's

membership in the American Club.[3]  The Excess Underwriters also seek a declaration that they

are not obligated to pay defense costs or to indemnify Lafarge until all primary policies have

responded up to their respective limits.  *See id*. at p. 2 ¶ 3.  The Excess Underwriters assert four

causes of action in their complaint, three of which have questions of law and fact in common

with those to be decided in the American Club Action.

---

[3] The action was filed with the consent of the lead excess underwriter, NYMAGIC.  *See* Nicoletti
Decl. at p. 2 ¶ 3.

In the first cause of action, asserted against the American Club, the Excess Underwriters allege that Lafarge "has complied with all necessary conditions under the Certificate of Entry for coverage to attach on the Barge ING 4727 under the liability insurance provided by the Club Rules and the Certificate of Entry." *Id*. at p. 20 ¶ 76. The Excess Underwriters further allege that the American Club's contention that coverage is excluded is invalid. *See id*. p. 21 ¶ 82. The Excess Underwriters seek a judgment declaring, *inter alia*, that the American Club must provide a defense and indemnification to Lafarge for the Hurricane Katrina claims. *See id*. ¶ 77.

In the second cause of action, asserted against Lafarge, the Excess Underwriters seek a judgment declaring that, if Lafarge failed to comply with the requirements necessary to bring the Barge ING 4727 within the scope of the coverage provided through the American Club, such failure relieves the subscribers to the Excess Policy of any obligation to make payment to Lafarge until such time as the amount that would have been covered through the Club is exhausted as if coverage under the Club Rules and the Certificate of Entry were, in fact, in full force and effect. *See* Excess Complaint at p. 22 ¶ 85. In other words, the subscribing underwriters to the Excess Policy should not be required to pay under the Excess Policy until an amount equivalent to the full amount of coverage provided through the American Club has been paid by Lafarge. *See id*. ¶ 86.

In the fourth cause of action, which is asserted against both Lafarge and the American Club, the Excess Underwriters allege that the Excess Policy is excess to both the primary policy issued by NYMAGIC and the coverage provided through the American Club. *See id*. at p. 26 ¶ 105. The Excess Underwriters seek a judgment declaring that the coverage afforded under the

Excess Policy is not triggered until the limits of liability afforded under the NYMAGIC policy and through the American Club are fully exhausted.  *See id.* ¶ 107.[4]

The American Club and Lafarge have denied that the Excess Underwriters are entitled to the relief they seek in their four causes of action.  *See* Exhibits "2" & "3" to Nicoletti Decl.

## ARGUMENT

Rule 42(a) of the Federal Rules of Civil Procedure provides that if "actions before the court involve a common question of law or fact, the court may . . . consolidate the actions."  Fed. R. Civ. P. 42(a)(2).  "Common questions of law and fact do not have to predominate.  All that is required is that the district court find they exist and that consolidation will prove beneficial."  8 *Moore's Federal Practice*, § 42.10[1][b] (Matthew Bender 3d ed.) (citing *Hanes Cos. v. Ronson*, 712 F. Supp. 1223, 1230 (M.D.N.C. 1988)).

The Court "has broad discretion to determine whether consolidation is appropriate.  In the exercise of discretion, courts have taken the view that considerations of judicial economy favor consolidation."  *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990) (citations omitted).  When exercising its discretion, the United States Court of Appeals for the Second Circuit has stated that the Court must consider:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

---

[4] In the third cause of action, which is asserted against Lafarge, the Excess Underwriters seek a judgment declaring that Lafarge "has no right to seek reimbursement for the past and/or future payments to be made to those counsel which were separately retained by [Lafarge] without the consent of, and/or without consultation with, its primary and excess insurers."  Excess Complaint at p. 25 ¶ 100.

*Id.* at 1285 (citations omitted).  Rule 42(a) "should be prudently employed as 'a valuable and important tool of judicial administration,' invoked to 'expedite trial and eliminate unnecessary repetition and confusion.' "  *Devlin v. Transportation Communications Intern. Union*, 175 F.3d 121, 130 (2d Cir. 1999) (citations omitted).

## POINT I

### THE TWO ACTIONS INVOLVE COMMON QUESTIONS OF LAW AND FACT

It cannot be disputed that the two actions involve common questions of fact.  Indeed, the actions arise out of the same set of facts.  Lafarge's demands for a defense and indemnity for the Hurricane Katrina claims, whether made under the coverage provided through the American Club or under the Excess Policy, all arise out of the breakaway of the Barge ING 4727.

Similarly, both actions share common questions of law.  The paramount question in both is who must pay defense costs and in what order.[5]  The answer to that question in the American Club Action will directly impact the rights and obligations of the Excess Underwriters.  In fact, the determinations made in the American Club Action will implicate the claims made by the Excess Underwriters in the Excess Action because the Excess Underwriters' first two causes of action turn on determinations to be made in the American Club Action.

In the American Club Action, the Club alleges that it does not cover any of Lafarge's defense costs or liabilities arising from the breakaway of Barge ING 4727.  In the first instance, the Club alleges that the Barge ING 4727 is not a covered vessel because it was never listed on any Schedule of Vessels for Lafarge's entry with the Club and because Lafarge cannot otherwise obtain cover for the barge under Lafarge's Certificate of Entry.  *See* American Club Complaint at

---

[5] The issue of indemnity must await the final outcome of the underlying Hurricane Katrina claims.

pp. 4-5 ¶¶ 12-15 & pp. 7-8 ¶¶ 35-42.  Even if the Barge ING 4727 were a covered vessel, the American Club maintains that coverage for the barge is excluded either because Lafarge's liability is covered by another insurance policy (*i.e.*, the primary policy issued by NYMAGIC) or because Lafarge failed to provide the Transportation Agreement to the Club for its review and approval.  *See id.* at pp. 6-7 ¶¶ 16-22 & pp. 8-9 ¶¶ 43-51.

Regardless of who prevails in the American Club Action, the resolution of the coverage questions raised therein will directly and fundamentally impact the coverage potentially provided under the Excess Policy.  If the American Club prevails and it is determined either that there is no coverage or that coverage is excluded, then Lafarge will have failed to maintain one of the underlying insurances required by the Excess Policy and the Excess Underwriters will be liable only to the same extent as they would have been had Lafarge complied with the "Underlying Insurance" condition.  On the other hand, if Lafarge prevails and coverage through the Club is found to exist, then the question arises of who pays first – the American Club or the Excess Underwriters.  The Club rules and the Excess Policy each contain an "other insurance" clause, the interpretation of which will be necessary to determine the stacking of the subject policies. *See* Excess Complaint at p. 8 ¶ 36 & p. 10 ¶ 47.

Consolidation of the two actions is warranted.  In light of the vast commonality of the facts and issues in the two actions, consolidation will reduce the burden on the parties, the witnesses and the Court.  Compared with multiple lawsuits and trials, consolidation will also conserve judicial resources and minimize the relative expense to the parties.

**POINT II**

**CONSOLIDATION WILL NOT UNREASONABLY
DELAY RESOLUTION OF THE AMERICAN CLUB ACTION**

Consolidation of the two actions will not unreasonably delay the resolution of the American Club Action. The Excess Underwriters acknowledge that factual discovery has closed in the American Club Action. Nonetheless, the Excess Underwriters represent that only a moderate extension of discovery will be required to allow for the Excess Action to proceed on a consolidated basis with the American Club Action. *See* Nicoletti Decl. at p. 2 ¶ 4. Much of the discovery relating to the Excess Underwriters' first two causes of action will likely already have been taken in the American Club Action because those causes of action stem directly from the claims and counter-claims made in the American Club Action. As to the fourth cause of action, concerning the stacking of coverage, it is anticipated that little discovery will be required as the stacking issue is a legal rather than factual question.

To assist in the exchange of the existing discovery material as soon as possible, counsel for Lafarge and the American Club have been advised that the Excess Underwriters are prepared to execute the necessary confidentiality agreement by and among Lafarge and the American Club. *See id*. ¶ 5. Such an expedited production of documents (including deposition transcripts and other discovery that already has been exchanged between the American Club and Lafarge) will assist in expediting the discovery process.

<u>**CONCLUSION**</u>

For the foregoing reasons, the instant action should be consolidated for all purposes with the *American Steamship Owners Mutual Protection and Indemnity Association v. Lafarge North America, Inc.*, 06 CV 3123.

Dated: May 16, 2008
      New York, New York

                              NICOLETTI HORNIG & SWEENEY

                              *Attorneys for Plaintiffs*
                                  *The Northern Assurance Company of America*
                                  *and American Home Assurance Company*

                  By:    <u>/s John A. V. Nicoletti           </u>
                                John A. V. Nicoletti
                                Wall Street Plaza
                                88 Pine Street, Seventh Floor
                                New York, New York 10005
                                (212) 220-3830

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK        )
                                            : SS.:
COUNTY OF NEW YORK  )

KEVIN I. BROWN, being duly sworn, deposes and says:

1.        I am employed by the firm of NICOLETTI HORNIG & SWEENEY, attorneys

for Plaintiffs.  I am not a party to this action, am over 18 years of age and reside in Brooklyn,

New York.

2.        On **May 16, 2008**, I served a copy of the annexed **MEMORANDUM OF**

**LAW IN SUPPORT OF PLAINTIFFS' MOTION TO CONSOLIDATE** upon the

following:

HILL, RIVKINS & HAYDEN
45 Broadway
New York, New York  10006
Attorneys for Lafarge North America, Inc.

THACHER PROFITT & WOOD, LLP
Two World Financial Center
New York, New York  10281
Attorneys for American Steamship Owners Mut. P&I Assoc., Inc.

by leaving a true copy of the above-named document at the respective offices of the above-
named law firms.

_____
KEVIN I. BROWN

Sworn to before me this
16th day of May, 2008

_____
Notary Public

VALERIE A. CLUNE
Notary Public, State of New York
No. 01CL4880479
Qualified in Queens County
Certificate Filed in New York County
Commission Expires Dec. 15, 20_10_