**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THE NORTHERN ASSURANCE COMPANY OF
AMERICA and AMERICAN HOME ASSURANCE
COMPANY,

                                Plaintiffs,

           - against -

LAFARGE NORTH AMERICA, INC. and
AMERICAN STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY ASSOCIATION,
INC.,

                            Defendants.

**ECF CASE**

Case No.: 08 CV 3289 (CSH) (AJP)

**AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY
ASSOCIATION, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO
MOTION TO CONSOLIDATE AND IN SUPPORT OF CROSS-MOTION TO STAY**

THACHER PROFFITT & WOOD LLP
Two World Financial Center
New York, New York 10281
(212) 912-7400
John M. Woods
Alan F. Kaufman
Jennifer S. Kozar

*Attorneys for American Steamship Owners
Mutual Protection and Indemnity
Association, Inc.*

## **TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ................................................................................... i

PRELIMINARY STATEMENT ............................................................................. 1

FACTUAL BACKGROUND .................................................................................. 3

I.         Lafarge's Insurance Coverage ................................................................. 3

        A.     Marine Liabilities and Wharfinger's Coverage ........................... 3

        B.     P&I Cover ....................................................................................... 4

II.        The American Club's Declaratory Judgment Action ................................ 5

III.       The Instant Action by Plaintiff Underwriters ........................................... 5

ARGUMENT .......................................................................................................... 7

POINT I     THE MOTION TO CONSOLIDATE SHOULD BE DENIED ............................. 7

        A.     Common Questions of Law and Fact Do Not Predominate
                Between the American Club's Action Against Lafarge and
                the Captioned Matter.................................................................... 7

        B.     Consolidation Would Unreasonably Delay the Resolution
                of the American Club's Action Against Lafarge and
                Prejudice the American Club ....................................................... 8

              1.     Plaintiff Underwriters' Attempts to Litigate the  First Cause
                      of Action in the Captioned Matter Could Only Cause Delay ......... 8

              2.     The Remaining Causes of Action Will Likely
                      Require a Significant Amount of Discovery ................................ 10

POINT II    THE CAPTIONED MATTER SHOULD BE STAYED PENDING
           THE OUTCOME OF THE AMERICAN CLUB'S ACTION AGAINST
           LAFARGE ................................................................................................... 11

        A.     Plaintiff Underwriters' Interests Will Not Be Prejudiced by
                Staying Their Action Against the American Club ...................... 12

              1.     Plaintiff Underwriters May Have Actually Delayed the
                      Declaration They are Seeking in their First Cause of Action ....... 12

2.    Plaintiff Underwriters' Fourth Cause of Action is not yet Ripe for Resolution, and They Will Not be Prejudiced by a Stay. ..................................................................................13

B.    The American Club Will be Significantly Burdened Unless the Instant Action is Stayed ..................................................................14

C.    Interests of the Courts and the Public Interest Weigh In Favor of Granting a Stay...........................................................15

D.    Interests of Non-Parties Supports an Expedient Resolution to  the American Club Coverage Issues and, Therefore, Favors a Stay ......................................................................................16

CONCLUSION.................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

*Bank of Montreal v. Eagle Assocs.*, 117 F.R.D. 530 (S.D.N.Y. 1987) ............................................ 7

*Bellefonte Reinsurance Co. v. Aetna Cas. & Sur. Co.*,
    590 F. Supp. 187 (S.D.N.Y. 1984) .................................................................................. 13

*Certain Underwriters at Lloyds, London v. St. Joe Minerals Corp.*,
    90 F.3d 671 (2d Cir. 1996) .............................................................................................. 13

*Garfinkle v. Arcata Nat'l Corp.*, No. 72 Civ. 5344, 1974 WL 389
    (S.D.N.Y. April 17, 1974) ......................................................................................... 7, 8

*HMT, Inc. v. Bell BCI Co.*, No. 06-CV-6193T, 2007 WL 295328
    (W.D.N.Y. Jan. 30, 2007) .............................................................................. 13, 14, 15-16

*Kappel v. Comfort*, 914 F. Supp. 1056 (S.D.N.Y. 1996) ............................................... 11, 15

*Landis v. North American Co.*, 299 U.S. 248 (1936) ........................................................ 11

*Mills v. Beech Aircraft Corp.*, 886 F.2d 758 (5th Cir. 1989) .............................................. 9

*Regions Bank v. Wiedner & Mastroianni, P.C.*, 170 F. Supp. 2d 436 (S.D.N.Y. 2001) ............. 15

*Rosenfeld v. Schwitzer Corp.*, 251 F. Supp. 758 (S.D.N.Y. 1966) ................................... 11

*Transeastern Shipping Corp. v. India Supply Mission*, 53 F.R.D. 204 (S.D.N.Y. 1971) ........... 8, 9

*U.S. Underwriters Ins. Co. v. Kum Gang, Inc.*, 443 F. Supp. 2d 348 (E.D.N.Y. 2006) ............... 13

## <u>RULES</u>

FED. R. CIV. P. 42 .......................................................................................................... 7

American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "American Club"), by and through its attorneys Thacher Proffitt & Wood LLP, hereby submits this Memorandum of Law in opposition to the motion to consolidate filed by Northern Assurance Company of America and American Home Assurance Company (collectively, "Plaintiff Underwriters"), which seeks to consolidate the captioned matter with a declaratory judgment action filed by the American Club in April 2006, *American Steamship Owners Mutual P&I Ass'n v. Lafarge North America, Inc.* (06 Civ. 3123). This Memorandum of Law is also filed in support of the American Club's cross-motion to stay the instant action (as against the American Club only) pending resolution of that declaratory judgment action brought against Lafarge North America, Inc. ("Lafarge").

## PRELIMINARY STATEMENT

Consolidation is not warranted because the captioned matter and the American Club's action against Lafarge are distinct lawsuits, with separate factual predicates and legal theories. Moreover, and perhaps more importantly, consolidation will cause significant delays in the American Club's over two-year old action against Lafarge, in which fact discovery is now closed.

Plaintiff Underwriters do not and cannot dispute that Lafarge's excess wharfinger's liability insurance covers Lafarge for the liabilities arising from the breakaway of the Barge ING 4727. In contrast, the American Club disputes that it provides cover at all for the Barge ING 4727 under the terms of Lafarge's entry with the American Club. Therefore, the two actions relate to two different insurance policies and two distinct positions under those policies, which renders consolidation inappropriate, even putting aside the delay that would be caused with respect to the existing litigation by the American Club against Lafarge.

There can be no doubt that the delay to the pending action would be significant and unnecessary. Plaintiff Underwriters' first cause of action asserted against the American Club[1] --- that Lafarge's Certificate of Entry covers the Barge ING 4727 -- is the exact issue on which the American Club bases its declaratory judgment action against Lafarge. That action is well advanced, with fact discovery now closed and expert discovery soon to be completed.

Moreover, there is no need for Plaintiff Underwriters either to join in that action or litigate the issue anew. There is no suggestion that Lafarge is not adequately defending the action, and indeed the litigation has been vigorous. Lafarge, as the assured, is far better positioned to litigate the issue of its own coverage, and thereby protect any interest of Plaintiff Underwriters. Thus, the American Club's declaratory judgment action should simply be permitted to go forward and determine the issue of the American Club's obligations to Lafarge, if any.

As for Plaintiff Underwriters' second claim against the American Club,[2] Plaintiff Underwriters allege that, assuming the American Club covers Lafarge's liabilities, the American Club's "Other Insurance" clause renders Plaintiff Underwriters' coverage excess to any coverage provided by the American Club. This claim, concerning the stacking of coverages as between those policies, is entirely dependent on the outcome of the American Club's action against Lafarge. If the American Club does not cover Lafarge for the liabilities arising from the breakaway of the ING 4727, there is decidedly no claim by Plaintiff Underwriters against the American Club. Thus, the American Club should not be forced to litigate an issue which may be entirely moot.

---

[1]    The first cause of action in the captioned matter, ¶¶ 65 to 82.

[2]    The fourth cause of action in the captioned matter, ¶¶ 101 to 107.

Not only should these matters not be consolidated, the captioned matter should be stayed as against the American Club pending the outcome of the American Club's declaratory judgment action, on the bases of judicial economy, as well as efficiency.

## FACTUAL BACKGROUND

I.    Lafarge's Insurance Coverage

The barge for which Lafarge has sought cover, Barge ING 4727, was not owned by Lafarge, but was owned and operated by Ingram Barge Company ("Ingram"). Pursuant to a transportation agreement dated December 14, 2004 between Lafarge and Ingram (the "Transportation Agreement"), Ingram agreed during calendar year 2005 to transport approximately 160,000 net tons of cement in covered barges from Lafarge's Joppa, Illinois plant to its New Orleans facility. It has been alleged that the Barge ING 4727, one of the barges Ingram used to transport Lafarge's cement under the Transportation Agreement, was moored at Lafarge's New Orleans facility on the date of Hurricane Katrina in August 2005. It has been further alleged that, during the hurricane, the ING 4727 broke away from her moorings and breached the Industrial Canal Levee. Accordingly, claims have been asserted against Ingram and Lafarge, in addition to their respective insurers pursuant to the Louisiana direct action statute.

A.    Marine Liabilities and Wharfinger's Coverage

Prior to August 2005, Lafarge had purchased a primary marine liability policy with a limitation of $5 million from New York Marine and General Ins. Co. ("NYMAGIC"), which covers, among other risks, wharfinger's liability. Lafarge has made a claim under this policy for its liabilities arising from the breakaway of the ING 4727 and NYMAGIC has accepted in principle that the claim is covered. However, and as the Court is aware, NYMAGIC has filed a declaratory judgment action against Lafarge seeking a ruling as to the scope of its obligation to

pay defense costs, and in particular its obligation to pay for Lafarge's chosen defense counsel, which action is currently pending before this Court.[3]

Lafarge also obtained an excess liability policy for its marine liabilities, which follows the primary policy. The excess policy apparently provides $45 million in cover above the $5 million primary limit for wharfinger's liability, for total wharfinger's liability coverage up to $50 million. The excess policy is led by NYMAGIC, which underwrites forty percent of the risk. The remaining sixty percent is insured by the Northern Assurance Company of America (25%) and American Home Assurance Company (35%).[4]

B.     P&I Cover

Lafarge has been a member of the American Club since February 20, 1999. Lafarge's Certificate of Entry with the American Club contains a Schedule of Vessels which specifically identifies the vessels that Lafarge insured with the American Club. The Barge ING 4727 is not listed on the Schedule of Vessels, nor are any Ingram barges. (*See* Lafarge's 2005/2006 Certificate of Entry, attached as Exhibit A to the Declaration of Alan F. Kaufman dated June 5, 2008, at pp. 7-9.)

Recognizing that the ING 4727 is not included in the Schedule of Vessels, Lafarge has asserted that cover for the ING 4727 arises out of the "Chartered Barges" clause contained in its Certificate of Entry with the American Club, which provides in part:

> If Lafarge Corporation et al acquires an <u>insurable interest in any vessel in addition to or in substitution for those set forth herein, through purchase, charter, lease or otherwise, such insurance as is afforded hereunder to any similar vessel</u> shall automatically cover such additional vessel effective from the date and time the Assured

---

[3]     *New York Marine and General Insurance Co. v. Lafarge North America, Inc.* (05 Civ. 9612) (CSH).

[4]     Plaintiff Underwriters have not provided a copy of the excess marine liability policy to the Court or attached it to any pleading, correspondence or their motion to consolidate. Accordingly, the American Club's understanding as to the limit and participation of the excess marine liability policy comes from the representations by Plaintiff Underwriters' counsel to the Court at the conference held on May 12, 2008.

> acquires an insurable interest in such additional vessel. With
> respect to a chartered, leased or similarly acquired vessel, the
> insurance hereunder automatically includes the owner as an
> additional Assured with waiver of subrogation against the owner, if
> required, effective from the date and time such vessel is insured
> hereunder.

(*Id.*, at p. 5 (emphasis added).)  The American Club has denied that Lafarge may insure the ING

4727 under the quoted clause because the ING 4727 was not chartered by Lafarge and because

none of the pertinent conditions under the clause were satisfied with respect to the Barge ING

4727.

II.    The American Club's Declaratory Judgment Action

In April 2006, the American Club filed a declaratory judgment action against Lafarge,

seeking a determination as to whether the terms of Lafarge's entry with the American Club can

be extended to cover the Barge ING 4727, or if insured by the American Club, whether coverage

is nonetheless excluded.  The deadline for fact discovery in this action has now passed, with

expert discovery set to close in approximately one month.  In this action, approximately 18,000

pages of documentation have been produced and twelve depositions have been taken.

III.   The Instant Action by Plaintiff Underwriters

On or about April 2, 2008 -- almost two years after the American Club filed its action

against Lafarge -- Plaintiff Underwriters filed the instant lawsuit against Lafarge and the

American Club.  Plaintiff Underwriters' Complaint contains four causes of action, which are

summarized as follows:

- First Cause of Action - asserted against the American Club and seeks a
  declaration that the American Club covers Lafarge for the liabilities arising from
  the breakaway of the ING 4727 (¶¶ 65-82);

- Second Cause of Action - asserted against Lafarge and seeks a declaration that, in
  the event Lafarge does not have cover from the American Club, the full amount of
  the American Club's policy limits become Lafarge's self-insured retention (¶¶ 83-
  86);

5

- Third Cause of Action - asserted against Lafarge and seeks a declaration that Lafarge has no right to seek reimbursement for past and/or future payments to be made to those counsel that were retained by Lafarge without the consent of its primary and excess insurers (¶¶ 87-100); and

- Fourth Cause of Action - asserted against the American Club and Lafarge, and seeks a declaration that, by virtue of the "Other Insurance" clauses contained in the primary marine liability policy, the excess marine liability policy and the American Club's cover, the excess marine liability policy is excess to the American Club cover and the primary marine policy (¶¶ 101-107).

The first cause of action is identical to the claims which are being litigated between the American Club and Lafarge. Meanwhile, the fourth cause of action, which is the only other cause of action against the American Club, concerns the stacking of coverages as between the American Club's cover and the excess marine liability policy. This cause of action is new, and whether it must be decided is dependent on the outcome of the American Club's declaratory judgment action against Lafarge.

Although the American Club and Lafarge have engaged in extensive discovery with regard to whether the American Club covers Lafarge's liabilities arising from the breakaway of the ING 4727, no discovery whatsoever has taken place with regard to any of the other causes of action contained in the present action.[5] Therefore, as discussed below, not only should the Court deny Plaintiff Underwriters' motion to consolidate, it should stay the instant matter -- at least as to the American Club -- pending resolution of the American Club's 2006 declaratory judgment action against Lafarge.

---

[5]     Neither the American Club nor Plaintiff Underwriters are parties to NYMAGIC's declaratory judgment action against Lafarge (*New York Marine and General Insurance Co. v. Lafarge North America, Inc.* (05 Civ. 9612) (CSH)), in which NYMAGIC raises issues with regard to Lafarge's coverage for the fees of its separately retained defense counsel. Therefore, the American Club is not aware whether any of the discovery taken in that action would be applicable to Plaintiff Underwriters' third cause of action in the instant matter (¶¶ 87-100), which also seeks a declaration with regard to Lafarge's entitlement to payment for attorneys' fees. In any event, it appears that the Plaintiff Underwriters' third cause of action may be mooted by the outcome of NYMAGIC's existing litigation against Lafarge.

## ARGUMENT

### POINT I

### The Motion to Consolidate Should Be Denied

Rule 42(a) of the Federal Rules of Civil Procedure permits a court to use its discretion to determine whether to consolidate actions which involve common questions of law or fact. In deciding whether consolidation is an appropriate exercise of discretion, "a court must balance the interest of judicial convenience against the potential for delay, confusion and prejudice that may result from such consolidation." *Bank of Montreal v. Eagle Assocs.*, 117 F.R.D. 530, 532 (S.D.N.Y. 1987). Here, not only do common questions of law and fact not predominate, but consolidation would delay the adjudication of the American Club's declaratory judgment action, resulting in substantial prejudice to the American Club. Accordingly, the Court should deny Plaintiff Underwriters' motion to consolidate.

A.    Common Questions of Law and Fact Do Not Predominate Between
       the American Club's Action Against Lafarge and the Captioned Matter

While the American Club's action relates to questions of its cover for Lafarge's liabilities, three out of the four causes of action in the Plaintiff Underwriters' newly-filed matter concern interpretation of the terms of the excess marine liability policy. Accordingly, the two actions predominantly concern distinct factual and legal assertions.

Plaintiff Underwriters repeatedly contend that their action arises out of the same facts (or "operative nuclei") as the existing action by the American Club against Lafarge. But, it is not just the similarity of the underlying facts that determines whether consolidation is appropriate. It is also a matter of the similarity of the causes of action. *See Garfinkle v. Arcata Nat'l Corp.*, No. 72 Civ. 5344, 1974 WL 389 (S.D.N.Y. April 17, 1974) (denying consolidation and finding that,

although factual issues in two actions overlap, "it appears that both the legal theories as well as the material facts of the two actions are distinct.").

Here, although the American Club's action against Lafarge and the instant action both relate to the events following Hurricane Katrina, the material facts and legal theories relating to three out of four of Plaintiff Underwriters' causes of action -- namely, the meaning of the wording of the excess marine liability policy and the American Club's "other insurance" clauses -- have nothing to do with the existing and long-running action by the American Club against Lafarge. Accordingly, common questions of law and fact do not predominate and the two actions should not be consolidated.

      B.     Consolidation Would Unreasonably Delay the Resolution of the American Club's Action Against Lafarge and Prejudice the American Club

Courts in the Southern District of New York have denied consolidation in matters where a party would be forced to wait while discovery is re-opened and trial is delayed. As stated by the court in *Garfinkle*, "[e]ven assuming the existence of a common question of law or fact, the decision to consolidate still lies within the discretion of the court which should . . . weigh the saving of time and effort that consolidation would produce against any inconvenience, delay or expense that it would cause." 1974 WL 389 at *2. Indeed, "the decision to consolidate is discretionary with the court and turns essentially on balancing the time that might be saved against the possible delay or prejudice involved in consolidation." *Transeastern Shipping Corp. v. India Supply Mission*, 53 F.R.D. 204, 206 (S.D.N.Y. 1971) (denying consolidation).

      1.     Plaintiff Underwriters' Attempts to Litigate the First Cause of Action in the Captioned Matter Could Only Cause Delay

Here, no time would be saved by consolidation. The only issue in the American Club's existing action is whether the American Club covers the ING 4727 under Lafarge's Certificate of Entry. However, Plaintiff Underwriters' new action seeks to reopen discovery that has already

been extensively litigated in the American Club's two-year old declaratory judgment action. In addition, as noted above, Plaintiff Underwriters' action includes three new causes of action in which no discovery has taken place. Thus, the American Club's pending action would have to be put on hold while discovery was conducted on what is essentially an entirely new and unrelated action. *See Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 762 (5th Cir. 1989) ("Consolidation may properly be denied in instances where the cases are at different stages of preparedness for trial."); *Transeastern*, 53 F.R.D. at 206 (S.D.N.Y. 1971).

In *Transeastern*, the court did not grant consolidation even when "[e]ach of the ten actions presents a similar admiralty claim arising out of a similar set of facts." 53 F.R.D. at 205. The *Transeastern* court reasoned that, because the calendar positions of each of the cases varied greatly, ordering consolidation "would delay rather than expedite the disposition of those cases which are now prepared for trial. In such a situation courts have consistently denied consolidation." *Id.* at 206 (citing *Fisher v. Donbar Dev. Corp.*, 42 F.R.D. 655 (E.D.N.Y. 1967); *Borup v. Nat'l Airlines, Inc.*, 159 F. Supp. 807 (S.D.N.Y. 1956)). Likewise, in *Garfinkle*, the court denied consolidation and specifically noted that "discovery in the first action is virtually complete while it has barely commenced in the second case. Given this posture, consolidation would result in greater delay rather than expedite matters, and should thus be denied." 1974 WL 389 at *2.

Proceeding as a consolidated action will be no more efficient than proceeding as a separate lawsuit. At the very least, consolidation would require both the American Club and Lafarge to re-open discovery that has already been completed, causing unnecessary delay. Meanwhile, the American Club's ability to reach an expedient resolution concerning the

obligation to cover the Barge ING 4727 will be severely impaired.  Accordingly, the motion to consolidate should be denied.

> 2.    The Remaining Causes of Action Will Likely
>        Require a Significant Amount of Discovery

Despite Plaintiff Underwriters' contention that only a "moderate extension of discovery will be required," they cannot possibly be aware of the extent to which discovery will be necessary in this matter, particularly with respect to the second through fourth causes of action. Plaintiff Underwriters overlook the fact that, since three out of four of the causes of action are new and have had no discovery to date, full discovery from document production to depositions will be necessary.  These causes of action relate to new factual issues and will, therefore, require the deposition of additional witnesses.  For example, Plaintiff Underwriters would likely want to depose the brokers responsible for obtaining the excess marine liability policy for Lafarge, personnel from each of the underwriters (of which there are three), and Lafarge representatives involved in procuring insurance cover.  Moreover, both the American Club and Lafarge will undoubtedly want their own discovery should the claims in the present action proceed at this time.

Accordingly, even if no further discovery is needed on the cause of action that is duplicative of the American Club's existing action against Lafarge (which Plaintiff Underwriters have not confirmed to be the case), allowing the instant matter to be consolidated would significantly delay the adjudication of the American Club's declaratory judgment action due to the new discovery needed on Plaintiff Underwriters' three new causes of action.

## POINT II

### The Captioned Matter Should Be Stayed
### Pending the Outcome of the American Club's Action Against Lafarge

In the interests of efficiency and in avoiding prejudice, the instant action should be stayed, at least as to the American Club, pending resolution of the American Club's declaratory judgment action filed in 2006.[6] As stated by the United States Supreme Court, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). "[F]ederal courts have wide latitude in granting stays of further proceedings in an action . . . ." *Rosenfeld v. Schwitzer Corp.*, 251 F. Supp. 758, 763 (S.D.N.Y. 1966).

In determining whether to grant a stay, courts consider five factors: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996). Here, each of these factors favors granting a stay with respect to the claims asserted in the captioned matter against the American Club.

---

[6]    In the event that the instant action is not stayed (which it should be), discovery should proceed in the normal course as provided for by the Federal Rules of Civil Procedure. For example, Plaintiff Underwriters have previously asked for all documents and information produced in the American Club's declaratory judgment action; however, much of that information is irrelevant (as discussed above) to the claims asserted by Plaintiff Underwriters and, in fact, some of that information has been designated as confidential pursuant to the confidentiality agreement entered into by the parties to that action. To the extent that discovery does proceed, Plaintiff Underwriters should simply propound discovery requests, and the American Club will respond pursuant to the Federal Rules.

A.     Plaintiff Underwriters' Interests Will Not Be
       Prejudiced by Staying Their Action Against the American Club

Plaintiff Underwriters' interest in proceeding expeditiously in the captioned matter with respect to their causes of action against the American Club will not be prejudiced if those causes of action are stayed.  In fact, with respect to the two causes of action asserted against the American Club, one is already being litigated by Lafarge and is nearing trial, while the second may be moot.

1.     Plaintiff Underwriters May Have Actually Delayed the
       Declaration They are Seeking in their First Cause of Action

By bringing this action, Plaintiff Underwriters may have actually delayed the declaration they are seeking in the first cause of action.  If Plaintiff Underwriters had a true interest in a swift adjudication, they could have simply allowed the American Club's declaratory judgment action against Lafarge to be completed without delay.  However, Plaintiff Underwriters have chosen to file a new action and seek to consolidate.  In reality, Plaintiff Underwriters will get an answer to their first cause of action -- a declaration of the terms of the American Club cover -- more expeditiously if their action is stayed.

Moreover, Plaintiff Underwriters will not be prejudiced because there is no doubt that Lafarge is adequately protecting the interests of Plaintiff Underwriters in litigating the issue of cover under its Certificate of Entry.  Moreover, Lafarge, as the assured under the insurance cover provided by the American Club, is clearly in the best position to assert that coverage exists.[7]

---

[7]     Notably, nowhere do Plaintiff Underwriters even suggest that Lafarge is not adequately defending the declaratory judgment action brought by the American Club, or that Lafarge is not better positioned to litigate the coverage issue.

2.    Plaintiff Underwriters' Fourth Cause of Action is not yet
      Ripe for Resolution, and They Will Not be Prejudiced by a Stay.

A stay will also not prejudice Plaintiff Underwriters with respect to the other cause of action asserted against the American Club because this claim is not yet ripe for adjudication without a resolution of the American Club's declaratory judgment action. *See U.S. Underwriters Ins. Co. v. Kum Gang, Inc.*, 443 F. Supp. 2d 348, 354 (E.D.N.Y. 2006) ("At this point, a determination of the insurers' respective liability exposure is nothing more than theoretical. Such a determination might be made moot by a finding of non-liability in the state court action."); *see also Certain Underwriters at Lloyds, London v. St. Joe Minerals Corp.*, 90 F.3d 671, 675 (2d Cir. 1996) ("It is by now traditional law that 'the judicial power does not extend to . . . abstract questions.'") (citations omitted); *Bellefonte Reinsurance Co. v. Aetna Cas. & Sur. Co.*, 590 F. Supp. 187, 192 (S.D.N.Y. 1984) ("This Court must heed the oft recited admonition that 'it is not the function of a United States District Court to sit in judgment of these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass.'") (citing *American Fid. & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960)).

Because discovery has not yet taken place in the present action, and certainly not with respect to their fourth cause of action, Plaintiff Underwriters will be not prejudiced by a stay. *See HMT, Inc. v. Bell BCI Co.*, No. 06-CV-6193T, 2007 WL 295328 (W.D.N.Y. Jan. 30, 2007). In *Bell*, the District Court stayed a proceeding in the Western District of New York, when there was a pending matter involving Bell BCI Company ("Bell") in another district. In the first matter, filed in February 2005, Abhe & Svoboda, Inc. ("ASI") instituted an action against Bell in the Maryland District Court alleging breach of contract and other causes of action against Bell (the "ASI litigation"). *Id.* at *1. In early 2006, HMT filed a complaint against Bell in the

Federal District Court for the Western District of New York alleging breach of contract arising out of the same occurrences, but different contracts (the "HMT litigation"). *Id.*

The court stated that, despite the different parties to the HMT and ASI litigations, "HMT will not be prejudiced by a stay of this action. This case has been pending in this district only since April 2006. Unlike the ASI litigation, the parties here have not engaged in any substantial discovery, nor any dispositive motions." *Id.* at *2. The court continued by noting that this matter was "[u]nlike the ASI litigation where substantial amounts of time and expense have been invested in preparation by the parties and the Court to the extent that the case is nearly ready for trial, this case is in its very early stages of preparation." *Id.*

Similar to the HMT litigation in *Bell*, the instant action has only recently been filed, and there has been no discovery on the second through fourth causes of action. Moreover, the deadline for factual discovery in the American Club's declaratory judgment action has passed and the parties are nearly finished with expert discovery. Accordingly, Plaintiff Underwriters would not be prejudiced by staying the captioned matter as against the American Club.

     B.     The American Club Will be Significantly
              <u>Burdened Unless the Instant Action is Stayed</u>

In contrast to the Plaintiff Underwriters, the American Club will be significantly prejudiced if the present action is not stayed. The American Club has a strong interest in having its declaratory judgment claims against Lafarge expeditiously resolved, without potentially inconsistent results. *See id.* (in granting stay, stating that, "if litigation in this Court were to proceed, the burden on [defendant] Bell will be significant since Bell will be forced to undergo unnecessary piecemeal litigation of similar issues, which could lead to inconsistent results.").

In addition, and as previously discussed, the American Club would be burdened by having to engage in duplicative discovery with respect to the first cause of action in the

captioned matter, and in potentially irrelevant discovery with respect to the fourth cause of action. In short, any discovery completed prior to a determination regarding whether the American Club covers the Barge ING 4727 is a potential waste of time, effort and expense by all parties involved, including Plaintiff Underwriters.[8]

C.   Interests of the Courts and the
     Public Interest Weigh In Favor of Granting a Stay

The interest of the courts and the public interest also weigh in favor of staying the instant action. The interests of the court and of the public are furthered by guiding matters "toward as speedy and inexpensive a conclusion as is consistent with permitting claims to be heard fairly." *Kappel v. Comfort*, 914 F. Supp. 1056, 1058-59 (S.D.N.Y. 1996) (referencing Fed. R. Civ. P. 1 which states that Federal rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."). By staying this action, this Court would allow a more expeditious conclusion to the American Club action and would avoid unnecessary duplication of matters before it. *See Regions Bank v. Wiedner & Mastroianni, P.C.*, 170 F. Supp. 2d 436, 439 (S.D.N.Y. 2001) ("[T]he general principle [of deciding whether to stay an action] is to avoid duplicative litigation.") (citation omitted). In addition, resolution of the American Club's action against Lafarge "will more than likely narrow the issues before this Court and ultimately save the parties and the Court from a needless or duplicative expenditure of resources." *HMT, Inc. v. Bell BCI, Co.*, No. 06-CV-6193T, 2007 WL 295328, at *3 (W.D.N.Y. Jan. 30, 2007). Accordingly, staying Plaintiff Underwriters' recently filed action furthers the interests of the Court and the public.

---

[8]    Indeed, one has to wonder why Plaintiff Underwriters themselves would wish now, at the eleventh hour, to begin to litigate the very issue which is already so far advanced between the American Club and Lafarge, or to incur the time and expense of litigating a moot issue.

D.    Interests of Non-Parties Supports an Expedient Resolution to
the American Club Coverage Issues and, Therefore, Favors a Stay

Staying the instant action and allowing the American Club's declaratory judgment action

to proceed expeditiously will also serve the interests of persons not parties to the civil litigation.

For example, a faster resolution of the American Club's declaratory judgment action will allow

the plaintiffs in the underlying Hurricane Katrina litigations to understand sooner the scope of

Lafarge's insurance coverage as a potential avenue of recovery.  By staying the present action,

the determination as to the scope of Lafarge's entry with the American Club will be more

quickly determined, thereby weighing in favor of staying the captioned matter.

## CONCLUSION

Consolidation of this action with the American Club's action would require parties to re-open completed discovery and to commence discovery on new issues, some of which are irrelevant to the American Club. Accordingly, consolidation would undoubtedly result in significant delay and prejudice. In contrast, staying the present action as to the American Club would not cause Plaintiff Underwriters any prejudice, and it would allow for an expedient resolution of its declaratory judgment action against Lafarge. Moreover, as to the American Club, the instant action is entirely moot if the American Club is successful in its now two-year old and nearly completed declaratory judgment action against Lafarge. Judicial economy therefore weighs in favor of a stay.

Accordingly, and for all of the foregoing reasons, the American Club respectfully requests that this Court deny the motion to consolidate filed by Plaintiff Underwriters, grant the American Club's cross-motion to stay, and award such additional relief as this Court deems just and proper.

Dated:  New York, New York
       June 5, 2008

THACHER PROFFITT & WOOD LLP

By:    /s/ John M. Woods
     John M. Woods
     jwoods@tpw.com
     Alan F. Kaufman
     akaufman@tpw.com
     Jennifer S. Kozar
     jkozar@tpw.com

Two World Financial Center
New York, New York 10281
(212) 912-7400

*Attorneys for American Steamship Owners*
*Mutual Protection and Indemnity*
*Association, Inc.*