Robert G. Clyne (RC-2987)
HILL RIVKINS & HAYDEN LLP
Attorneys for Defendant
Lafarge North America, Inc.
45 Broadway – Suite 1500
New York, New York 10006
(212) 669-0600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

THE NORTHERN ASSURANCE COMPANY
OF AMERICA and AMERICAN HOME
ASSURANCE COMPANY,

               Plaintiffs,

   - against –

LAFARGE NORTH AMERICA, INC. and
AMERICAN STEAMSHIP OWNERS
MUTUAL PROTECTION AND
INDEMNITY ASSOCIATION, INC.,

               Defendants.

---------------------------------------------------------x

Index No.:
08 CV 03289

**DECLARATION OF**
**ROBERT G. CLYNE**

     ROBERT G. CLYNE, an attorney duly admitted to practice before this Honorable

Court, declares under penalties of perjury:

     1.     I am a member of Hill Rivkins & Hayden LLP, attorneys for defendant

Lafarge North America, Inc. ("LNA"), and am fully familiar with the facts and

circumstances of this case.  I submit this declaration in support of LNA's opposition to

plaintiffs' motion to consolidate the subject action with another action pending before this

Court, *American Steamship Owners Mutual Protection and Indemnity Association v.*

*Lafarge North America, Inc.*, 06 CV 3123 (CSH) (the "American Club Action") and in

support of LNA's cross-motion to dismiss the complaint.

2.      Annexed hereto as Exhibit A is a true and correct copy of the Primary Marine Liabilities Policy issued to LNA for the period of May 1, 2005 to May 1, 2006.

3.      Attached hereto as Exhibit B is a true and correct copy of the Excess Marine Liabilities Policy issued to LNA for the period of May 1, 2005 to May 1, 2006.

4.      Annexed hereto as Exhibit C is a true and correct copy of the relevant pages of the 2005/2006 American Club Rules.

5.      Annexed hereto as Exhibit D is a true and correct copy of my letter dated March 11, 2008, addressed to counsel for New York Marine and General Insurance Company ("NYMAGIC"), the leader on the Excess Marine Liabilities Policy referenced in Paragraph 2 above.

6.      Annexed hereto as Exhibit E is a true and correct copy of the letter dated March 26, 2008 from NYMAGIC's counsel in response to my March 11, 2008, letter referenced in paragraph 5 above.


I hereby certify that the foregoing is true and correct to the best of my knowledge and that I am subject to punishment if any statements are willfully false.


Dated: June 5, 2008


ROBERT G. CLYNE

# EXHIBIT A

# CONFIRMATION OF INSURANCE

**Willis of New York, Inc.**
7 Hanover Square
New York, NY 10004
Tel:     212-344-8888
Fax:     212-635-3626
Website: www.willis.com

**DATED**:                May 2nd, 2005

**RISK CONTROL NO.**:    WCM05-530

**NAMED ASSURED**:       Lafarge North America Inc. Et Al.

Lafarge North America Inc. and/or Lafarge S.A. and/or Lafarge Canada Inc. and/or Standard Industries, Inc. and/or Standard Lafarge Company and/or Concrete Acquisition Company and/or General Portland Inc. and/or Tews Company Inc. and/or Center Street Corporation and/or Missouri Portland Cement and/or Davenport Cement Company and/or Lafarge Florida, Inc. and/or Lafarge Building Materials, Inc.; their Subsidiary Companies and/or Corporations which now exist or may hereinafter be constituted (including Executive Officers, Directors and Stockholders all while acting within the scope of their duties as such) and, but not limited to, Affiliated, Associated, Interrelated, Operating Companies and/or Corporations, Partnerships or Joint Ventures singly or collectively referred to as the Assured, as their interests may appear.

It is further agreed that if any party other than those named as Assured herein, have an interest as owner or part owner or otherwise in any vessels or property insured hereunder, this insurance extends to cover the interest of such party, if required, as though they had been specifically named as an Assured in this Policy without necessity of advice to this Company.

This Policy will discharge any liability that it would bear if each Assured was separately insured, however, it is specifically understood and agreed that the inclusion of more than one Assured hereunder shall not increase the liability of this Company or otherwise alter any other terms or conditions of this Policy.

**INTEREST**:            Primary Marine Liabilities consisting of:
Section A)      Wharfingers Liability / Stevedores Liability
                Landing Owners Liability
Section B)      Charterers Legal Liability

POLICY OR POLICIES WILL BE ISSUED AGAINST THE INSURANCE DESCRIBED HEREIN, AND IN THE EVENT OF ANY INCONSISTENCY HEREWITH, THE TERMS, CONDITIONS AND PROVISIONS OF THE POLICY OR POLICIES WILL PREVAIL. POLICY OR POLICIES WILL BE PROMPTLY FORWARDED TO YOU AS SOON AS RECEIVED.
WCM05-530 Confirmation

Attached to and forming a part of Risk Control #WCM05-530
Dated: May 2nd, 2005
Page 2 of 16

**Willis**

**PERIOD**:
From: 1st May 2005 at 12:01 AM Eastern Standard Time
To:    1st May 2006 at 12:01 AM Eastern Standard Time

**LIMIT OF**
**LIABILITY**:
Section A)      $5,000,000 any one accident or occurrence.
Section B)      $5,000,000 any one accident or occurrence.
Sections A/B) $5,000,000 any one accident or occurrence/
                   aggregate

**DEDUCTIBLE**:
Section A)      $20,000 any one accident or occurrence
Section B)      $5,000 any one accident or occurrence for Hull
                   Damage each declaration
                   $20,000 any one accident or occurrence for
                   Protection & Indemnity each declaration

**CONDITIONS**:
All terms, clauses and conditions per expiring policy and as
attached herein. Also including the following clauses:
US Economic & Trade Sanctions Clause
Silica Exclusion Clause
Respirable Dust Exclusion Clause
AIMU Extended Radioactive Contamination Exclusion Clause
with USA Endorsement
AIMU Chemical, Biological, Bio-chemical and Electromagnetic
Exclusion Clause

**PREMIUM**:
$102,500 Flat premium per annum.

**INSURED WITH**:
New York Marine & General Insurance Company - 100%

PER: _[signature]_
**WILLIS NEW YORK, INC.**
**BROKERS FOR THE ASSURED**

WCM05-530.Confirmation

Attached to and forming a part of Risk Control #WCM05-530
Dated: May 2nd, 2005
Page 3 of 16



## POLICY GENERAL CONDITIONS

1. **CANCELLATION CLAUSE:**

   This Policy may be cancelled by either the Assured or this Company by giving the other party sixty (60) days written notice, but such cancellation shall not prejudice any transit risk which has attached prior to the cancellation date. Notice by the Assured to have the written consent endorsed hereon of all parties specifically named as Additional Assureds and Loss Payees elsewhere herein.

   If cancellation at the option of this Company, pro rata will be charged; if cancelled at he option of the Assured, this Company to retain earned premium as per customary short rate table and procedure.

2. **LEADER:**

   It is agreed that all alterations, extensions, additions, endorsements, settlement of claim, etc. to be agreed by New York Marine & General Insurance Company as lead underwriter and to be binding on all remaining Underwriters participating hereon.

3. **CAPTIONS ANT) HEADINGS:**

   All captions and headings in this policy are inserted only for purposes of reference and shall not be used to interpret the clauses to which they apply.

4. **SERVICE OF SUIT:**

   It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and/or Canada, and will comply with all requirements necessary to give such Court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

5. **OIL POLLUTION ACT OF 1990 DISCLAIMER:**

   This insurance does not constitute evidence of financial responsibility under the Oil Pollution Act of 1990 or any similar federal, state or local law, and it is a condition of this insurance that it shall be submitted to the United States Coast Guard or any other federal, state of local agency as evidence of financial responsibility. This Company does not consent to be a guarantor.

WCM05-530 Confirmation

Attached to and forming a part of Risk Control #WCM05-530
Dated: May 2nd, 2005
Page 4 of 16



### PRIMARY MARINE LIABILITIES

### GENERAL CONDITIONS

1. **HELD COVERED:**

   It is necessary for the Assured to give prompt notice to this Company when they become aware of an event for which they are "held covered" under this policy and the right to such coverage is dependent on compliance with this obligation.

2. **ERRORS AND OMISSIONS:**

   This insurance shall not be invalidated by any unintentional error or omission made by the Assured in rendering reports required under this policy to this Company provided such unintentional error or omission be reported as soon as practicable after discovery and an additional premium, if due, be paid.

   The insurance afforded by this Clause shall not increase the limits of this Company's liability under this policy.

3. **NOTICE OF LOSS:**

   In the event of any occurrence which may result in loss, damage, injury, or expense, for which this Company is or may become liable under this policy, notice thereof shall be given to Marsh USA and/or to this Company as soon as practicable after it becomes known to the Assured's Insurance Department; and further, any and every process, pleading and paper of any kind relating to such occurrence shall be forwarded promptly to this Company.

4. **NAMING ATTORNEYS:**

   This Company, in consideration, in consultation with the Assured, shall have the option of naming any mutually acceptable attorneys who shall represent the Assured in the prosecution or defense of any litigation or negotiations between the Assured and third parties concerning any claim based on a liability or an alleged liability covered by this policy, and shall have the direction of such litigation's or negotiations. If the Assured shall fail or refuse to settle any claim as authorized by this Company, the liability of this Company shall be limited to the amount for which settlement could have been made.

5. **SETTLEMENT OF CLAIMS:**

   The Assured shall not make any admission of liability, either before or after any occurrence, which could result in a claim for this Company may be liable. The Assured shall not interfere in any negotiations of this Company of settlement of any legal proceedings in respect of any occurrence\for which this Company may be liable under this policy; provided, however, that in respect of any occurrence likely to give rise to a claim under this policy, the Assured is

Attached to and forming a part of Risk Control #WCM05-530
Dated: May 2nd, 2005
Page 5 of 16



obligated to and shall take such steps to protect his and/or this Company's interests as would reasonably be taken in the absence of this or similar insurance.

6. **SISTERSHIP:**

In the event of salvage, towage or other assistance being rendered to an insured interest by any vessel belonging in part or in whole to the Assured as Charterer, the value of such services (without regard to the ownership on control of the vessel) shall be ascertained by arbitration in the manner provided for under the Collision Liability Clause (Lines 165 through 193 of the American Institute Hull Clauses (January 18, 1970) Form 6Z) of this policy and the amount so awarded so far as applicable to the interest hereby insured shall constitute a charge under this policy.

7. **LIMITATION OF ACTION:**

No suit or action shall lie against this Company for the payment or recovery of any claim under this policy until the liability of the Assured has been determined by final judgment against the Assured or by agreement between the Assured and the claimant with the written consent of this Company; nor, in any event, unless such action is brought against this Company within the time prescribed therefore in the statutes of State of New York, provided, however, that where such limitation of time is prohibited by the law of the State shall be sustained unless commenced within the shortest time limitation permitted under the laws of such State.

8. **RIGHTS OF SUBROGATION:**

Upon making payment under this policy, this Company shall be vested with all the Assured's rights of recovery against any person, corporation, vessel or interest and the Assured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

9. **PERMISSION TO RELEASE OR DECREASE LIABILITY:**

Notwithstanding anything to the contrary contained herein, it is hereby understood and agreed that when so required, or specified by any contract entered into by the Assured, or required in the ordinary course of business, the Assured is granted privilege to assume liabilities of; to grant releases from liability to, limit or decrease the liabilities of, and to waive the rights of subrogation hereunder of this Company against any person whatsoever (including outside vessels and other owners).



Attached to and forming a part of Risk Control #WCM05-530
Dated: May 2nd, 2005
Page 6 of 16

## 10. WAR, STRIKES AND RELATED EXCLUSIONS:

The following conditions shall be paramount and shall supersede and nullify any contrary provisions of this policy. This policy does not cover any loss, damage or expense caused by, resulting from, or incurred as a consequence of:

A.  Capture, seizure, arrest, restraint or detainment, or any attempt thereat; of
B.  Any taking of the property which is the subject of this insurance, by requisition or otherwise, whether in time of peace or war and whether lawful or otherwise; or
C.  Any mine, bomb or torpedo not carried as cargo on board the vessel(s); or
D.  Any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter; or
E.  Civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or piracy; or
F.  Strikes, lockouts, political or labor disturbances, civil commotions, riots or the acts of any person or persons taking part in any such occurrences or disorders; or
G.  Vandalism, sabotage or malicious act, which shall be deemed also to encompass the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional; or
H.  Hostilities or warlike operations (whether there be a declaration of war or not) but this Paragraph H not to exclude collision or contract with aircraft, rockets or similar missiles, or with any fixed or floating object, or stranding, heavy weather, fire or explosion unless caused directly by or against a belligerent power which act is independent of the nature of the voyage or service which the vessel(s) concerned or, in the case of a collision, any other vessel involved therein, is performing. As used herein, "power" includes any authority maintaining navel, military or air forces in association with a power.

## 11. SURVEY AND LEGAL EXPENSES:

This Company is also to pay survey and related expenses reasonably incurred by the Assured and the legal cost and expense of defending and/or investigating and/or conducting proceedings to limit liability on any suit or claim against the Assured based on a liability or an alleged liability coming within the scope of this insurance, without application of the deductible provisions of this policy, but this Company shall not be liable for the cost or expense of defending any suit or claim unless said cost or expense shall be been incurred with the written consent of this Company. This Company, however, reserves the right to conduct the defense of any actions or suits at its own expense.

## 12. ACCIDENT OR OCCURRENCE:

For purposes of this policy, an accident or occurrence is defined as any accident or occurrence or series of accidents or occurrences arising out of one event.

WCM05-530 Confirmation



Attached to and forming a part of Risk Control #WCM05-530
Dated: May 2nd, 2005
Page 7 of 16

13. **EXCESS INSURANCE:**

Permission is granted for excess insurance which shall be liable only for any loss and/or losses, claim and claims beyond the amount insured under this policy.

14. **OTHER INSURANCE:**

Except for insurance carried by the Assured specifically as excess over and above the amount(s) recoverable hereunder, this Company shall not be liable for any loss, damage, liability or expense which may be recoverable under any other insurance arranged by the Assured, arranged by others for the Assured's account or otherwise available to the Assured, except as excess over and above the amount(s) recovered thereunder.

15. **ASSIGNMENT:**

No claim or demand against this Company under this policy shall be assigned or transferred, and no person, excepting a legally appointed Receiver of the property of the Assured, shall acquire any rights against this Company by virtue of this insurance without the expressed consent of this Company.

16. **CONTINGENT TANKERMAN'S LIABILITY:**

It is hereby understood and agreed that the liability insurances afforded by Part A "Landing Owner's Legal Liability" and Part B "Charterer's Legal Liability" of this policy are extended to cover the legal liability of the Assured for loss of or damage to property of others, including charges attendant thereto, or for loss of life or personal injury arising out of the operations or actions of qualified employees or outside contractors acting on behalf of the Assured in their capacity as tankermen in respect of vessels which are the subject of these insurances.

The insurance provided by this Clause is excess over any other valid and collectible insurance available to the Assured. This Clause shall not increased the limits of liability of this policy.

17. **POLLUTION COVERAGE:**

Notwithstanding anything to the contrary contained elsewhere herein, this policy covers loss, damage, cost, liability, expense, fine or penalty which the Assured as bailee, custodian, stevedore or charterer shall have become liable to pay in consequence of the actual or potential discharge, spillage or leakage of oil, fuel, cargo, petroleum products, chemicals or other substances of any kind or description caused by or emanating from vessels which are the subject of the liability insurances afforded under Part A "Landing Owner's Legal Liability" and Part B "Charterer's Legal Liability" of this policy, provided, however, that this Company shall not be liable to indemnify the Assured against any loss, damage, cost, liability, expense, fine or penalty resulting directly from the failure, neglect, of default of the

WCM05-530.Confirmation

Attached to and forming a part of Risk Control #WCM05-530
Dated: May 2nd, 2005
Page 8 of 16



Assured or his managing officers or managing agents to exercise the highest degree of diligence to prevent a violation of law.

The insurance afforded by this Clause shall not increase the limits of this Company's liability under this policy.

18. **SEEPAGE AND POLLUTION ENDORSEMENT:**

In respect of onshore properties, such coverage as is afforded by this policy shall not apply to any claim arising out of the discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, alkalis, toxic chemicals, liquids or gases, waste materials, oil or other petroleum substance or derivative (including any oil refuse or oil mixed wastes) or other irritants, contaminants (including saline contamination) pollutants into or upon land, the atmosphere, or any watercourse or body of water.

The exclusion shall not apply, however, provided that the Assured establishes that all of the following conditions have been met:

a) the occurrence was accidental and was neither expected nor intended by the Assured. An occurrence shall not be considered unintended or unexpected unless caused by some intervening event neither foreseeable nor intended by the Assured.
b) the occurrence is identified as first commencing at a specific time and date during the term of this policy.
c) the occurrence became known to the Assured within 7 days after its commencement.
d) the occurrence was reported in writing to these this company within 60 days after having become known to the Assured.
e) the occurrence did not result from the Assured's intentional and willful violation of any government statute, rule or regulation.

Nothing contained in this Endorsement shall operate to provide any coverage respect to:

1) loss of, damage to, or loss of use of property directly of indirectly resulting from subsidence caused by sub-surface operations of the Assured;
2) removal of, loss of, or damage to sub-surface oil, gas or any other substance;
3) fines, penalties, punitive damage, exemplary damages, treble damages or any other damages resulting from multiplication of compensatory damages;
4) any site or location used in whole or in part for the handling, processing, treatment, storage, disposal or dumping of any waste materials or substance or the transportation of any waste materials or substances;
5) blowout and cratering.

WCM05-530.Confirmation

Attached to and forming a part of Risk Control #WCM05-530
Dated: May 2nd, 2005
Page 9 of 16



## STRIKES, RIOTS & CIVIL COMMOTIONS

In consideration of an included premium, it is hereby understood and agreed that effective from the inception of this policy:

"This insurance also covers damage to or destruction of the property, which is the subject of this insurance, directly caused by strikers, locked out workmen, or persons taking part in labor disturbances or riots or civil commotions or caused by vandalism, sabotage, or malicious mischief, but excluding civil war, revolution, rebellion or insurrection, or civil strife arising therefrom, and warranted free from any claim for delay, detention or loss of use, and free from all loss, damage or expense caused by any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force of matter.

Notwithstanding the exclusions in this Policy's War, Strikes and Related Exclusions Clause (Clause Number 10 of the General Conditions), 'vandalism', 'sabotage', and 'malicious mischief, as used herein, shall be construed to include willful or malicious physical injury to or destruction of the described property caused by acts committed by an agent of any Government, party or faction engaged in war, hostilities, or other warlike operations, provided such agent is acting secretly and not in connection with any operations of military or naval armed forces in the country where the described property is situated."

This Company has the right to change the premium consideration for the additional protection afforded by this Endorsement at any time on fifteen (15) days written notice to the Assured; but the Assured shall have the option to cancel this Endorsement as of the time when such change in premium would effect, provided previous notice of such cancellation be given to this Company. The premium may be changed as above notwithstanding strikes, labor troubles or civil commotions, on board the described property or elsewhere, may be threatened or actually exist either at the time when such notice is given or when it takes effect.

Attached to and forming a part of Risk Control #WCM05-530
Dated: May 2nd, 2005
Page 10 of 16



PRIMARY MARINE LIABILITIES

PART A
WHARFINGER'S/LANDING OWNER'S/STEVEDORE'S LEGAL LIABILITY

1. **COVERAGE:**

To cover 100% interest of:

A. The legal or assumed liability of the Assured for all sums which the Assured shall become obligated to pay by reason of loss, damage, injury, or expense, including loss of use, to tankers, towboats, barges or other vessels and their cargoes, which are the property of others, while docking, undocking or in the Assured's custody, or possession at landing and/or mooring facilities which are owned, operated, utilized, controlled or leased by the Assured.

Coverage includes while proceeding to or from the aforementioned landing and/or mooring facilities, and Assured's liability for damage caused directly or indirectly by the freeing or breaking away from such premises. This coverage is to also include liability as defined herein during time as the Assured may have technical or contractual custody of a vessel during its constructive placement away from the Assured's premises.

B. The legal or assumed liability of the Assured for all sums which the Assured shall become obligated to pay as damages because of bodily injury or death sustained by any person; and damages because of injury to or destruction of the property of others including loss of use thereof, caused by accident and arising out of the Assured's operations as bailee, custodian or stevedore of or to tankers, towboats, barges or other vessels and their cargoes described in Paragraph A of this Clause.

C. The costs and expenses after deduction of the gross proceeds of salvage, not recoverable from third parties, for the removal of the wreck of any vessel which is neither owned nor operated by the Assured from the landing(s) owned, operated, utilized, controlled or leased by the Assured. The Assured agrees to make every reasonable effort to have the governmental authority having jurisdiction, or other responsible persons or parties assume responsibility and pay the expense for removal of the wreck before claim is made hereunder.

The costs and expenses insured under this Paragraph C of this Clause shall be payable even though the Assured may have no legal or assumed liability therefor.



Attached to and forming a part of Risk Control #WCM05-530
Dated:  May 2nd, 2005
Page 11 of 16

2.  **EXCLUSIONS:**

Notwithstanding the foregoing, it is hereby understood and agreed that this Part A does not cover against nor shall any liability attach hereunder for loss, damage, injury or expense caused by or resulting from:

A.  Vessel repair, construction, conversion or gas freeing performed or authorized by the Assured.

B.  Loss of life or personal injury to employees of the Assured for which the Assured or any carrier as his insurer may be held liable under any State, Federal, or Provincial workers' compensation, unemployment compensation of disability benefits law, or under any similar law.

C.  Loss or damage to property owned, leased or rented, by the Assured.

D.  Loss, damage or expense to cargo owned by the Assured.

E.  Theft by infidelity or similar act of dishonest character on the part of the Assured or their employees or sub-contractors.

F.  Loss of or damage to any property or loss of life of or injury to any person that would be covered by the terms of the standard Commercial General Liability Policy as promulgated by the Insurance Services Office, Inc. except that this exclusion shall not apply to claims falling within the exclusions of said Commercial General Liability Policy to "property in the care, custody or control of the Insured" or "watercraft if the accident occurs away from premise owned by, rented to or controlled by the Named Assured."

G.  Bodily injury or personal injury or loss of, damage to or loss of use of property directly or indirectly caused by asbestos.

H.  Bodily injury or personal injury or loss of, damage to or loss of use of property directly or indirectly caused by Polychlorinated Biphenyl or any derivative thereof.

3.  **LIMIT OF LIABILITY:**

The liability of this Company with respect to the costs, expenses and liabilities assumed under
Paragraphs A, B and C of Clause 1 of this Part A shall not exceed the limit stated in the Sum Insured (Clause 5 of the Policy General Conditions) each Paragraph separately and in the aggregate in respect of any one accident or occurrence subject to the deductible applying to this Part A.

WCM05-530.Confirmation



Attached to and forming a part of Risk Control #WCM05-530
Dated:  May 2nd, 2005
Page 12 of 16

## PRIMARY MARINE LIABILITIES

### PART B
### CHARTERER'S LEGAL LIABILITY

**Not Applicable To Tank Vessels Nor To Vessels On Demise
Or Bareboat Charters**

1. **COVERAGE:**

This insurance is only to indemnify the Assured in respect of losses, costs, and expenses incurred by the Assured as Charterers:

A.  In respect of liabilities other than to owners of the chartered vessel, or liabilities to the owners of the chartered vessel by way of reimbursement for claims brought against them by third parties, and:

which are covered in the United Kingdom Mutual Assurance Association (Bermuda) Ltd. standard form of Certificate for charterer's Risks for Dry Cargo Vessels published and in effect at the inception of this insurance excluding liability to cargo or rate to be agreed, but subject to the limits of this Policy and further this Company herein retain all the rights reserved by the Association in said certificate; claims under this Section shall be subject to a deductible of US$2,500 any one accident or event.

B.  In respect of liabilities for loss of or damage to the chartered vessel, but only to pay claims subject to a deductible of US$5,000 any one accident or event.

No Coverage is afforded herein for any liability for contributions in General Average, Salvage or Salvage Charges, other than liability for contributions in respect of charterer's freight at risk, or contributions which are attributable to the chartered vessel and which arise directly because of loss or damage to the chartered vessel following upon an accident for which the Charterer is legally liable and which is covered under this insurance.

Except for demurrage payments arising under the terms of the charter party and which directly arise due to an accident to the vessel for which the Charterer is legally liable and which liability is covered under this insurance, nothing herein shall be construed as insuring any liability, costs or expenses which the Assured may incur by reason of delay, detention or loss of use of the chartered vessel or cargo.

With the exception of insurance expressly to apply in excess of the limits of this Policy, this insurance is in excess of and not contributory with any other insurance available to the Assured covering any liability insured herein.

WCM05-530.Confirmation



Attached to and forming a part of Risk Control #WCM05-530
Dated: May 2nd, 2005
Page 13 of 16

Contractual or assumed liabilities other than to the Shipowner under the Charter Party (which is to be approved by this Company herein at inception of risk) or under any Bill of Lading issued pursuant to the said Charter Party, are excluded herein, except with prior agreement of this Company and an additional premium, if required, paid thereof.

## 2. ASSISTANCE AND COOPERATION:

In the event that any claim or claims appear reasonable likely to involve this Company, the Assured shall give prompt written notice to this Company hereon, shall forward every summons or process (or copies thereof) served upon the Assured and shall thereafter keep this Company fully advised as this Company may request. This Company shall not be called upon to undertake or assume charge of investigation, defense or settlement of any claim, suit or proceeding against the Assured, but expressly reserve hereby the right and shall be given the opportunity to associate with the Assured or the Assured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding which in the opinion of this Company is likely to involve this insurance, in which event the Assured and this Company shall cooperate in such defense to the mutual advantage of both.

## 3. COSTS:

Costs incurred by the Assured shall be payable by this Company only if this Company hereon gives written consent to the incurring of such costs in respect of any particular claim, suit or proceeding and if such costs are not covered by underlying insurance, and then only in proportion between the amount (excluding costs) paid by the Assured (or by the underlying insurers) and the amount (excluding costs) paid by this company hereon. (The word "costs" shall be understood to mean investigation, adjustment and legal fees and expenses, excluding, however, all expenses for salaried employees and retained counsel and all office expenses of the Assured.) This Company's liability under this insurance shall not exceed in respect of any one loss or series of losses arising out of one accident or event.

## 4. U.S. OIL POLLUTION EXCLUSION CLAUSE:

Notwithstanding anything contained in this policy to the contrary, this policy shall not apply to or cover any loss, damage, cost, liability, expense, fine, penalty, or punitive or exemplary damage whatsoever, directly or indirectly caused by or contributed to by or arising from the actual, alleged, suspected or threatened discharge, release, dispersal, emission, spillage or leakage of oil into or upon the navigable waters of the United States of America, or adjoining shorelines, or the exclusive economic zone of the United States established by Presidential Proclamation Numbered 5030, dated March 10, 1993.

For purposes of this clause, oil means oil of any kind or in any form, including but not limited to, crude oil, petroleum, fuel oil, sludge, oil refuse, and oil mixed with any wastes or other substances.

WCM05-530.Confirmation

Attached to and forming a part of Risk Control #WCM05-530
Dated: May 2nd, 2005
Page 14 of 16



## ADDITIONAL CLAUSES

## AIMU U.S. ECONOMIC AND TRADE SANCTIONS CLAUSE

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to , those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control (OFAC) such coverage shall be null and void.

Similarly any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

## EXCLUSION - SILICA

This insurance does not apply to:

1.  "Bodily injury" arising in whole or in part out of the actual, alleged or threatened respiration or ingestion at any time of "silica" or:

2.  "Property damage" arising in whole or in part out of the actual, alleged or threatened presence of "silica", or

3.  "Personal and advertising injury' arising in whole or in part out of the actual, alleged or threatened exposure at any time to or the presence of "silica".

The following definition applies herein:
"silica" means the chemical compound silicon dioxide (5i02) in any form, including dust which contains "silica".

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

WCM05-530.Confirmation



Attached to and forming a part of Risk Control #WCM05-530
Dated: May 2nd, 2005
Page 15 of 16

## EXCLUSION - RESPIRABLE DUST

This insurance does not apply to:

1. "Bodily injury" arising in whole or in part out of the actual, alleged or threatened respiration or ingestion at any time of "respirable dust" or:

2. "Property damage" arising in whole or in part out of the actual, alleged or threatened presence of "respirable dust", or

3. "Personal and advertising injury' arising in whole or in part out of the actual, alleged or threatened exposure at any time to or the presence of "respirable dust".

The following definition applies herein:
"respirable dust" means respirable particulate matter but does not include living organisms.


ALL OTHER TERMS AND CONDITONS OF THIS POLICY REMAN UNCHANGED.


## AIMU EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE
### (March 1, 2003)
### WITH U.S.A. ENDORSEMENT

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

1. In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from

   1.1 ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

   1.2 the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

   1.3 any weapon or device employing atomic or nuclear fission andJor fusion or other like reaction or radioactive force or matter

   1.4 the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

Attached to and forming a part of Risk Control #WCM05-530
Dated: May 2nd, 2005
Page 16 of 16



## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE
## (U.S.A. ENDORSEMENT)

This insurance is subject to the Extended Radioactive Contamination Exclusion Clause (March 1, 2003) provided that

if fire is an insured peril

and

where the subject matter insured is within the U.S.A., its islands, onshore territories or possessions

and

a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1.1, 1.2, and 1.4 of the Extended Radioactive Contamination Exclusion Clause March 1, 2003 any loss or damage arising directly from that fire shall, subject to the provisions of this insurance, be covered, EXCLUDING however any loss damage liability or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

## AIMU  CHEMICAL,  BIOLOGICAL,  BIO-CHEMICAL,  AND  ELECTROMAGNETIC EXCLUSION CLAUSE
(March 1, 2003)

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from an actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

WCM05-530.Confirmation

# EXHIBIT B

# CONFIRMATION OF INSURANCE

# Willis

**Willis of New York, Inc.**
7 Hanover Square
New York, NY 10004
Tel:      212-344-8888
Fax:      212-635-3626
Website: www.willis.com

**DATED**:                    May 2nd, 2005

**RISK CONTROL NO.**:      WCM05-531

**NAMED ASSURED**:          Lafarge North America Inc. Et Al.

Lafarge North America Inc. and/or Lafarge S.A. and/or Lafarge Canada Inc. and/or Standard Industries, Inc. and/or Standard Lafarge Company and/or Concrete Acquisition Company and/or General Portland Inc. and/or Tews Company Inc. and/or Center Street Corporation and/or Missouri Portland Cement and/or Davenport Cement Company and/or Lafarge Florida, Inc. and/or Lafarge Building Materials, Inc.; their Subsidiary Companies and/or Corporations which now exist or may hereinafter be constituted (including Executive Officers, Directors and Stockholders all while acting within the scope of their duties as such) and, but not limited to, Affiliated, Associated, Interrelated, Operating Companies and/or Corporations, Partnerships or Joint Ventures singly or collectively referred to as the Assured, as their interests may appear.

It is further agreed that if any party other than those named as Assured herein, have an interest as owner or part owner or otherwise in any vessels or property insured hereunder, this insurance extends to cover the interest of such party, if required, as though they had been specifically named as an Assured in this Policy without necessity of advice to this Company.

This Policy will discharge any liability that it would bear if each Assured was separately insured, however, it is specifically understood and agreed that the inclusion of more than one Assured hereunder shall not increase the liability of this Company or otherwise alter any other terms or conditions of this Policy.

**INTEREST**:               Excess Marine Liabilities

POLICY OR POLICIES WILL BE ISSUED AGAINST THE INSURANCE DESCRIBED HEREIN, AND IN THE EVENT OF ANY INCONSISTENCY HEREWITH, THE TERMS, CONDITIONS AND PROVISIONS OF THE POLICY OR POLICIES WILL PREVAIL. POLICY OR POLICIES WILL BE PROMPTLY FORWARDED TO YOU AS SOON AS RECEIVED.

WCM05-531 Confirmation

Attached to and forming a part of Risk Control #WCM05-531
Dated:   May 2nd, 2005
Page 2 of 22

# Willis

**PERIOD**:                     From:  1st May 2005 at 12:01 AM Eastern Standard Time
                                To:    1st May 2006 at 12:01 AM Eastern Standard Time


**LIMIT OF
LIABILITY**:                    $45,000,000 to $50,000,000 any one accident or occurrence per
                                attached schedule.


**CONDITIONS**:                 All terms, clauses and conditions per expiring policy and as
                                attached herein.  Also including the following clauses:
                                US Economic & Trade Sanctions Clause
                                Silica Exclusion Clause
                                Respirable Dust Exclusion Clause
                                AIMU Extended Radioactive Contamination Exclusion Clause
                                with USA Endorsement
                                AIMU Chemical, Biological, Bio-chemical and Electromagnetic
                                Exclusion Clause


**PREMIUM**:                    $86,200 Flat premium per annum.


**INSURED WITH**:               New York Marine & General Insurance Company    50% of 100%
                                American Home Assurance Company                25% of 100%
                                International Marine Underwriters               25% of 100%
                                                                              100% of 100%


PER: _[signature]_
     **WILLIS NEW YORK, INC.
     BROKERS FOR THE ASSURED**


WCM05-531.Confirmation



## EXCESS MARINE LIABILITIES

## LIMITS OF LIABILITY

|  | Excess Policy Limit | Primary Policy Limit |
|---|---|---|
| (A) Marine Liabilities | | |
| a) Wharfinger' s/Landing Owner's/ Stevedore's | U.S. $45,000,000 | U.S. $   5,000,000 |
| b) Charterer's Liability | U.S. $45,000,000 | U.S. $   5,000,000 |
| a) and b) combined occurrence aggregate. | U.S. $45,000,000 | U.S. $   5,000,000 |
| (B) Protection & Indemnity | U.S. $45,000,000 | U.S. $ Per Club Rules |
| (C) Pollution Liability | | |
| (i)  U.S. Feet | U.S. $45,000,000 | U.S. $1,000,000,000 |
| (ii) Canadian Fleet | U.S. $45,000,000 | U.S. $1,000,000,000 |
| (D) Excess Towers Liability | | |
| (i)  U.S. Fleet | U.S. $49,000,000 | U.S. $   1,000,000 |
| (ii) Canadian Fleet | U.S. $49,000,000 | U.S. $   1,000,000 |
| (E) All Coverages Combined | U.S. $50,000,000 | Occurrence/Aggregate |

Attached to and forming a part of Risk Control #WCM05-531
Dated:   May 2nd, 2005
Page 4 of 22



## POLICY GENERAL CONDITIONS

1. **CANCELLATION CLAUSE:**

   This Policy may be cancelled by either the Assured or this Company by giving the other party sixty (60) days written notice, but such cancellation shall not prejudice any transit risk which has attached prior to the cancellation date. Notice by the Assured to have the written consent endorsed hereon of all parties specifically named as Additional Assureds and Loss Payees elsewhere herein.

   If cancellation at the option of this Company, pro rata will be charged; if cancelled at the option of the Assured, this Company to retain earned premium as per customary short rate table and procedure.

2. **LEADER:**

   It is agreed that all alterations, extensions, additions, endorsements, settlement of claim, etc. New York Marine & General Insurance Company to be agreed by as lead underwriter and to be binding on all remaining Underwriters participating hereon.

3. **CAPTIONS AND HEADINGS:**

   All captions and headings in this policy are inserted only for purposes of reference and shall not be used to interpret the clauses to which they apply.

4. **SERVICE OF SUIT:**

   It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and/or Canada, and will comply with all requirements necessary to give such Court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

5. **OIL POLLUTION ACT OF 1990 DISCLAIMER:**

   This insurance does not constitute evidence of financial responsibility under the Oil Pollution Act of 1990 or any similar federal, state or local law, and it is a condition of this insurance that it shall be submitted to the United States Coast Guard or any other federal, state of local agency as evidence of financial responsibility. This Company does not consent to be a guarantor.

Attached to and forming a part of Risk Control #WCM05-531
Dated:   May 2nd, 2005
Page 5 of 22



## EXCESS MARINE LIABILITIES
## INSURING AGREEMENTS

### COVERAGE:

This policy is to indemnify the Assured in respect of the following marine liabilities (including such expenses as are set out in the definition of "ULTIMATE NET LOSS") arising out of the Assured's marine operations only:

A. All Protection and Indemnity risks of whatsoever nature including, but not limited to, those covered by the Underlying Protection and Indemnity Insurances or which are absolutely or conditionally undertaken by the United Kingdom Mutual Steamship Assurance Association Limited. Nevertheless this insurance does not cover crew liabilities where excluded by the primary Protection and Indemnity Underlying Placements.

B. General Average, Collision Liabilities, Tower's Liabilities, Salvage, Salvage Charges, and Sue and Labor arising from any cause whatsoever and also other marine liabilities which are absolutely or conditionally underwritten by the ocean marine departments of insurance companies or Lloyd's marine this company.

C. All other sums which the Assured shall become legally liable to pay or by contract or agreement become liable to pay in respect of claims made against the Assured for damages of whatsoever nature, on account of:

    i. Personal injuries, including death at any time resulting therefrom,

    ii. Property Damage, caused by or arising out of each occurrence happening anywhere in the world.

Notwithstanding the foregoing this insurance shall not cover liabilities arising by reason of insolvency or inadequacy of capital.

Attached to and forming a part of Risk Control #WCM05-531
Dated:   May 2nd, 2005
Page 6 of 22



## EXCESS LIABILITIES
### DEFINITIONS

1. **ASSURED:**

   The unqualified word "Assured", wherever used in this Policy, includes not only the Named Assured but also:

   A. Any executive officer, director, stockholder or employee of the Named Assured, while acting in his capacity as such;

   B. Any person, organization, trustee or estate to whom the Named Assured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this Policy, but only in respect of operations by or on behalf of the Named Assured;

2. **OCCURRENCE:**

   The term "Occurrence" wherever used herein, means an event or a continuous or repeated exposure to conditions which unintentionally causes injury, damages or destruction during the policy period. Any number of such injuries, damage or destruction resulting from a common cause or from exposure to substantially the same conditions shall be deemed to result from one occurrence.

   The word "unintentionally" used in this definition of 'Occurrence' shall not apply to claims arising out of personal injuries.

3. **ULTIMATE NET LOSS:**

   The term 'Ultimate Net Loss" shall mean the total sum which the Assured becomes obligated to pay by reason of matters set out in Insuring Agreement I, including compromise settlements, and shall include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest, expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder, excluding, however the salaries of the Assured's permanent employees and general office overhead and also excluding any part of such expenses for which the Assured is covered by other valid and collectible insurance.

   Nothing herein contained shall be construed to require the Assured to enforce by legal action, any rights of salvage, subrogation or indemnity, before this Company shall pay any loss covered hereunder.

Attached to and forming a part of Risk Control #WCM05-531
Dated:  May 2nd, 2005
Page 7 of 22



## SECTION II

## EXCESS MARINE LIABILITIES
## EXCLUSIONS

### THIS SECTION II SHALL NOT APPLY:

1.  A.  To indemnify' any Assured whose dishonesty or fraud, committed individually or in collusion with others, caused the loss for which that Assured seeks indemnity; nor

    B.  To indemnify any Assured against claims based upon any intentional noncompliance with any statute or regulation unless such claim(s) be for damages occasioned by actual or alleged bodily injury (fatal or otherwise) or physical loss of; damage to, and/or loss of use of tangible property; nor

    C.  To indemnify any Assured in respect of any criminal fines or penalties incurred through the criminal act of that Assured.

2.  With respect to advertising activities, to claims against the Assured:

    A.  For failure of performance of contract, but this shall not relate to claims for unauthorized appropriation of ideas based upon alleged breach of an implied contract;

    B.  By advertising agents of the Assured;

    C.  For infringement of registered trademark, service mark or trade name by use thereof as the registered trademark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans;

    D.  For incorrect description of any article or commodity;

    E.  For mistake in advertising price.

3.  To any claim(s) not covered by the Assured's Underlying Insurances as set forth in the "Schedule of Underlying Insurance" made under Insuring Agreement 1. C. by any national provincial state or local government subdivisions or agencies thereof unless such claim(s) be for damages occasioned by actual or alleged personal and/or bodily injury (fatal or otherwise), physical loss of, damage to and/or loss of use of tangible property.

4.  To any claim(s) or suit(s) alleging violation of the antitrust laws, unfair competition or other acts allegedly in restraint of trade.

5.  To any stockholders derivative action(s).

Attached to and forming a part of Risk Control #WCM05-531

**Willis**

Dated:  May 2nd, 2005

Page 8 of 22

6. To claims for nonpayment or delay in payment of charter hire; non-payment or delay in payment of loans, mortgages, promissory notes, checks, drafts or other evidence of debt.

7. To claims for infringement of patent(s); unauthorized use of trademark(s) or trade name(s); misappropriation of design(s), drawing(s), process(es) or procedure(s) or to claims based on misappropriation of minerals or non-payment of mineral royalties.

8. A. To loss, damage or liability directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public local authority.

B. Nevertheless, this Exclusion 8 shall not apply, except as provided in Paragraph C below, to liabilities:

   i. Arising in connection with vessels owned, chartered, hired or otherwise used by the Assured;

   ii. Arising out of property of any kind in transit by land, water or air during such periods as would be covered for full war risks under insurance covering physical loss of or damage to cargo subject to the Institute War Clauses relevant to the particular form of transit;

   iii. Arising out of any waterborne operations;

   iv. To seamen or under "Workers' Compensation Statutes";

   v. For death of or bodily injury to persons of any kind.

C. Notwithstanding the provisions of Paragraph B above, Paragraph A above shall apply to the liabilities set out in Paragraph B above:

   i. Unless sooner applied under the provisions of Subparagraphs ii. or iii. of this Paragraph C, automatically upon and simultaneously with the outbreak of war (whether there be declaration of war or not) between any of the following countries: United States of America, United Kingdom, France, the Russian Federation, the People's Republic of China.

   i. At any time at the Assured's request, or by this Company giving seven (7) days written notice to the Assured, but in no event shall such notice affect or postpone the operation of the provisions of Subparagraphs i. or iii. of this Paragraph C. Written or telegraphic notice sent to the Assured at his (its) last known address shall constitute a complete notice and such notice mailed or telegraphed to the said Assured, care of the broker who negotiated this

Attached to and forming a part of Risk Control #WCM05-531
Dated:  May 2nd, 2005
Page 9 of 22

**Willis**

insurance, shall have the same effect as if sent to the said Assured direct. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of the operation of the provisions set out in Paragraph A above shall be seven (7) days from midnight of the day on which such notice was mailed or telegraphed as aforesaid. This Company agrees, however, that the provisions set out in Paragraph A above shall not apply subject to agreement between this Company and the Assured prior to the aforesaid effective date and hour as to an additional premium and/or new conditions and/or warranties.

iii.     Unless sooner terminated under the provisions of Subparagraphs i. or ii. of this Paragraph C, automatically in respect of an insured vessel if and when such vessel is requisitioned, either for title or use, by the government of the United States or of the country in which the vessel is owned or registered or of the country in which any such right of requisition is vested.

If subsequent to the agreement of an additional premium as provided by Subparagraph ii. of this Paragraph C, either the Assured or this Company again elect to exercise the option provided therein, or Subparagraphs i. or iii. of this Paragraph C become operative, pro rata net return of the additional premium paid shall be refunded to the Assured. This Company to refund such return premium on demand or as soon thereafter as practicable.

WCM05-531.Confirmation

Attached to and forming a part of Risk Control #WCM05-531
Dated:  May 2nd, 2005
Page 10 of 22



## EXCESS MARINE LIABILITIES
## CONDITIONS

1. **GEOGRAPHICAL LIMITS:**

   This policy covers the marine operations of the Assured anywhere in the world.

2. **CROSS LIABILITY:**

   In the event of one of the Assureds incurring liability to any other of the Assureds, this Policy shall cover the Assured against whom claim is or may be made in the same manner as if separate
   Policies had been issued to each Assured. Nothing contained herein shall operate to increase this
   Company's limit(s) of liability as set forth in Clause 5 of the Policy General Conditions.

3. **NOTICE OF OCCURRENCE:**

   Whenever the Assured's Insurance Department has information from which it may be reasonably concluded that an occurrence covered hereunder involved injuries or damages which, in the event that the Assured should be held liable, is likely to involve this policy, notice shall be sent to:

   Willis of New York
   7 Hanover Square
   New York, NY  10004

   as soon as practicable, provided, however, that failure to notify the above firm of any occurrence which at the time of its happening did not appear to involve this Section II, but which, at a later date, would appear to give rise to claims hereunder, shall not prejudice such claims.

4. **ASSISTANCE AND COOPERATION:**

   This Company shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceedings instituted against the Assured, but this Company shall have the right and shall be given the opportunity to associate with the Assured or the Assured's Underlying Insurers, or both, in the defense and control of any claim, suit or proceeding relative to an occurrence where the claim or suit involves or appears reasonably likely to involve this Company in which event the Assured, the Underlying Insurers and this Company shall cooperate in all things in the defense of such claim, suit or proceeding.

Attached to and forming a part of Risk Control #WCM05-531
Dated: May 2nd, 2005
Page 11 of 22



5. **APPEALS:**

In the event the Assured or the Assured's Underlying Insurers elect not to appeal a judgment in excess of the Underlying Limit, this Company may elect to make such appeal at their own cost and expense, and shall be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall the liability of this Company for Ultimate Net Loss exceed the amount set forth in Policy Declarations as the Sum Insured for any one occurrence and in addition the cost and expense of such appeal plus the taxable costs and disbursements and interest incidental thereto.

6. **BANKRUPTCY OR INSOLVENCY:**

In the event of the bankruptcy or insolvency of the Assured or any entity comprising the Assured, this Company shall not be relieved thereby of the payment of any claim hereunder because of such bankruptcy or insolvency.

7. **OTHER INSURANCE:**

If other valid and collectible insurance with any other Insurer is available to the Assured covering a loss also covered by this Policy, other than insurance that is in excess of the insurance afforded by this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance, either as double insurance or otherwise. Nothing herein shall be construed to make this Policy subject to the terms, conditions and limitations of other insurance.

8. **SUBROGATION:**

Inasmuch as this policy provides "Excess Coverage", the Assured's right of recovery against any person or other entity cannot be exclusively subrogated to this Company. It is, therefore, understood and agreed that in case of any payment hereunder, this Company will act in concert with all other interests (including the Assured) concerned, in the exercise of such rights of recovery. The apportioning of any amount which may be so recovered shall follow the principle that any interests (including the Assured) that shall have paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by them; this Company is then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the Assured) of whom this coverage is in excess are entitled to claim the balance, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests (including the Assured) concerned in the ratio of their respective recoveries as finally settled.

9. **ASSIGNMENT:**

Assignment of interest under this Policy shall not bind this Company until their consent is endorsed herein.

Attached to and forming a part of Risk Control #WCM05-531
Dated:  May 2nd, 2005
Page 12 of 22



10. **CONFLICTING STATUTES:**

In the event that any provision of this Policy is unenforceable by the Assured under the laws of any State, Province or other jurisdiction wherein it is claimed that the Assured is liable for any injury covered hereby, because of noncompliance with any statute thereof, then this Policy shall be enforceable by the Assured with the same effect as if it complied with such statute.

11. **MAINTENANCE OF UNDERLYING INSURANCE:**

A. It is a condition of this policy that the Section(s) or Policy(ies) referred to below in the "Schedule of Underlying Insurance' shall be maintained in full effect during the currency of this insurance except for any reduction of the aggregate limit(s) contained therein solely by payment of claims in respect of accidents and/or occurrences, occurring during the term of this Policy.

B. Inadvertent failure of the Assured to comply with Paragraph A above or inadvertent failure to notify this Company of any changes in the Underlying Insurances shall not prejudice the Assured's rights of recovery under this Policy, but in the event of such failure, this Company to be liable only to the same extent as they would have been had the Assured complied with the said condition.

C. In the event of an Underlying War Risks Insurance being cancelled by the this Company thereon under the terms of the cancellation clause therein, such cancellation shall not constitute a breach of Paragraph A above, but this Company to be liable hereunder only to the same extent as they would have been had that Underlying War Risks Insurance not been cancelled. Nothing in the foregoing sentence shall be deemed to affect the application of Exclusion 8 hereunder.

Attached to and forming a part of Risk Control #WCM05-531
Dated:   May 2nd, 2005
Page 13 of 22



## SCHEDULE OF UNDERLYING INSURANCES

| Policy | Underwriter | Limits of Liability/Coverages |
|---|---|---|
| Primary Marine Liabilities | New York Marine & General Insurance Company - 100% | $5,000,000 per occurrence for Stevedores/Wharfingers/Landing Owners Liability<br>$5,000,000 per occurrence for Charterers Liability<br>$5,000,000 Combined Occurrence Aggregate |
| P&I Club Policies: | | |
| Lafarge Canada Inc. | American Steamship Owners Mutual P&I Association | Per Club Rules for Protection & Indemnity (including 4/4ths Collision Liability)<br><br>$1,000,000,000 for Pollution Liability<br><br>$1,000,000 for Towers Liability |
| Lafarge North America Inc. | American Steamship Owners Mutual P&I Association | Per Club Rules for Protection & Indemnity (including 4/4ths Collision Liability)<br><br>$1,000,000,000 for Pollution Liability<br><br>$1,000,000 for Towers Liability |

WCM05-531.Confirmation

Attached to and forming a part of Risk Control #WCM05-531

Dated: May 2nd, 2005

Page 14 of 22



## EXCESS MARINE LIABILITIES
## SUPPLEMENTARY CLAUSES

The following provisions shall supersede any inconsistent provisions of this Policy.

1. **CONDITIONAL EXCLUSIONS:**

   As respects all activities of the Assured (except liability arising out of ownership, charter, use, operation, maintenance, loading, unloading or as a bailee of any watercraft not otherwise excluded or limited herein), this insurance shall be free from liability (unless coverage is provided in an Underlying Policy scheduled herein, and then coverage hereunder shall operate only as excess of such coverage):

   A. From operation, ownership, or use of any automobile, truck or aircraft;

   B. From any employee with respect to personal injury to or death of another employee of the same employer injured in the course of such employment;

   C. For damage, loss, or expense to property of others which occured while in the care, custody or control of the Assured hereunder;

   D. Assumed under contract;

   E. Arising out of goods or products manufactured, sold, handled or distributed by the Assured or by others trading under his name (hereinafter called "the Assured's Products") if the occurrence occurs after possession of such goods or products has been relinquished to others by the Assured or by others trading under his name and if such occurrence occurs away from premises owned, rented or controlled by the Assured; provided such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;

   F. Arising out of operations, if the occurrence occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the Assured; provided that operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further the following shall not be deemed to be "operations" within the meaning of this Paragraph F:

      i. Pick-up or delivery, except from or onto a railroad car;

      ii. The maintenance of vehicles owned or used by or in behalf of the Assured;

      iii. The existence of tools, uninstalled equipment and abandoned or unused materials.

WCM05-531 Confirmation

Attached to and forming a part of Risk Control #WCM05-531
Dated:   May 2nd, 2005
Page 15 of 22



2.  **ABSOLUTE EXCLUSIONS:**

This insurance shall be free from liability or expense arising:

    A.  From any non-marine operation of the Assured;

    B.  From the failure of the Assured's non-marine products;

    C.  From infidelity and/or dishonesty of the Assured, or any employee or representative of the Assured committed individually or in collusion with others;

    D.  From ownership, use or operation of drilling rigs, drilling barges, drilling tenders, platforms, flow lines (used in petrochemical production and/or refining), gathering stations and/or pipelines, but this exclusion shall not apply to craft serving the foregoing including, but not limited to, crew, supply, utility or work boats, tenders or tugs,

    E.  Under Employees Retirement Income Security Act (ERISA);

    F.  Under United States Longshoremen's and Harbor Workers' Act (USL&H)

    G.  For loss of life or personal injury to employees of the Assured for which the Assured or any carrier as his insurer may be held liable under any State, Federal or Provincial worker's compensation, unemployment compensation, disability benefits law, occupational disability or under any similar law;

    H.  Because of the violation of any statute, law, ordinance or regulation prohibiting discrimination or humiliation because of race, creed, color, national origin, age and/or sex;

    I.  From the failure of the Assured's products or work completed by or for the Assured to perform the function or serve the purpose intended by the Assured, if such failure is due to mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any Assured except with respect to bodily injury or property damage as a result of said failure provided such property damage or bodily injury is insured in the Underlying Insurance scheduled herein;

    J.  From any activity as a ship repairer or shipbuilder other than for maintenance and repairs by the Assured to his own vessel(s).

    K.  From bodily injury or personal injury or loss of, damage to or loss of use of property directly or indirectly caused by asbestos.

    L.  From bodily injury or personal injury or loss of, damage to or loss of use of property directly or indirectly caused by Polychlorinated Biphenyl or any derivative thereof.

Attached to and forming a part of Risk Control #WCM05-531
Dated:  May 2nd, 2005
Page 16 of 22



3.  **SPECIAL CONDITIONS:**

A.  Additional Assureds

In the event of Additional Assureds being added to the coverage under the Underlying Insurances during the currency hereof which results in an additional premium being charged by the Underlying Insurers, prompt notice shall be given to this Company who shall be entitled to charge an appropriate additional premium.

B.  Prior Insurance and Non-Cumulation of Liability

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof, the limit(s) of liability as stated in the Policy Declarations as the Sum Insured shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

C.  Special Conditions Applicable to Occupational Disease

As regards personal injury (fatal or nonfatal) by occupational disease sustained by any employee of the Assured, this Policy is subject to the same warranties, terms and conditions (except as regards the premium amounts, limits of liability and the renewal agreement, if any) as are contained in or as may be added to the Underlying Insurance prior to the happening of an occurrence for which claim is made hereunder.

D.  Subrogation

In the event of any payment under this Policy, this Company shall participate with the Assured and any Underlying Insurers in the exercise of all the Assured's rights of recovery therefore against any person or organization. All recoveries shall be applied as if recovered prior to any payment under this Policy and to that end all necessary adjustments shall be made as soon as practicable thereafter. The expense of any subrogation proceeding brought to enforce such rights shall be apportioned among this Company, the Underlying Insurers and the Assured in accordance with their respective interests in the matter giving rise to such rights.

4.  **DEFINITIONS:**

These definitions shall apply as respects all activities of the Assured other than liability arising out of the ownership, charter, use, operation, maintenance, loading, unloading or as a bailee of any watercraft.

WCM05-531.Confirmation

Attached to and forming a part of Risk Control #WCM05-531
Dated:  May 2ⁿᵈ, 2005
Page 17 of 22



A. **PERSONAL INJURIES:**

The term "Personal Injuries" whenever used herein means bodily injury (including death at any time resulting therefrom), mental injury, mental anguish, shock, sickness, disease, disability, false arrest, false imprisonment, wrongful eviction, detention, malicious prosecution; also libel, slander, disparagement or defamation of character or invasion of rights of privacy, except that which arises out of any advertising activities.

B. **PROPERTY DAMAGE:**

The term "Property Damage" whenever used herein shall mean loss of or direct damage to or destruction of tangible property (other than property owned by the Named Assured).

Attached to and forming a part of Risk Control #WCM05-531
Dated:   May 2nd, 2005
Page 18 of 22

# Willis

## ADDITIONAL CLAUSES

## AIMU U.S. ECONOMIC AND TRADE SANCTIONS CLAUSE

Whenever coverage provided by this policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control (OFAC) such coverage shall be null and void.

Similarly any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

## EXCLUSION - SILICA

This insurance does not apply to:

1. "Bodily injury" arising in whole or in part out of the actual, alleged or threatened respiration or ingestion at any time of "silica" or:

2. "Property damage" arising in whole or in part out of the actual, alleged or threatened presence of "silica", or

3. "Personal and advertising injury' arising in whole or in part out of the actual, alleged or threatened exposure at any time to or the presence of "silica".

The following definition applies herein:
"silica" means the chemical compound silicon dioxide (Si02) in any form, including dust which contains "silica".

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

WCM05-531.Confirmation

Attached to and forming a part of Risk Control #WCM05-531
Dated: May 2nd, 2005
Page 19 of 22



## EXCLUSION - RESPIRABLE DUST

This insurance does not apply to:

1. "Bodily injury" arising in whole or in part out of the actual, alleged or threatened respiration or ingestion at any time of "respirable dust" or:

2. "Property damage" arising in whole or in part out of the actual, alleged or threatened presence of "respirable dust", or

3. "Personal and advertising injury' arising in whole or in part out of the actual, alleged or threatened exposure at any time to or the presence of "respirable dust".

The following definition applies herein:
"respirable dust" means respirable particulate matter but does not include living organisms.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

WCM05-531.Confirmation

Attached to and forming a part of Risk Control #WCM05-531
Dated:  May 2nd, 2005
Page 20 of 22

# FUNGI / MOLD / MILDEW / YEAST / MICROBE EXCLUSION

This insurance does not apply to:

Fungi and Microbes

(1) "Bodily injury", "property damage", "personal injury or advertising injury" which would not have occurred in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, contact with, exposure to, existence of, or presence of any "fungi" or microbes".

(2) Any loss, cost or expense arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, or disposing of, or in any way responding to or assisting the effects of "fungi" or "microbes" by any insured or by anyone else.

This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage, loss, cost or expense.

The following definitions apply herein:

"Fungi" means any form of fungus, yeast, mold, mildew or mushroom, including mycotoxins, spores, scents, byproducts or other substances produced or released fungi. But "fungi" does not include fungi that were deliberately grown for human consumption.

"Microbe" means any bacteria, virus, or any other non-fungal, single celled or colony-form organism, including any towins, scents, byproducts or other substances it produces or releases, whose injurious source is in or on a building or its contents. But "microbe" does not mean:

(1) Microbes that were transmitted directly from person to person.;
(2) Microbes that caused food poisoning, if your business is food processing sales or serving.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED

WCM05-531.Continuation

Attached to and forming a part of Risk Control #WCM05-531
Dated:   May 2nd, 2005
Page 21 of 22

# Willis

## <u>AIMU EXTENDED RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE</u>
## <u>(March 1, 2003)</u>
## <u>WITH U.S.A. ENDORSEMENT</u>

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

1.  In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from

    1.1 ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

    1.2 the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

    1.3 any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter

    1.4 the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

WCM05-531 Confirmation

# Willis

## RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE (U.S.A. ENDORSEMENT)

This insurance is subject to the Extended Radioactive Contamination Exclusion Clause (March 1, 2003) provided that

if fire is an insured peril

and

where the subject matter insured is within the U.S.A., its islands, onshore territories or possessions

and

a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1.1, 1.2, and 1.4 of the Extended Radioactive Contamination Exclusion Clause March 1, 2003 any loss or damage arising directly from that fire shall, subject to the provisions of this insurance, be covered, EXCLUDING however any loss damage liability or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

## AIMU CHEMICAL, BIOLOGICAL, BIO-CHEMICAL, AND ELECTROMAGNETIC EXCLUSION CLAUSE (March 1, 2003)

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from an actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

# EXHIBIT C

2005/06

THE AMERICAN CLUB
BY-LAWS, RULES &
LIST OF CORRESPONDENTS



THE
AMERICAN
CLUB

EXHIBIT
Mitchell 7
2-22-05 DC

PENGAD 800-631-6989

**RULE 1   INTRODUCTORY: INTERPRETATION: MEMBERSHIP: GENERAL PROVISIONS**

Managers or by any servant or agent of the Managers to whom the same shall have been delegated or sub-delegated.

48   Whenever any power, duty or discretion is stated in these Rules to be vested in the Directors, such power, duty or discretion shall be exercisable by the Directors unless the same shall have been delegated to any Committee of the Directors or to the Managers in accordance with the provisions as regards delegation contained in the By-Laws, in which event the power, duty or discretion may be exercised by any person to whom the same shall have been so delegated.

**Members and Successors Bound by Rules**

49   All contracts of insurance effected by the Association shall, save and insofar as they contain any special terms inconsistent herewith, be deemed to incorporate and shall incorporate all the provisions of these Rules. A Member or other person by whom or on whose behalf an application is made for insurance or reinsurance by the Association shall be deemed to have agreed not only on his own behalf but also on behalf of his successors and each of them that both he and they will in every respect be subject to and bound by the provisions of these Rules and by any contract of insurance with the Association.

38

**RULE 2   RISKS AND LOSSES COVERED**

Each Member of the Association shall be indemnified in connection with each vessel entered in the Association for Protection and Indemnity insurance against any loss, damage or expense which the Member shall become liable to pay and shall pay by reason of the fact that the Member is the owner (or operator, manager, charterer, mortgage, trustee, receiver or agent, as the case may be) of the insured vessel, subject to the provisions of these Rules and to all the limitations herein stated or agreed to by the acceptance of the application for membership, or by the entry of the vessel, in the Association, and which shall result from the following liabilities, risks, events, occurrences and expenditures; provided that such liabilities, risks, events, occurrences and expenditures arise in respect of the Member's interest in such vessel; and in connection with the operation of such vessel by or on behalf of the Member; and out of events occurring during the period of entry of such vessel.

**Section 1**   LOSS OF LIFE, INJURY AND ILLNESS

A   Liability for life salvage in respect of, or loss of life of, or personal injury to, or illness of, any person, (other than the persons specified in paragraphs B, C and D of this Section) and hospital, medical or funeral expenses incurred in relation to such injury, illness or death.

B   Liability for life salvage in respect of, or loss of life of, or personal injury to, or illness of, any seaman and hospital, medical or funeral expenses incurred in relation to such injury, illness or death.

1   Liability hereunder shall include liability arising ashore or afloat.

2   For the purposes of this Rule 2, Section 1, B a seaman shall be defined as an employee of the Member:

   a   who is the master or a member of the crew of the insured vessel; or

   b   who is on board the insured vessel with the intention of becoming a member of her crew; or

39

# EXHIBIT D

# HILL RIVKINS

45 Broadway, Suite 1500, New York, NY 10006-3739   Tel: (212) 669-0600
Fax: (212) 669-0698/0699                         e-mail: thefirm@hillrivkins.com
Website: www.hillrivkinslaw.com

**75th ANNIVERSARY**
**HILL RIVKINS**
**1933-2008**

March 11, 2008

*Via Telecopier: 212-983-5946*
David Fromm, Esq.
Brown Gavalas & Fromm LLP
355 Lexington Avenue
New York, NY 10017

Re:   **New York Marine and General Insurance
Company v. Lafarge North America, Inc.
05 Civ. 9612 (CSH)
<u>Our File No: 29089-RGC/JJS</u>**

Dear Mr. Fromm:

Further to prior correspondence, we enclose herewith a further spreadsheet setting forth the updated defense costs incurred by Lafarge North America, Inc. ("LNA") to date with respect to the proceedings pending in the Eastern District of Louisiana.

At this juncture, LNA has expended the sum of $7,493,699.81, not including the defense costs, expert witness expenses and other costs that may have been incurred by New York Marine and General Insurance Co. ("NYMAGIC"). Thus, the defense costs significantly exceed the primary layer. As you know the excess cover affords underwriters no specific rights to select or approve counsel or pre-approve such costs. Consequently, the expenses falling within the excess layer ought to be approved immediately.

In addition to the foregoing, LNA continues to incur fees in defending the declaratory judgment action brought by your clients. If LNA should prevail in the declaratory judgment action, these fees will be recoverable as well.

Accordingly, we again demand that NYMAGIC and following underwriters undertake their respective obligations and immediately reimburse LNA for the sums expended to date and to assume the further defense costs that will be incurred in the EDLA proceedings.

NEW JERSEY
175 North Broadway
South Amboy, NJ 08879-1638
Tel: (732) 838-0300 Fax: (732) 316-2365
e-mail: thefirm@hillrivkins.com

TEXAS
712 Main Street, Suite 1515
Houston, TX 77002-3209
Tel: (713) 222-1515 Fax: (713) 222-1359
e-mail: hillrivkinstexas@hillrivkins.com

CONNECTICUT
60 Quarry Dock Road
Branford, CT 06405-4654
Tel: (203) 315-9274 Fax: (203) 315-9264
e-mail: hillrivkinsct@snet.net

CALIFORNIA
Hill Rivkins/Brown & Associates
11140 Fair Oaks Boulevard, Suite 100
Fair Oaks, CA 95628-5126
Tel: (916) 535-0263 Fax: (916) 535-0268
e-mail: thefirm@brnlaw.com

March 11, 2008
Page Two


     Needless to say, LNA strictly reserves all of its rights and defenses which will be taken up with the Court in due course should this matter not be resolved to its satisfaction.

                    Very truly yours,

               HILL RIVKINS & HAYDEN LLP

               Robert G. Clyne

/cb
Enclosure
093-Fromm

HILL
RIVKINS

# Barge Costs

### Updated 2/15/08

| | 2008 YTD | 2007 YTD | 2006 Actuals* | 2005 Actuals* | Project to Date |
|---|---|---|---|---|---|
| **Legal** | | | | | |
| Goodwin Procter | 580,549.63 | 2,462,573.83 | 1,278,320.79 | 677,473.39 | 4,998,917.64 |
| Holland & Knight | – | – | 27,705.55 | 258,215.52 | 285,921.07 |
| Chaffe McCall | 104,583.66 | 1,069,595.29 | 805,260.07 | 229,017.28 | 2,208,456.30 |
| Other | 404.80 | | | | 404.80 |
| **SUBTOTAL:** | **$685,538.09** | **$3,532,169.12** | **$2,111,286.41** | **$1,164,706.19** | **$7,493,699.81** |
| | | | | | |
| **Legal - Paid by Insurance (MMO)** | | | | | |
| Experts* as of 12/31/07 | | 1,237,147.97 | 1,537,202.98 | 111,771.23 | 2,886,122.18 |
| Sutterfield Webb | | 175,345.09 | 254,223.43 | – | 429,568.52 |
| **SUBTOTAL:** | **$0.00** | **$1,412,493.06** | **$1,791,426.41** | **$111,771.23** | **$3,315,690.70** |
| | | | | | |
| **GRAND TOTAL:** | **$685,538.09** | **$4,944,662.18** | **$3,902,712.82** | **$1,276,477.42** | **$10,809,390.51** |
| | | | | | |
| **Claims Paid** | | | | | |
| Chaffe McCall | – | – | 240,000.00 | – | 240,000.00 |
| **SUBTOTAL:** | **$0.00** | **$0.00** | **$240,000.00** | **$0.00** | **$240,000.00** |

```
************************
***   TX REPORT   ***
************************
```

TRANSMISSION OK

| TX/RX NO | | 4234 |
| CONNECTION TEL | | 912129835946 |
| CONNECTION ID | | |
| ST. TIME | | 03/11 16:23 |
| USAGE T | | 01'03 |
| PGS. SENT | | 4 |
| RESULT | | OK |

# HILL RIVKINS & HAYDEN LLP

### 45 Broadway – Suite 1500
### New York, New York 10006-3739
### 212-669-0600
### Fax: 212-669-0698/99
### E-mail:TheFirm@HillRivkins.com

## FACSIMILE TRANSMITTAL SHEET

| TO: | FROM: |
| David Fromm, Esq. | Robert G. Clyne, Esq. |
| COMPANY: | DATE: |
| Brown Gavalas & Fromm | March 11, 2008 |
| FAX NUMBER: | TOTAL NO. OF PAGES INCLUDING COVER: |
| 212-983-5946 | 4 |
| PHONE NUMBER: | OUR FILE NUMBER: |
| | 29089-RGC/JJS |
| RE: | YOUR REFERENCE NUMBER: |
| New York Marine, *et al.* v. Lafarge *et al.* | |
| 05 Civ. 9612 (CSH) | |

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

NOTES/COMMENTS:

## PLEASE SEE ATTACHED.

# EXHIBIT E

# BROWN GAVALAS & FROMM LLP

### 355 LEXINGTON AVENUE
### NEW YORK, NEW YORK 10017

TEL: (212) 983-8500
FAX: (212) 983-5946
www.browngavalas.com
bgmail@browngavalas.com

NEW JERSEY OFFICE

1118 CLIFTON AVENUE
CLIFTON, NJ 07013
TEL: (973) 779-1116
FAX: (973) 779-0739

HARRY A. GAVALAS
(1978-1999)
ROBERT J. SEMINARA
(1987-1999)

March 26, 2008

Hill Rivkins & Hayden LLP
45 Broadway, Suite 1500
New York, New York 10006

Attn:   Robert G. Clyne, Esq.

Re:    *NYMAGIC v. LaFarge North American, Inc.*
       United States District Court for the Southern District of New York
       05 Civ. 9612 (CSH)
       Our Ref:  460.1324

Dear Mr. Clyne:

We are writing in response to your letter of March 11, 2008, wherein you advised that Lafarge North America, Inc. ("LNA") has expended nearly $7.5 million in defense costs and expenses in connection with Hurricane Katrina and the proceedings pending in the United States District Court for the Eastern District of Louisiana.

As you are well aware, the defense costs and expenses incurred to date by LNA have not been approved or authorized by New York Marine and General Insurance Company ("NYMAGIC"). Moreover, NYMAGIC has not agreed to or authorized the retention of Goodwin Procter, Chaffe McCall or Holland & Knight by LNA. Accordingly, NYMAGIC will not reimburse LNA for sums expended to date or any future unauthorized defense costs and expenses incurred by LNA.

In addition, at this time, NYMAGIC has not exhausted the limits of the primary policy with the defense costs and expenses it has incurred to date. However, if and when, the primary policy limits are exhausted, NYMAGIC and the other underwriters on the excess policy will still maintain the right and authority to approve and authorize all defense counsel and defense costs that are incurred in this matter. Despite your claim to the contrary, underwriters right to approve counsel and defense costs does not extinguish once the primary policy is exhausted. Should you have any case law or other authority in support of your position, please provide it to us and we will be pleased to review it.

This letter is written without prejudice to NYMAGIC's position in the above-referenced declaratory judgment action and the pending submissions to the Court.

**BROWN GAVALAS & FROMM LLP**

Hill Rivkins & Hayden LLP
March 26, 2008
Page 2

Neither this letter nor any future communication shall be constructed as a waiver of the rights and/or defenses available to NYMAGIC under the policy, at law or otherwise.

Very truly yours,

BROWN GAVALAS & FROMM LLP

David H. Fromm