UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
THE NORTHERN ASSURANCE COMPANY
OF AMERICA and AMERICAN HOME
ASSURANCE COMPANY,

                        Plaintiffs,

  - against -                                         08 CV 3289 (CSH) (AJP)

LAFARGE NORTH AMERICA, INC. and
AMERICAN STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY                       **Electronically Filed**
ASSOCIATION, INC.

                        Defendants.
-------------------------------------------------------------X


**REPLY MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' MOTION TO CONSOLIDATE**


                                                      NICOLETTI HORNIG & SWEENEY
                                                      Wall Street Plaza
                                                      88 Pine Street, Seventh Floor
                                                      New York, New York 10005
                                                      (212) 220-3830

                                                      *Attorneys for Plaintiffs*
                                                          *The Northern Assurance Company of America*
                                                         *and American Home Assurance Company*


Of Counsel

John A. V. Nicoletti
Nooshin Namazi
Kevin J.B. O'Malley

## PRELIMINARY STATEMENT

Plaintiffs The Northern Assurance Company of America and American Home Assurance Company (collectively, the "Excess Underwriters") submit this Reply Memorandum of Law in further support of their motion to consolidate this action for all purposes with *American Steamship Owners Mutual Protection and Indemnity Association v. Lafarge North America, Inc.*, 06 CV 3123 (the "Club Action").

## REPLY TO FACTUAL BACKGROUND

As it is not necessary for the purposes of this motion, the Excess Underwriters will not respond to each and every factual assertion made by Defendants American Steamship Owners Mutual Protection and Indemnity Association (the "American Club" or the "Club") and Lafarge North America, Inc. ("Lafarge") in their respective oppositions to the motion to consolidate. The Excess Underwriters do not, however, agree that the Club and Lafarge have accurately summarized all of the facts underlying the subject insurance coverage dispute.[1]

## ARGUMENT

The American Club and Lafarge both oppose the motion to consolidate on the same two grounds. *See generally* Club Opp. at pp. 7-11; Lafarge Opp. at pp. 25-27. First, it is argued that there is insufficient commonality between the two actions to warrant consolidation. Second, it is asserted that consolidation would unreasonably delay resolution of the Club Action. Neither ground withstands scrutiny.

---

[1] For example, the Excess Underwriters do not agree that the percentage of risk each excess underwriter subscribed to under the Excess Policy is correctly described by Lafarge.

POINT I

COMMON QUESTIONS OF LAW
AND FACT NEED NOT PREDOMINATE

The Club and Lafarge assert that consolidation would not be appropriate because the instant action (the "Excess Action") and the Club Action purportedly have little in common. The two actions have more in common than the Club and Lafarge contend.

The Club and Lafarge both acknowledge that the Club Action and the Excess Underwriter's first cause of action involve common – indeed, identical – questions of law and fact. *See* Club Opp. at p. 6; Lafarge Opp. at pp. 2 & 25-26. They both dispute, however, that the remaining causes of action in the Excess Action share any questions of fact or law in common with the Club Action. *See* Club Opp. at p. 7; Lafarge Opp. at pp. 2, 6 & 27. The Club's and Lafarge's position is overstated.

In their second cause of action, the Excess Underwriters seek a judgment declaring that, if Lafarge failed to comply with the requirements necessary to bring the Barge ING 4727 within the scope of the coverage provided through the American Club, then the Excess Underwriters should not be required to pay under the Excess Policy until an amount equivalent to the full amount of coverage provided through the Club has been paid by Lafarge. *See* Exhibit "1" ("Excess Complaint") to Declaration of John A.V. Nicoletti in Support of Motion to Consolidate ("Nicoletti Decl.") at p. 22 ¶¶ 85-86. This cause of action relates directly to the claims and counter-claims asserted in the Club Action. In that action, the Club asserts, *inter alia*, that Lafarge failed to comply with the requirements necessary to bring the barge within the Club's cover. *See, e.g.*, Club Opp. at p. 5. Lafarge is, of course, advancing the opposite position. If Lafarge prevails and it is determined that there is cover through the Club, then there will be no need to proceed with the Excess Underwriters' second cause of action. On the other hand, if the

2

Club prevails and it is determined that there is no cover through the Club, then an adjudication of the Excess Underwriter's second cause of action would be required. That adjudication would be guided, if not controlled, by the facts determined in the Club Action. In other words, the Club's allegation in the Club Action that there is no cover because of Lafarge's actions or inactions are relevant to the Excess Underwriter's second cause of action. Thus, the Excess Underwriters' second cause of action relates to the same actions and inactions by Lafarge and has questions of fact in common with the Club Action.

In their fourth cause of action, the Excess Underwriters seek a judgment declaring that, by virtue of the "other insurance" clauses contained in the subject policies and rules, the Excess Policy is excess to both the primary policy issued by New York Marine and General Insurance Company ("NYMAGIC") and the coverage provided through the American Club. *See* Excess Complaint at p. 26 ¶¶ 105 & 107. Both the Club and Lafarge assert that this cause of action has nothing in common with the claims and counter-claims asserted in the Club Action. *See* Club Opp. at p. 8; Lafarge Opp. at p. 27. To the contrary, the Club has raised the "other insurance" clause contained in its Rules as a reason for why coverage is allegedly not available through the Club. *See* Exhibit "4" ("American Club Complaint") to Nicoletti Decl. at pp. 8-9 ¶¶ 44-45 & 47. An interpretation of and ruling on the "other insurance" clauses contained in the Club Rules, the NYMAGIC policy and the Excess Policy will be required in both actions. Therefore, the two actions share a common question of law concerning the interpretation of the "other insurance" clauses.

The Excess Underwriter's third cause of action, admittedly, does not share much in common with the Club Action. Rule 42 does not, however, require that two actions have complete commonality before consolidation may be ordered. Contrary to the Club's position

3

(*see* Club Opp. at p. 7), "[c]ommon questions of law and fact do not have to predominate. All that is required is that the district court find they exist and that consolidation will prove beneficial." 8 *Moore's Federal Practice*, § 42.10[1][b] (Matthew Bender 3d ed.) (citing *Hanes Cos. v. Ronson*, 712 F. Supp. 1223, 1230 (M.D.N.C. 1988).[2]

## POINT II

## NO NEW DISCOVERY WOULD BE NEEDED

Both the Club and Lafarge also argue that the two actions should not be consolidated because consolidation would, in their view, unreasonably delay resolution of the Club Action. In particular, they assert that great delay would result from the purported need to re-open discovery on issues arising out of the Excess Underwriters' first cause of action and from opening discovery on issues arising out of the remaining causes of action. *See* Club Opp. at pp. 8-9; Lafarge Opp. at pp. 27. The Club's and Lafarge's concerns are overstated. No new discovery would be needed on any of the Excess Underwriter's causes of action either because the necessary discovery has already been taken or because the issues present questions of law for which no discovery is required.

With regard to the Excess Underwriters' first cause of action, the necessary discovery has already been taken by the Club and Lafarge in the Club Action because this cause of action overlaps with the claims and counter-claims asserted in the Club Action. To the extent any

---

[2] Lafarge's citation to *In re Repetitive Stress Injury Litigation*, 11 F.3d 368 (2d Cir. 1993), is inapposite. In that case, the court of appeals held that the district court had incorrectly consolidated forty-four actions in which "the sole common fact among these cases is a claim of injury of such generality that it covers a number of different ailments for each of which there are numerous possible causes other than the tortious conduct of one of the defendants." *Repetitive Stress*, 11 F.3d at 373. Here, there is more than a solitary fact or question of law that is common to both actions and the common issues of fact and law are not of a general nature. Furthermore, the cases in *Repetitive Stress* were asbestosis cases in which a unique standard for consolidation applies. *See id*.

4

discovery is required for the second cause of action, it will have already been taken in conjunction with the first cause of action as the second essentially stems from the first. Similarly, any discovery that would be required for the third cause of action will have already been taken in and can be obtained from the parties to *New York Marine and General Insurance Company v. Lafarge North America, Inc.*, 05 CV 9612. No discovery will be required for the fourth cause of action because the issue therein (*i.e.*, interpretation of the "other insurance" clauses) presents a question of law. *See, e.g., Int'l Multifoods Corp. v. Commercial Union Ins. Co.,* 309 F.3d 76, 83 (2d Cir. 2002) (" 'Under New York law, the initial interpretation of a contract is a matter of law for the court to decide' . . . . 'If the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence' . . . ."). Accordingly, despite Lafarge's concerns (*see* Lafarge Opp. at p. 26), the Excess Action should be ready for trial at or about the same time as the Club Action. Judicial efficiency and economy would be better served by having one trial on the common issues presented by these actions rather than two.

The Club asserts that the Excess Underwriters "would likely want to depose the brokers responsible for obtaining the excess marine liability policy for Lafarge, personnel from each of the underwriters (of which there are three), and Lafarge representatives involved in procuring insurance cover." Club Opp. at p. 10. The Excess Underwriters represent that no discovery on these issues would be sought.

### POINT III

### CONSOLIDATION IS NOT THE SAME AS INTERVENTION

As a separate grounds for denying consolidation, Lafarge asserts that the Excess Underwriters' motion to consolidate is really a disguised motion to intervene in the Club Action.

*See* Lafarge Opp. at p. 28.  The instant motion is nothing of a sort.  The Excess Underwriters do not seek intervention; they seek consolidation.  Contrary to Lafarge's assertion, the purposes of the two procedural mechanisms are different.[3]

"The purpose of consolidation is to avoid 'needless duplication of time, effort and expense on the part of the parties and the court in the conduct of pretrial discovery proceedings and the trial itself.' " *Hayes v. Coughlin*, Nos. 87 Civ. 7401, 89 Civ. 5498, 1991 WL 150194, at *1 (S.D.N.Y. Jul. 31, 1991) (citation omitted).  "The purpose of the rule allowing intervention is to prevent a multiplicity of suits where common questions of law or fact are involved.  However, the rule is not intended to allow for the creation of whole new suits by intervenors."  *Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990).  Whereas an "intervening party [ ] becomes a 'party' [in the lawsuit] for the purpose of protecting some right or interest alleged by the intervenor to be affected by the proceeding," *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994), consolidation " 'does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another,' " *Hayes*, 1991 WL 150194 at *1 (citation omitted).

Intervention is unavailable in the current procedural posture, not for the reasons advanced by Lafarge, but because "the rule is not intended to allow for the creation of whole new suits by intervenors."  *Washington Elec.*, 922 F.2d at 97.  Although the Excess Action and the Club Action involve common questions of law and fact, they are two separate actions.  Intervention is not meant to join two separate lawsuits.  Consolidation is, therefore, the only appropriate

---

[3] Lafarge's citation to *Davis v. Board of School Com'rs of Mobile County*, 517 F.2d 1044 (5th Cir. 1975), is inapposite.  That case does not stand for the broad proposition advanced by Lafarge that "the policies behind intervention and consolidation are analogous."  Lafarge Opp. at p. 28.  Instead, the court of appeals' statement in *Davis* regarding the semantical difference between consolidation and intervention was limited to "the context of this type proceeding" (*i.e.*, civil rights class action).  *Davis*, 517 F.2d at 1049.

mechanism by which the Court can hear the two actions together. Lafarge's intervention analysis is misplaced and should be disregarded.

## CONCLUSION

For the foregoing reasons, the instant action should be consolidated for all purposes with the *American Steamship Owners Mutual Protection and Indemnity Association v. Lafarge North America, Inc.*, 06 CV 3123.

Dated: June 16, 2008
       New York, New York

                                  NICOLETTI HORNIG & SWEENEY

                                  *Attorneys for Plaintiffs*
                                      *The Northern Assurance Company of America*
                                      *and American Home Assurance Company*

By:    /s John A. V. Nicoletti
          John A. V. Nicoletti
          Wall Street Plaza
          88 Pine Street, Seventh Floor
          New York, New York 10005
          (212) 220-3830