**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
THE NORTHERN ASSURANCE COMPANY
OF AMERICA and AMERICAN HOME
ASSURANCE COMPANY,

                      Plaintiffs,

    - against -                                      **08 CV 3289 (CSH) (AJP)**

LAFARGE NORTH AMERICA, INC. and
AMERICAN STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY                      **Electronically Filed**
ASSOCIATION, INC.

                      Defendants.
-------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION
## TO MOTION TO STAY

                                NICOLETTI HORNIG & SWEENEY
                                Wall Street Plaza
                                88 Pine Street, Seventh Floor
                                New York, New York 10005
                                (212) 220-3830

                                *Attorneys for Plaintiffs*
                                   *The Northern Assurance Company of America*
                                   *and American Home Assurance Company*

Of Counsel

John A. V. Nicoletti
Nooshin Namazi
Kevin J.B. O'Malley

## PRELIMINARY STATEMENT

Plaintiffs The Northern Assurance Company of America and American Home Assurance Company (collectively, the "Excess Underwriters") submit this Memorandum of Law in opposition to Defendant American Steamship Owners Mutual Protection and Indemnity Association's (the "American Club" or the "Club") motion to stay this action (the "Excess Action") pending the outcome of *American Steamship Owners Mutual Protection and Indemnity Association v. Lafarge North America, Inc.*, 06 CV 3123 (the "Club Action").

## RESPONSE TO FACTUAL BACKGROUND

As it is not necessary for the purposes of this opposition, the Excess Underwriters will not respond to each and every factual assertion made by the Club in its motion. The Excess Underwriters do not, however, agree that the Club has accurately summarized all of the facts underlying the subject insurance coverage dispute.

## ARGUMENT

The Supreme Court has recognized that "the power to stay proceedings is incidental to the power in every court to control the disposition of the causes on its docket." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). "Courts are generally reluctant to stay proceedings out of concern for a plaintiff's right to proceed with its case." *American Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, No. CV-05-5155, 2007 WL 674691, at *5 (E.D.N.Y. Feb. 28, 2007) (citation omitted). The decision whether or not to stay a proceeding rests within the Court's discretion. *See, e.g., id.* at *4.

As the party moving for the stay, the Club bears the burden of establishing its need. *See, e.g., Greystone CDE, LLC v. Sante Fe Pointe L.P.*, No. 07 CV.8377, 2008 WL 482291, at *1 (S.D.N.Y. Feb. 20, 2008). The Club "must make out a clear case of hardship or inequity in being

required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255. In deciding whether to grant a stay, the Court should consider: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Kappel v. Comfort,* 914 F. Supp. 1056, 1058 (S.D.N.Y.1996). In balancing these factors, " 'the basic goal is to avoid prejudice.' " *Id.* (citation omitted).

## POINT I

## <u>THE EXCESS ACTION SHOULD NOT BE STAYED</u>

Granting a stay would prejudice the Excess Underwriters more than allowing the case to proceed would prejudice the Club. The motion to stay should, therefore, be denied. *See*, *e.g.*, *Greystone*, 2008 WL 482291 at *2.

### A.    The Excess Underwriters Will Be
Prejudiced If The Excess Action Is Stayed

The Club asserts that the Excess Underwriters will not be prejudiced if the Excess Action is stayed pending resolution of the Club Action. *See* Club Memo at pp. 12-14. To the contrary, the Excess Underwriters will be prejudiced in at least two ways should this action be stayed.

First, Defendant Lafarge North America, Inc. ("Lafarge") is insisting that the Excess Underwriters are obligated to reimburse Lafarge immediately for its past legal expenses incurred in connection with the Hurricane Katrina claims (which are currently in excess of $5 million) and on an ongoing basis for its future legal expenses. The Excess Underwriters may not have to pay these expenses, and they will be prejudiced absent a prompt resolution of this issue. Second, the Excess Underwriters will be prejudiced if the Club's "other insurance" defense is analyzed in

a vacuum. The Club alleges that coverage through the American Club is excluded under the "other insurance" clause contained in the Club's rules because Lafarge's liability is covered by a primary policy issued by New York Marine and General Insurance Company ("NYMAGIC"). This defense cannot, however, be analyzed by looking solely to the "other insurance" clause contained in the Club's rules. Instead, an interpretation of and ruling on the "other insurance" clauses contained in both the Club Rules and the NYMAGIC policy is required.

### B.    The American Club Will Not Be Burdened If The Excess Action Is Not Stayed

The Club next asserts that it "will be significantly prejudiced if the present action is not stayed." Club Memo at pp. 14. The Club suggests two possible ways in which it will be prejudiced (*see id*. at pp. 14-15), but neither is likely to occur. The Club Action will not be significantly delayed, if at all, if the Excess Action is permitted to proceed.[1] Nor will the Club be required to engage in either "duplicative discovery" (*id*. at p. 14) or "potentially irrelevant discovery" (*id*. at p. 15). As discussed in the papers submitted in support of the Excess Underwriters' motion to consolidate, no additional discovery will be needed to permit the Excess Action to proceed simultaneously on a consolidated basis with the Club Action.

For example, discovery is not needed regarding the Excess Underwriters' fourth cause of action (seeking a declaration that the Excess Policy is excess to the Club's and NYMAGIC's primary coverages). The issue of priority should be decided solely on the Court's interpretation of the ordinary meaning of the terms and conditions of the subject policies. *See*, *e.g.*, *Harco Nat. Ins. Co. v. Arch Specialty Ins. Co.*, No. 06 Civ. 2928, 2008 WL 1699755, at *5 (S.D.N.Y. Apr. 9,

---

[1] The Club expresses a concern about having " 'to undergo unnecessary piecemeal litigation of similar issues, which could lead to inconsistent results.' " Club Memo at p. 14. It is for this reason, among others, that the Club Action and Excess Action should be heard on a consolidated basis.

2008) ("Under New York law, '[u]ambiguous provisions of an insurance contract, as with any written contract, must be given their plain and ordinary meaning and the interpretation of such provisions is a question of law for the court"); *Cardinal v. Long Island Power Authority*, 309 F. Supp. 2d 376, 391 (E.D.N.Y. 2004) ("[t]he interpretation of an insurance policy is a question of law to be decided by the Court"); *White v. Continental Cas. Co.*, 9 N.Y.3d 264, 267, 848 N.Y.S. 2d 603 (2007) ("[a]s with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning and the interpretation of such provisions is a question of law for the court").

To the extent the Court concludes that both the Club and NYMAGIC primary policies owe coverage, the order in which they pay should be determined by the "other insurance" clauses, which are unambiguous and not in dispute. The "other insurance" clause in the Club Rules is an escape clause, which provides as follows:

> 34.    The Association shall not be liable for any loss, damage or expense against which, but for the insurance herein provided, the Member, Co-assured or Affiliate would have been insured under any other existing insurance, except as set forth above in Rule 1.4.33; nor shall the Association provide prorated or allocated cover on the basis of double insurance or otherwise, except as set forth above in Rule 1.4.33; nor will this insurance replace any other insurance where (for whatever reason) that other insurance does not or is not able to respond to a claim thereunder.

On the other hand, the "other insurance" clause in the NYMAGIC primary policy is an excess clause, which states:

> 14.    OTHER INSURANCE
>
> Except for insurance carried by the Assured specifically as excess over and above the amount(s) recoverable hereunder, this Company shall not be liable for any loss, damage, liability or expense which may be recoverable under any other insurance arranged by the Assured, arranged by others for the Assured's account or otherwise available to the Assured, except as excess over and above the amount(s) recoverable thereunder.

4

Under New York law, when there is a conflict between an "escape" clause and "excess" clause, the policy with the "escape" clause provides primary coverage for the loss.  *See Kipper v. Universal Underwriters Group*, 304 A.D. 2d 62, 65, 756 N.Y.S. 2d 682 (4th Dep't 2003) ("[I]n cases in which one insurance policy has a no liability clause and the other insurance policy has an excess clause, the general rule is that the no liability clause is not given effect."); *Utica Mut. Ins. Co. v. Travelers Ins. Co.*, 213 A.D. 2d 983, 984, 624 N.Y.S. 2d 485 (4th Dep't 1995) ("[W]hen an excess clause and a nonliability clause conflict, the nonliability clause is not given effect."); *Mosca v. Ford Motor Credit Co.*, 150 A.D. 2d 656, 541 N.Y.S. 2d 528, 530 (2d Dep't 1989) ("[W]here one of the policies contains an excess insurance clause . . . and the other contains a nonliability clause . . . liability will be imposed on the insurer issuing the policy containing the nonliability clause.").  The rationale for this rule is that the policy containing the "excess" clause does not constitute "other available insurance" within the meaning of the "escape" clause.  *See Kipper*, 304 A.D. 2d at 65, 756 N.Y.S. 2d 682; *Utica*, 213 A.D. 2d at 984, 624 N.Y.S. 2d 485; *Mosca*, 150 A.D. 2d 656, 541 N.Y.S. 2d at 530.  Thus, if both primary coverages apply, the terms of these policies require the Club to go first, followed by the NYMAGIC primary policy.  No other considerations, which would require discovery, are needed to reach this conclusion.

Similarly, the terms of the Excess Policy govern its order in the line of coverages.  Here, the Excess Policy provides true excess coverage.  As such, the Excess Policy should not be considered in the aforementioned "other insurance" analysis.  *See General Accident Fire & Life Assurance Corp. v. Piazza*, 4 N.Y. 2d 659, 669, 176 N.Y.S. 2d 976 (1958) (holding that because the excess policy is expressly stated to be excess, it will be required to contribute to the indemnity, if any, only after the limits of the primary policy are consumed, notwithstanding a

standard "other insurance" clause in the primary policy); *Merritt v. Jefferson Ins. Co.*, 112 Misc. 2d 51, 52, 445 N.Y.S. 2d 972 (N.Y. Sup. Ct. 1982) (holding that excess insurance, procured at a substantially reduced rate, cannot be used to determine the "triggering" of co-insurance provisions); 15 *Couch on Insurance*, § 218:5 (3d ed.) ("An 'other insurance' dispute cannot arise between primary insurers and true excess insurers").  Instead, by its nature as a true excess policy, the Excess Underwriters are not required to contribute to the loss until both of the primary policies have been exhausted.  *See General Motors Acceptance Corp. v. Nationwide Ins. Co.*, 4 N.Y. 3d 451, 456, 796 N.Y.S. 2d 2 (2005) (holding that true excess policy only comes into effect after the limits of the primary coverage were exhausted); *National Union Fire Ins. Co of Pittsburgh v. Connecticut Indemnity Co.*, ___ N.Y.S. 2d ___, No. 3898, 600403/02, 2008 WL 2342121 (1st Dep't June 10, 2008) (holding that primary policies must be exhausted before excess coverage can apply); *Liberty Mutual Ins. Co. v. Ins. Co. of the State of Pennsylvania*, 43 A.D. 3d 666, 668-69, 841 N.Y.S. 2d 288 (1st Dep't 2007) (holding that all primary policies owing coverage must be exhausted before the excess coverage is implicated).

Accordingly, the Court can decide the Excess Underwriters' fourth cause of action solely on the unambiguous language of the subject policies and find that the order of coverage begins with the Club, then NYMAGIC and finally the Excess Underwriters.[2]

Similarly, no additional discovery will be required on the Excess Underwriters' first cause of action (seeking a declaration that there is cover for Lafarge through the Club.)  In the first instance, the necessary discovery has already been taken by the Club and Lafarge in the Club Action because this cause of action overlaps with the claims and counter-claims asserted in the Club Action.  Moreover, there is little merit to the Club's contentions as to why there is no cover.

---

[2] This discussion is merely illustrative of the issues that will be raised in a cross-motion for summary judgment that will be filed by the Excess Underwriters on or before June 27, 2008.

For example, the American Club alleges, *inter alia*, that coverage through the Club is "excluded because Lafarge did not provide for review or obtain the Club's approval for" the indemnity provisions of the agreement under which Lafarge utilized the Barge ING 4727 (the "Transportation Agreement"), which was allegedly required by the American Club Rules before cover would attach. American Club Complaint ¶ 48. This defense is, essentially, a red herring.

None of the claims that remain in the Hurricane Katrina litigations to which Lafarge is a party involve a claim for indemnity under the Transportation Agreement. While Ingram Barge Company, the owner of the Barge ING 4727, may have had claims against Lafarge under the Transportation Agreement, it is no longer a party to the Hurricane Katrina litigations and no longer has claims against Lafarge under the agreement. Therefore, the exclusion advanced by the American Club is irrelevant and no discovery would be needed on this issue.

## C.    Judicial Economy And The Public Interest Do Not Weigh In Favor Of A Stay

The Club asserts that, "[b]y staying this action, this Court would allow a more expeditious conclusion to the American Club action and would avoid unnecessary duplication of matters before it." Club Memo at p. 15. As previously explained, however, consolidating this action with the Club Action, rather than staying this action, would be the most expeditious method of bringing a conclusion to both actions. In fact, there may be an "unnecessary duplication" of matters if the two actions are not consolidated.

Furthermore, resolution of the Club Action before the Excess Action will not necessarily " 'narrow the issues before this Court.' " *Id*. If the Club loses, and cover for Lafarge is found to exist, there will still remain the stacking issue (*i.e.*, in what order the various insurers are obligated to pay Lafarge). If the Club prevails, and it is determined that there is no cover through the Club, then it will be necessary for the Court to determine whether Lafarge's failure to

comply with the requirements necessary to bring the Barge ING 4727 within the scope of the coverage provided through the American Club relieves the Excess Underwriters of paying under the Excess Policy until an amount equivalent to the full amount of coverage provided through the Club has been paid by Lafarge. Therefore, judicial economy would be better served by having all of the relevant issues and parties before the Court at the same time.

> **D.      Interests Of Non-Parties Will**
> **Be Prejudiced If This Action Is Stayed**

Finally, the American Club argues that staying this action will benefit non-parties by "allow[ing] the plaintiffs in the underlying Hurricane Katrina litigations to understand sooner the scope of Lafarge's insurance coverage as a potential avenue of recovery." Club Memo at p. 16. Quite the opposite would happen. Staying this action would delay rather than expedite resolution of the various issues concerning the scope of Lafarge's insurance coverage. As explained above, regardless of which party prevails in the Club Action, there will still be issues regarding the scope of coverage provided by the Excess Policy. Therefore, staying this action will not benefit the plaintiffs in the Hurricane Katrina litigations.

## <u>CONCLUSION</u>

For the foregoing reasons, the American Club's motion to stay this action should be

**DENIED**.

Dated: June 23, 2008
       New York, New York

NICOLETTI HORNIG & SWEENEY

*Attorneys for Plaintiffs*
   *The Northern Assurance Company of America*
   *and American Home Assurance Company*

By:    /s John A. V. Nicoletti
       John A. V. Nicoletti
       Wall Street Plaza
       88 Pine Street, Seventh Floor
       New York, New York 10005
       (212) 220-3830