UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
THE NORTHERN ASSURANCE COMPANY              08 CV 3289 (CSH) (AJP)
OF AMERICA and AMERICAN HOME
ASSURANCE COMPANY,

                       Plaintiffs,                **Electronically Filed**

   - against -

LAFARGE NORTH AMERICA, INC. and
AMERICAN STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY
ASSOCIATION, INC.

                       Defendants.
-----------------------------------------------------------X

### PLAINTIFFS THE NORTHERN ASSURANCE COMPANY OF AMERICA AND AMERICAN HOME ASSURANCE COMPANY'S LOCAL CIVIL RULE 56.1 STATEMENT

Pursuant to Local Civil Rule 56.1, Plaintiffs The Northern Assurance Company of America and American Home Assurance Company (collectively, the "EXCESS UNDERWRITERS") contend that as to the following material facts, there is no genuine issue to the tried:

### THE POLICIES

**The Primary MMO Primary Policy**

1.      Mutual Marine Office, Inc. ("MMO"), as the authorized representative for New York Marine and General Insurance Company ("NYMAGIC"), issued a Primary Marine Liabilities Policy of Insurance No. MMO-30981ML505, to defendant Lafarge North America,

Inc. ("LAFARGE"), for the period of May 1, 2005 to May 1, 2006 (the "MMO Policy"). *See* Ex. 5 MMO Policy.[1]

    2.    The MMO Policy has an aggregate limit of $5,000,000.00 for any one accident or occurrence. *See* Ex. 1 EXCESS UNDERWRITERS' Complaint at ¶ 20 (Docket No. 1); Ex. 2 LAFARGE'S Answer to EXCESS UNDERWRITERS' Complaint at ¶ 20 (Docket No. 17).

    3.    The MMO Policy states:

> **14.**   **OTHER INSURANCE:**
>
> > Except for insurance carried by the Assured specifically as excess over and above the amount(s) recoverable hereunder, this Company shall not be liable for any loss, damage, liability or expense which may be recoverable under any other insurance arranged by the Assured, arranged by others for the Assured's account or otherwise available to the Assured, except as excess over and above the amount(s) recovered thereunder.

*See* Ex. 5 MMO Policy; Ex. 1 EXCESS UNDERWRITERS' Complaint at ¶ 22 (Docket No. 1); Ex. 2 LAFARGE'S Answer to EXCESS UNDERWRITERS' Complaint at ¶ 22 (Docket No. 17).

**The American Club Primary Policy**

    4.    The rights and obligations of every member of American Steamship Owners Mutual Protection and Indemnity Association, Inc. ("THE CLUB"), including defendant LAFARGE, are governed at least in part by the American Club By-Laws and Rules (the "Club Rules"). *See* Ex. 1 EXCESS UNDERWRITERS' Complaint at ¶ 27 (Docket No. 1); Ex. 2 LAFARGE'S Answer to EXCESS UNDERWRITERS' Complaint at ¶ 27 (Docket No. 17); THE CLUB'S Answer to EXCESS UNDERWRITERS' Complaint at ¶ 12 (Docket No. 7).

---

[1] Reference to Ex "1" through "9" refers to the Exhibits attached to the Affidavit of John A.V. Nicoletti dated July 2, 2008, submitted in support of Excess Underwriters' Cross-Motion for Summary Judgment.

5.  Upon becoming a member of THE CLUB, defendant LAFARGE received a Certificate of Entry, which expressly makes applicable the Club Rules to the member's insurance. The Certificate of Entry includes additional Member-Specific provisions, which are listed on a separate rider to the Certificate of Entry. *See* Ex. 7 LAFARGE'S Certificate of Entry for the period February 20, 2005 to February 20, 2006; Ex. 1 EXCESS UNDERWRITERS' Complaint at ¶ 28 (Docket No. 1); Ex. 2 LAFARGE'S Answer to EXCESS UNDERWRITERS' Complaint at ¶ 28 (Docket No. 17); Ex. 3 THE CLUB'S Answer to EXCESS UNDERWRITERS' Complaint at ¶ 13 (Docket No. 7).

6.  Defendant LAFARGE'S Certificate of Entry contains a Member-Specific clause entitled "Chartered Barges," which states:

> CHARTERED BARGES.
>
> If Lafarge Corporation et al acquires an insurable interest in any vessel in addition to or in substitution for those set forth herein, through purchase, charter, lease or otherwise, such insurance as is afforded hereunder to any similar vessel shall automatically cover such additional vessel effective from the date and time the Assured acquires an insurable interest in such additional vessel. With respect to a chartered, leased or similarly acquired vessel, the insurance hereunder automatically includes the owner as an additional Assured with waiver of subrogation against the owner, if required, effective from the date and time such vessel is insured hereunder.
>
> The above provision shall not apply to vessels which are chartered under a contract whereby the owner (or Demise Owner) and Charterer agree that the owner (or Demise Owner) shall procure Protection & Indemnity Insurance on the vessel and such insurance shall include the charterer as an Assured.
>
> The Assured agrees to report the name and gross tonnage of any vessel in which they acquire an insurable interest at the expiration of this policy and pay any additional premium as may be required annually, at expiry at daily pro-rate the annual rates agreed.

*See* Ex. 7 LAFARGE'S Certificate of Entry for the period February 20, 2005 to February 20, 2006; Ex. 1 EXCESS UNDERWRITERS' Complaint at ¶ 33 (Docket No. 1); Ex. 2 LAFARGE'S Answer to EXCESS UNDERWRITERS' Complaint at ¶ 33 (Docket No. 17); Ex. 3 THE CLUB'S Answer to EXCESS UNDERWRITERS' Complaint at ¶ 7 (Docket No. 7).

7. The legal relationship which defendant LAFARGE has with the Barge ING 4727 is set forth, at least in part, in a particular Transportation Agreement (hereinafter "TA") by and between defendant LAFARGE and Ingram Barge Company. *See* Ex. 8 LAFARGE Transportation Agreement; Ex. 1 EXCESS UNDERWRITERS' Complaint at ¶ 69 (Docket No. 1); Ex. 2 LAFARGE'S Answer to EXCESS UNDERWRITERS' Complaint at ¶ 69 (Docket No. 17).

8. In and by the terms of the TA, it provides in relevant part:

> 34. Possession of the Barge during Loading/Unloading:
>
> > Carrier [Ingram] shall deliver an empty or loaded barge to a loading/unloading facility designated by Shipper [Lafarge] for loading or unloading. Shipper shall assume the duty and responsibility for the safety of each barge in its possession. For the purposes of this Agreement, "possession" shall begin when a Carrier delivers an empty or loaded barge for loading or unloading to the landing designated by Shipper and shall end when the barge is removed by the Carrier or its agent(s). Shipper shall be responsible for the safekeeping of Carrier's barge delivered to a landing regardless of whether Shipper owns or operates the landing. During possession, any barge delivered to a landing designated by the Shipper shall be held without charge to Carrier.
>
> \* \* \*
>
> 36. Mooring:
>
> > Shipper warrants that barges will be safely and adequately moored free of wharfage, dockage, port and harbor charges at the loading and unloading points and that the

4

>barges will have warning lights properly displayed as required by applicable U.S. Coast Guard and U.S. Army Corps. of Engineers regulations and permits. While barges are in the care and custody of Shipper, or its agents, all U.S. Coast Guard and U.S. Army Corps of Engineers regulations will be complied with, . . . .

*See* Ex. 8 LAFARGE Transportation Agreement.

9. At all times relevant, pursuant to the terms of the TA and at law, defendant LAFARGE had an insurable interest in Barge ING 4727. *See* Ex. 1 EXCESS UNDERWRITERS' Complaint at ¶ 71 (Docket No. 1); Ex. 2 LAFARGE'S Answer to EXCESS UNDERWRITERS' Complaint at ¶ 71 (Docket No. 17).

10. At all times relevant, Barge ING 4727 was at least a vessel in addition to if not in substitution for those vessels identified in the "Certificate of Entry." *See* Ex. 1 EXCESS UNDERWRITERS' Complaint at ¶ 72 (Docket No. 1); Ex. 2 LAFARGE'S Answer to EXCESS UNDERWRITERS' Complaint at ¶ 72 (Docket No. 17).

11. Pursuant to the terms of the TA, defendant LAFARGE did obtain an insurable interest in the Barge ING 4727 through a "purchase, charter, lease or otherwise." *See* Ex. 1 EXCESS UNDERWRITERS' Complaint at ¶ 73 (Docket No. 1); Ex. 2 LAFARGE'S Answer to EXCESS UNDERWRITERS' Complaint at ¶ 73 (Docket No. 17).

12. Pursuant to the Certificate of Entry, and the terms and conditions of the TA, coverage under the Club Rules "automatically" attached to the Barge ING 4727. *See* Ex. 1 EXCESS UNDERWRITERS' Complaint at ¶ 74 (Docket No. 1); Ex. 2 LAFARGE'S Answer to EXCESS UNDERWRITERS' Complaint, ¶ 74 (Docket No. 17).

13. Defendant LAFARGE did report to the defendant THE CLUB the name and gross tonnage of Barge ING 4727 and is willing to pay any additional reasonable premium as part of the automatic coverage that attached to the Barge ING 4727. *See* Ex. 1 EXCESS

UNDERWRITERS' Complaint at ¶ 75 (Docket No. 1); Ex. 2 LAFARGE'S Answer to EXCESS UNDERWRITERS' Complaint at ¶ 75 (Docket No. 17).

14. Defendant LAFARGE has complied with all necessary conditions under the Certificate of Entry for coverage to attach on the Barge ING 4727 under the liability insurance provided by the Club Rules and the Certificate of Entry. *See* Ex. 1 EXCESS UNDERWRITERS' Complaint at ¶ 76 (Docket No. 1); Ex. 2 LAFARGE'S Answer to EXCESS UNDERWRITERS' Complaint at ¶ 76 (Docket No. 17).

15. As set forth in the allegations of the underlying complaint by the various and several claimants in the Katrina litigations, liabilities being sought to be imposed upon defendant LAFARGE, in whole or in part, do not arise under a contract of indemnity. *See* Ex. 1 Complaint at ¶ 81 (Docket No. 1).

16. The Club Rules also provide in relevant part:

Class I Rule 2 Risks and Losses Covered

Each Member of the Association shall be indemnified in connection with each vessel entered in the Association for Protection and Indemnity Insurance against any loss, damage or expense which the Member shall become liable to pay and shall pay by reason of the fact that the Member is the owner (or operator, manager, charterer, mortgagee, trustee, receiver or agent, as the case may be) of the insured vessel, subject to the provisions of these Rules and to all the limitations herein stated or agreed to by the acceptance of the application for membership, or by the entry of the vessel, in the Association, and which shall result from the following liabilities, risks, events, occurrences and expenditures; provided that such liabilities, risks, events, occurrences and expenditures arise in respect of the Member's interest in such vessel; and in connection with the operation of such vessel by or on behalf of the Member; and out of events occurring during the period of entry of such vessel.

*See* Ex. 6 Excerpts from the Club Rules; Ex. 1 EXCESS UNDERWRITERS' Complaint at ¶ 35 (Docket No. 1); Ex. 2 LAFARGE'S Answer to EXCESS UNDERWRITERS' Complaint at ¶

35 (Docket No. 17); Ex. 3 THE CLUB'S Answer to EXCESS UNDERWRITERS' Complaint at ¶ 7 (Docket No. 7).

    17.    The Club Rules also provide in relevant part:

Class I Rule 1  Introductory: Interpretation:
                      Membership: General Provisions

    34.    The Association shall not be liable for any loss, damage or expense against which, but for the insurance herein provided, the Member, Co-assured or Affiliate would have been insured under any other existing insurance, except as set forth above in Rule 1.4.33; nor shall the Association provide prorated or allocated cover on the basis of double insurance or otherwise, except as set forth above in Rule 1.4.33; nor will this insurance replace any other insurance where (for whatever reason) that other insurance does not or is not able to respond to a claim thereunder.

*See* Ex. 6 Excerpts from the Club Rules; Ex. 1 EXCESS UNDERWRITERS' Complaint at ¶ 36 (Docket No. 1); Ex. 2 LAFARGE'S Answer to EXCESS UNDERWRITERS' Complaint at ¶ 36 (Docket No. 17); Ex. 3 THE CLUB'S Answer to EXCESS UNDERWRITERS' Complaint at ¶ 7 (Docket No. 7).

**The Plaintiffs' Excess Policy**

    18.    On or before May 1, 2005, the plaintiffs, together with the non-party MMO, subscribed to an Excess Marine Liability Policy ("Excess Policy") with an insured limit of $45,000,000.00, and up to $50,000,000.00 under certain circumstances, excess of $5,000,000.00 any one accident or occurrence. *See* Ex. 4 the Excess Policy.

    19.    The plaintiffs, together with non-party MMO, issued the Excess Policy on a several and not joint basis. *See* Ex. 4 the Excess Policy.

20. As a true Excess Policy, there was a requirement that defendant LAFARGE maintain certain "Underlying Insurances" as set forth and identified in the Excess Policy binder. *See* Ex. 4 the Excess Policy.

21. The primary MMO Policy with a primary limit of $5,000,000.00, is identified as "Underlying Insurance" to the Excess Policy. *See* Ex. 4 the Excess Policy.

22. Defendant LAFARGE'S entry in the defendant AMERICAN CLUB'S coverage with an underlying limit per Club Rules in an amount of at least $1,000,000,000.00, is also listed as an "Underlying Insurance" in the Excess Policy. *See* Ex. 4 the Excess Policy.

23. The Excess Policy also provides in relevant part:

> 7. <u>OTHER INSURANCE</u>:
>
> > If other valid and collectible insurance with any other Insurer is available to the Assured covering a loss also covered by this Policy, other than insurance that is in excess of the insurance afforded by this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance, either as double insurance or otherwise. Nothing herein shall be construed to make this Policy subject to the terms, conditions and limitations of other insurance.

*See* Ex. 4 the Excess Policy.

24. The Excess Policy provides in relevant part:

> 11. <u>MAINTENANCE OF UNDERLYING INSURANCE</u>:
>
> > A. It is a condition of this policy that the Section(s) or Policy(ies) referred to below in the "Schedule of Underlying Insurance" shall be maintained in full effect during the currency of this insurance except for any reduction of the aggregate limit(s) contained therein solely by payment of claims in respect of accidents and/or occurrences, occurring during the term of this Policy.

        B.      Inadvertent failure of the Assured to comply with Paragraph A above or inadvertent failure to notify this Company of any changes in the Underlying Insurances shall not prejudice the Assured's rights of recovery under this Policy, but in the event of such failure, this Company to be liable only to the same extent as they would have been had the Assured complied with the said condition.

*See* Ex. 4 the Excess Policy.

25.    In the event that defendant LAFARGE failed to comply with all requirements of the Club Rules and/or the Certificate of Entry, which were and are necessary to continue coverage for Barge ING 4727 as provided by THE CLUB, such failure even if inadvertent, relieves the subscribers to the Excess Policy, including these plaintiffs of any obligation to make payment to defendant LAFARGE until such time as the amount which would have been covered under the Club Rules and the Certificate of Entry would have been exhausted as if coverage under the Club Rules and the Certificate of Entry were in fact in full force and effect. *See* Ex. 4 the Excess Policy.

26.    The Excess Policy subscribed to by these plaintiffs, together with the non-party MMO, is a true Excess Policy which schedules both the MMO Policy and THE CLUB cover as Underlying Insurance and therefore renders the Excess Policy the excess insurance coverage to both the MMO Policy and THE CLUB cover. *See* Ex. 4 the Excess Policy.

Dated:    July 2, 2008
             New York, New York

                                        NICOLETTI HORNIG & SWEENEY
                                        *Attorneys for Plaintiffs*
                                              *The Northern Assurance Company of America*
                                              *and American Home Assurance Company*

By:    */s/ John A. V. Nicoletti*
                                                John A. V. Nicoletti (JN-7174)
                                              Nooshin Namazi (NN-9449)
                                              Guerric S.D.L. Russell (GR-4845)
                                              Wall Street Plaza
                                              88 Pine Street, 7th Floor
                                              New York, New York 10005-1801
                                              Telephone:  (212) 220-3830
                                              Facsimile:   (212) 220-3780
                                              Email:       jnicoletti@nicolettihornig.com
                                              (FILE NO.: 10000478 JAVN/NN/GSR)

X:\Public Word Files\1\478\Legal\RULE 56.1 STATEMENT by Plfs.7.2.08.mm (FINAL).doc