**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
THE NORTHERN ASSURANCE COMPANY
OF AMERICA and AMERICAN HOME
ASSURANCE COMPANY,

                Plaintiffs,

   - against -                         **08 CV 3289 (CSH) (AJP)**

LAFARGE NORTH AMERICA, INC. and
AMERICAN STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY              **Electronically Filed**
ASSOCIATION, INC.

                Defendants.
------------------------------------------------------------X

## MEMORANDUM OF LAW IN
## OPPOSITION TO MOTION TO DISMISS

NICOLETTI HORNIG & SWEENEY
Wall Street Plaza
88 Pine Street, Seventh Floor
New York, New York 10005
(212) 220-3830

*Attorneys for Plaintiffs*
   *The Northern Assurance Company of America*
   *and American Home Assurance Company*

Of Counsel

John A. V. Nicoletti
Nooshin Namazi
Kevin J.B. O'Malley

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

RESPONSE TO FACTUAL BACKGROUND.......................................................................... 1

ARGUMENT ............................................................................................................................. 1

    POINT I

    THE ACTION SHOULD NOT BE DISMISSED

        A.   NYMAGIC Has Ratified
              The Commencement and
              Prosecution Of This Action ........................................................................... 2

        B.   The Excess Underwriters
              Are Real Parties In Interest With
              Independent Standing To Bring This Action ................................................. 4

        C.   No Policy Defenses Have Been Waived......................................................... 6

    POINT II

    THE THIRD CAUSE OF ACTION
    SHOULD NOT BE DISMISSED ......................................................................... 7

    POINT III

    THE SECOND AND FOURTH CAUSES
    OF ACTION SHOULD NOT BE DISMISSED...................................................... 9

CONCLUSION.......................................................................................................... 10

## PRELIMINARY STATEMENT

Plaintiffs The Northern Assurance Company of America and American Home Assurance Company (collectively, the "Excess Underwriters") submit this Memorandum of Law in opposition to Defendant Lafarge North America, Inc.'s ("Lafarge") motion to dismiss this action (the "Excess Action") and in opposition to the memorandum of law submitted by American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "American Club" or "Club") in support of Lafarge's motion.

## RESPONSE TO FACTUAL BACKGROUND

As it is not necessary for the purposes of this opposition, the Excess Underwriters will not respond to each and every factual assertion made by Lafarge and the Club in support of the motion.  The Excess Underwriters do not, however, agree that Lafarge and the Club have accurately summarized all of the facts underlying the subject insurance coverage dispute.[1]

## ARGUMENT

### POINT I

### THE ACTION SHOULD NOT BE DISMISSED

Lafarge and the Club argue that the Excess Action should be dismissed in its entirety for two general reasons.  They argue that the Court cannot grant meaningful declaratory relief in the absence of the lead underwriter, New York Marine and General Insurance Company ("NYMAGIC").  The Defendants also contend that the coverage position taken by the Excess Underwriters is inconsistent with the coverage position previously taken by NYMAGIC.  Neither reason is factually correct or a sufficient ground for dismissing this action.

---

[1] For example, the Excess Underwriters do not agree that the percentage of risk each excess underwriter subscribed to under the Excess Policy is correctly described by Lafarge.

### A.    NYMAGIC Has Ratified
###       The Commencement and
###       Prosecution Of This Action

Lafarge asserts that this action should be dismissed because meaningful declaratory relief allegedly cannot be granted without NYMAGIC's participation.  Several reasons are advanced to support this assertion, all of which relate to NYMAGIC's status as the lead underwriter under the Excess Policy.

First, Lafarge argues that the Excess Underwriters "agreed when subscribing to the Excess Policy to defer all decision-making authority to the lead insurer, NYMAGIC."  Lafarge Memo at p. 14.  As such, Lafarge contends that "only NYMAGIC could have a cause of action for declaratory judgment" and that the Excess Underwriters have no "right to bring their own declaratory judgment action independent of NYMAGIC."  *See id*. at pp. 2, 9-10 & 11; *see also* Club Memo at p. 2.  Essentially, Lafarge is arguing that NYMAGIC, rather than the Excess Underwriters, is the real party in interest that should be pursuing this coverage action.  The Excess Underwriters dispute the implication that they are not real parties in interest as well.  Nonetheless, Lafarge's real party in interest objection is not grounds to dismiss this action.

The purpose of the real party in interest rule is "to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata."  Notes of Advisory Committee, Fed. R. Civ. P. 17(a), 1966 Amendment.  While Rule 17(a) of the Federal Rules of Civil Procedure requires that every action be prosecuted in the name of the real party in interest, it also provides that the Court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify . . . the action.  After ratification . . . the action proceeds as if it had been originally commenced

2

by the real party in interest."  Fed. R. Civ. P. 17(a)(3).  "A letter or document that ratifies the commencement and continuation of an action may be sufficient to cure any real party in interest defects in the suit."  *Motta v. Res. Shipping & Enters. Co.,* 499 F. Supp. 1365, 1371 (S.D.N.Y. 1980) (citations omitted).

NYMAGIC has ratified the commencement and prosecution of this action by the Excess Underwriters on behalf of all of the underwriters subscribing to the Excess Policy.  *See* Exhibit"1" ("Ratification") to Declaration of John A.V. Nicoletti in Opposition to Motion to Dismiss ("Nicoletti Decl.").  Therefore, this action may not be dismissed because it was commenced and is being prosecuted by the Excess Underwriters instead of NYMAGIC.  *Cf. Honey v. George Hyman Const. Co.*, 63 F.R.D. 443, 447-48 (D.C.D.C. 1974) (underwriters' consent to commencement of action by one underwriter for himself and on their behalf taken as ratification, and litigation allowed to proceed).

Second, Lafarge argues that the Excess Underwriters "are attempting through this action to assert a coverage position that is inconsistent from the position stated by NYMAGIC." Lafarge Memo at pp. 11 & 16.  There is no such inconsistency.[2]  Contrary to Lafarge's assertion (*see* Lafarge Memo at p. 16), NYMAGIC has ratified the Excess Underwriter's coverage position by ratifying the commencement and prosecution of this action by the Excess Underwriters on behalf of all of the underwriters.  *See* Ratification.

Finally, Lafarge argues that a declaratory judgment in this action would be meaningless without NYMAGIC's participation because such a judgment would not be binding upon NYMAGIC.  *See* Lafarge Memo at pp. 11-12 & 15-16; *see also* Club Memo at p. 2.  NYMAGIC has, however, agreed to be bound by the Court's judgment in this action.  *See* Ratification.

---

[2] For reasons explained *infra*, NYMAGIC had not stated a coverage position prior to the filing of this action.

Accordingly, no danger exists that NYMAGIC will take "[a]ny action . . . inconsistent with the declaration sought by" the Excess Underwriters.  Lafarge Memo at p. 11.  Similarly, a judgment rendered by the Court in this action will not be a "mere advisory opinion."  *Id*.  The judgment will finalize the controversy regarding the parties' rights and obligations under the Excess Policy.  Given NYMAGIC's ratification, it cannot be disputed that this action will serve a useful purpose in settling the legal issues involved.

To the extent that any issues or concerns about NYMAGIC's participation in this action remain, they will soon be moot.  NYMAGIC will be filing a motion to intervene in this action as a plaintiff.[3]  *See* Ratification.

### B.    The Excess Underwriters Are Real Parties In Interest With Independent Standing To Bring This Action

Lafarge asserts that the Excess Underwriters cannot, independent of NYMAGIC, demonstrate that they have legal interests adverse to Lafarge of sufficient immediacy to bring this action within the jurisdictional prerequisites of the Declaratory Judgment Act.  *See* Lafarge Memo at pp. 9-10; *see also* Club Memo at p. 2.  That is not true.  The Excess Underwriters have standing independent of NYMAGIC sufficient to enable them to proceed with this action.

The Declaratory Judgment Act authorizes federal courts to declare the rights of interested parties "[i]n a case of actual controversy."  28 U.S.C. § 2201.  It is " 'designed to expedite and

---

[3] In light of NYMAGIC's anticipated motion, Lafarge and the Club were requested to withdraw those parts of the motion to dismiss based upon NYMAGIC's absence in this action and to consent to NYMAGIC's request to intervene as a plaintiff.  Despite their arguments that NYMAGIC is an indispensable party to this action, Lafarge and the Club declined both requests.  *See* Nicoletti Decl. at p. 2 ¶ 5 and Exhibits "2" & "3" thereto.  Given the position taken by Lafarge and the Club in their respective papers in support of the motion to dismiss, they should be held to have waived any objection to NYMAGIC's absence from this action and/or NYMAGIC's request to intervene.  In other words, Lafarge and the Club cannot have it both ways.  They cannot argue that NYMAGIC is an indispensable party and, at the same time, object to its proposed intervention.

simplify the ascertainment of uncertain rights; and it should be liberally construed to attain that objective.' " *Reliance Life Ins. Co. v. Burgess*, 112 F.2d 234, 238 (8th Cir. 1940) (citation omitted). "Declaratory judgment actions are particularly appropriate for situations in which insurance companies seek a declaration of their liability." *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Midland Bancor, Inc.*, 854 F. Supp. 782, 789 (D. Kan. 1994). "The standard for ripeness in a declaratory judgment action is that 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 61 S. Ct. 510, 512, 85 L. Ed. 826 (1941)). "In order to decide whether to entertain an action for declaratory judgment, [the Second Circuit] has instructed district courts to ask: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade*, 411 F.3d at 389 (citing *Broadview Chem. Corp. v. Loctite Corp.,* 417 F.2d 998, 1001 (2d Cir. 1969)).

Lafarge is demanding that payment be made immediately under the Excess Policy. *See* Exhibit "D" to Declaration of Robert G. Clyne ("Clyne Decl."). The underwriters to the Excess Policy subscribed thereto on a several and not joint basis. Accordingly, Lafarge's demand for payment is a demand to each of the Excess Underwriters to make payment under the Excess Policy for their respective share of the risk. The Excess Underwriters, of course, deny that payment under the Excess Policy is currently due. This presents an actual controversy among Lafarge, the Club and the Excess Underwriters in which the Excess Underwriters have, due to their several liability, legal interests adverse to Lafarge and the Club that are presently in dispute.

NYMAGIC's ratification resolves Lafarge's argument that the Excess Underwriters, as following underwriters, do not have legal interests adverse to Lafarge sufficient to satisfy the jurisdictional prerequisites of the Declaratory Judgment Act. The ratification and NYMAGIC's agreement to be bound by the judgment of this Court also demonstrate that this action will serve a useful purpose in settling the legal issues involved and will finalize the controversy amongst the parties. In light of NYMAGIC's ratification, the concerns put forward by Lafarge concerning potentially inconsistent actions by NYMAGIC in the future and the effect of a judgment herein on NYMAGIC are of no moment.

### C.    No Policy Defenses Have Been Waived

As another grounds for dismissing the Excess Action in its entirety, Lafarge asserts that the Excess Underwriters are purportedly "assert[ing] policy defenses not preserved by NYMAGIC." Lafarge Memo at p. 16; *see also* Club Memo at p. 3. The sole basis for Lafarge's argument is a March 26, 2008 letter from counsel for NYMAGIC concerning defense costs under the Excess Policy. *See* Lafarge Memo at p. 17. Lafarge's reading of that letter is terribly strained.

The letter from NYMAGIC's counsel was not asserting a coverage position being taken by NYMAGIC and the Excess Underwriters under the Excess Policy. Nor was it a declination letter or a reservation of rights letter. Rather, the letter was sent in response to a letter from counsel for Lafarge in which Lafarge "demand[ed] that NYMAGIC and following underwriters undertake their respective obligations and immediately reimburse [Lafarge] for the sums expended to date and to assume the further defense costs that will be incurred in the [Hurricane Katrina] proceedings." Exhibit "D" Clyne Decl. NYMAGIC's letter was nothing more than a response to this specific inquiry regarding the reimbursement of defense costs. *See* Exhibit "E"

to Clyne Decl. ("We are writing in response to your letter of March 11, 2008 . . ."). The letter did not state, one way or another, the coverage position being taken by NYMAGIC and the Excess Underwriters under the Excess Policy. Moreover, NYMAGIC specifically stated that the position taken in its letter was without prejudice to its other rights and defenses. The letter states:

> Neither this letter nor any future communications shall be construed as a waiver of the rights and/or defenses available to NYMAGIC under the policy, at law or otherwise.

*Id*. Therefore, it cannot be said that Excess Underwriters have waived any policy defenses.

**In any event, the Excess Underwriters do not deny that the Excess Policy provides coverage to Lafarge for the subject Hurricane Katrina claims. The question of coverage under the Excess Policy is not an issue. Rather, the relevant issues are: (1) at what point does that coverage attach (*i.e.*, after the primary policy issued by NYMAGIC and after the limits of coverage provided through the Club)[4]; and (2) which of Lafarge's legal expenses are recoverable under the Excess Policy. Thus, Lafarge's argument regarding the alleged waiver of policy defenses is misplaced.**

### POINT II

### THE THIRD CAUSE OF ACTION <u>SHOULD NOT BE DISMISSED</u>

In addition to seeking to dismiss the Excess Action in its entirety, Lafarge also specifically moves to dismiss the Excess Underwriters' third cause of action because it

---

[4] *See generally* the Excess Underwriters' memorandum of law submitted in support of their cross-motion for summary judgment, which is incorporated herein by reference.

purportedly "duplicates the relief sought" in the NYMAGIC action.[5]  Lafarge Memo at p. 22. While similar, the third cause of action is not duplicative of any relief sought in the NYMAGIC action.

In their third cause of action, the Excess Underwriters seek a judgment declaring that Lafarge "has no right to seek reimbursement for the past and/or future payments to be made to those counsel which were separately retained by [Lafarge] without the consent of, and/or without consultation with, its primary and excess insurers."  Excess Complaint at p. 25 ¶ 100. NYMAGIC seeks similar, but different, relief in its action.  The distinction is that the NYMAGIC Action concerns NYMAGIC's obligations under its primary policy, whereas this action concerns the Excess Underwriter's obligations under the Excess Policy.  While both actions may have similar claims and defenses relating to the duty to reimburse defense costs, each action concerns different insurance policies and, therefore, they do not duplicate each other.

In any event, the Excess Underwriters' third cause of action may ultimately prove to be moot should they prevail on either their first or second causes of action and on their fourth cause of action.  If it is determined either that there is coverage through the Club or, if there is no such coverage, that Lafarge must pay what would have been covered by the Club as a self-insured retention and it is also determined that the Excess Policy is excess to both the NYMAGIC primary policy and the Club's limits, then it is highly unlikely that an adjudication of the third cause of action will be required because it is highly unlikely that Lafarge's defense costs will

---

[5] The Club seeks to dismiss the Excess Underwriters' first cause of action as well on the grounds that it is duplicative of the action brought by the Club against Lafarge.  *See* Club Memo at p. 3. The first cause of action should not be dismissed because it is a predicate to the Excess Underwriters' other claims in this action.  In particular, it is relevant to "other insurance" and stacking issues.

exceed the substantial dollar limits provided by both the NYMAGIC primary policy and the Club.

## POINT III

## THE SECOND AND FOURTH CAUSES
## OF ACTION SHOULD NOT BE DISMISSED

Lafarge also seeks to dismiss the Excess Underwriters' second and fourth causes of action, while the Club seeks to dismiss the fourth cause of action.[6]  *See* Lafarge Memo at pp. 19-22 & 24-25; *see also* Club Memo at pp. 4-5.  In their second cause of action, the Excess Underwriters seek a judgment declaring that, if Lafarge failed to comply with the condition subsequent to maintain coverage for the Barge ING 4727 under the Club Rules and Lafarge's Certificate of Entry, then the Excess Underwriters should not be required to pay under the Excess Policy until an amount equivalent to the full amount of coverage provided through the Club has been paid by Lafarge as a self-insured retention.  In their fourth cause of action, the Excess Underwriters seek a judgment declaring that, by virtue of the "other insurance" clauses contained

---

[6] The Club argues, *inter alia*, that the Excess Underwriters' fourth cause of action does not satisfy the jurisdictional prerequisites of the Declaratory Judgment Act.  *See* Club Memo at p. 4 n. 1.  The coverage available through the Club is listed as an underlying insurance to the Excess Policy.  The Club presently disputes that it must provide coverage to Lafarge.  The Excess Underwriters have an interest in the determination of the Club's obligation to Lafarge under the latter's Certificate of Entry.  That interest is more than theoretical, however.  The limits of Lafarge's primary policy with NYMAGIC are near exhaustion, and Lafarge is demanding payment under the Excess Policy for the defense costs incurred in connection with the Hurricane Katrina claims.  As discussed in more detail in the memorandum of law submitted in support of the Excess Underwriters' cross-motion for summary judgment, the Club must reimburse Lafarge for its defense costs regardless of whether it must ultimately indemnify Lafarge for the Hurricane Katrina claims.  The stacking issue, which is raised in the Excess Underwriters' fourth cause of action, is directly and presently implicated in that the Excess Underwriters argue that the Club must reimburse Lafarge's defense costs before the Excess Policy is reached.  This argument is not "predicated on a finding that the American Club's policy does in fact provide indemnity cover to Lafarge."  *Id*.  Rather, there is an actual and present controversy between the Excess Underwriters and the Club concerning the Club's obligations to reimburse Lafarge's defense costs.  A judicial declaration on the Excess Underwriters' fourth cause of action will serve a useful purpose in settling the legal issues involved.

in the subject policies and rules, the Excess Policy is excess to both the primary policy issued by NYMAGIC and the coverage provided through the American Club.

The Excess Underwriters submit that these causes of action present pure questions of law that can be resolved on a motion for summary judgment. As such, the Excess Underwriters are filing a cross-motion for summary judgment on, *inter alia*, their second and fourth causes of action. As and for an opposition to that part of Lafarge's and the Club's motion seeking to dismiss these two causes of action, the Excess Underwriters respectfully refer to and incorporate herein the papers filed in support of their cross-motion for summary judgment.

## <u>CONCLUSION</u>

For the foregoing reasons, Lafarge's and the Club's motion to dismiss should be **DENIED**.

Dated: July 2, 2008
     New York, New York

                                     NICOLETTI HORNIG & SWEENEY

                                     *Attorneys for Plaintiffs*
                                        *The Northern Assurance Company of America*
                                        *and American Home Assurance Company*

                             By:    /s John A. V. Nicoletti
                                        John A. V. Nicoletti
                                        Wall Street Plaza
                                        88 Pine Street, Seventh Floor
                                        New York, New York 10005
                                        (212) 220-3830

10