UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE NORTHERN ASSURANCE COMPANY
OF AMERICA and AMERICAN HOME                     Case No.:
ASSURANCE COMPANY,                               08 CV 3289 (CSH) (AJP)

                                  Plaintiffs,              **ECF CASE**

    - against -

LAFARGE NORTH AMERICA, INC. and
AMERICAN STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY
ASSOCIATION, INC.,

                                  Defendants.
------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF
# NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S
# <u>MOTION TO INTERVENE AS A PLAINTIFF</u>

                                                                     BROWN GAVALAS & FROMM LLP
                                                                     355 Lexington Avenue
                                                                     New York, New York 10017
                                                                     Attorneys for Intervenor Plaintiff
                                                                     *New York Marine and General Insurance*
                                                                     *Company*

*Of Counsel:*
David H. Fromm
Michael P. Naughton

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................1

FACTUAL AND PROCEDURAL BACKGROUND............................................1

    1.    LaFarge's Insurance................................................................1

    2.    Coverage Actions Involving Lafarge's Insurance ....................2

        a.    The Excess Action ..............................................................3

        b.    Lafarge's Motion to Dismiss the Excess Action..................5

        c.    NYMAGIC's Ratification of the Excess Action .................5

ARGUMENT..........................................................................................................6

    POINT I

    NYMAGIC IS ENTITLED TO INTERVENE AS OF RIGHT ..................6

        A.    The Current Motion is Timely ...........................................7

        B.    NYMAGIC has a Significant Protectable Interest
            in this Action and a Disposition in this Action
            Could Impair NYMAGIC's Ability to Protect
            its Interest............................................................................8

        C.    NYMAGIC's Interest Is Not Fully Protected
            by the Other Parties to this Action....................................10

    POINT II

    ALTERNATIVELY NYMAGIC SHOULD BE
    PERMITTED TO INTERVENE ............................................................11

CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Brennan v. New York City Bd. of Educ.*,
    260 F.3d 123 (2d Cir 2001) ......................................................................... 8, 9

*Catanzano v. Wing*,
    103 F.3d 223 (2d Cir. 1996) ............................................................................ 7

*Coleman Capital Corp. v. Fid. & Deposit Co.*,
    43 F.R.D., 408 (S.D.N.Y. 1967) .................................................................... 10

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ............................................................................... 7

*Diversified Group v. Paul Daugerdas*,
    217 F.R.D. *152* (SDNY 2003) ....................................................................... 12

*Farmland Dairies v. Comm'r of the N.Y. State De't of Agric. and Markets*,
    847 F.2d 1038, 1043-44 (2d Cir. 1998) ........................................................... 7

*H.L. Havden Co. of New York, Inc. v. Siemens Medical Systems. Inc.*,
    797 F.2d 85 (2d Cir. 1986) ............................................................................. 12

*International Design Concepts, LLC v. Saks, Inc.*,
    486 F. Supp. 2d 229 (SDNY 2007) .................................................................. 8

*Kaliski v. Bacot (In re Bank of New York Derivative Litig.)*,
    320 F.3d 291, 200 (2d Cir. 2003) ................................................................ 6, 7

*Pereira v. National Union Fire Ins. Co.*,
    2006 U.S. Dist. LEXIS 49263 (S.D.N.Y. July 12, 2006) ................................ 7

*Stutts v. De Dietrich Group*,
    2005 U.S. Dist. LEXIS 31056 (E.D.N.Y. Nov. 28, 2005) ............................... 8

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528, 538 n. 10, 92 S. Ct. 630, 30 L. Ed. 2d 686 (1927) ................. 10

*Union Switch & Signal Inc. v. St. Paul Fire and Marine Ins. Co.*,
    226 F.R.D. 485 (SDNY 2005) ....................................................................... 12

*United States ex rel. Foster Wheeler Corp. v. American Sur. Co.*,
    142 F.2d 726 (2d Cir. 1944) ............................................................................. 9

*United States v. City of New York,*
    198 F.3d 360 (2d Cir. 1999) ............................................................................12

*United States v. Pitney Bowes, Inc.,*
    25 F.3d 66 (2d Cir. 1994) ..................................................................................7

*Washington Elec. Coop. Inc. v. Massachusetts Mon. Wholesale Elec. Co.,*
    922 F.2d 92 (2d Cir. 1990) ............................................................................8, 9

*Weisshaus v. Swiss Bankers Ass'n,*
    225 F.3d 191 (2d Cir. 2000) ..............................................................................9

*Werbungs and Commerz Union Austalt v. Collectors' Guild, Ltd.,*
    782 F. Supp. 870 (S.D.N.Y. 1991) ....................................................................8

**Statutes**

Federal Rules of Civil Procedure Rule 24 .............................................................1, 6

Federal Rules of Civil Procedure Rule 24 (a) ............................................................9

Federal Rules of Civil Procedure Rule 24 (a)(2) ....................................................6, 8

Federal Rules of Civil Procedure Rule 24 (b) ..........................................................11

**Other Authorities**

6-24 *Moore's Federal Practice – Civil* § 24.03[3][A] (2006) ................................10

**PRELIMINARY STATEMENT**

Intervenor Plaintiff New York Marine and General Insurance Company ("NYMAGIC") submits this Memorandum of Law in Support of its application to intervene and be made a plaintiff in this action pursuant to Fed. R. Civ. P. Rule 24.

**FACTUAL AND PROCEDURAL BACKGROUND**

This is a declaratory judgment action commenced by Plaintiffs The Northern Assurance Company of America ("Northern Assurance") and American Home Assurance Company ("American Home") against Defendants Lafarge North America, Inc. ("Lafarge") and American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "American Club") concerning questions of Lafarge's right to a defense and indemnity for claims arising out of Hurricane Katrina under various marine policies of insurance issued to Lafarge. In particular, Lafarge is either a defendant or a third-party defendant in several lawsuits pending in the United States District Court for the Eastern District of Louisiana that arise out of the breakaway of a barge that was at Lafarge's New Orleans facility during Hurricane Katrina in August of 2005. It is alleged that the barge, ING 4727, struck and caused, or contributed to, the collapse of the 17th Street Industrial Canal floodwall, thereby causing massive flooding in New Orleans. These lawsuits seek to hold Lafarge and others responsible for personal injuries, deaths, real and personal property damage and economic loss resulting from the flooding.

1.  *Lafarge's Insurance*

At the time of Hurricane Katrina, Lafarge was a member of the American Club and as a member had protection and indemnity insurance pursuant to the terms of its Certificate of Entry and the Rules of the American Club (the "American Club Policy")

with a limit of at least $1 billion. Lafarge was also named as an insured for the period from May 1, 2005 to May 1, 2006, under (i) a Primary Marine Liabilities Policy of Insurance issued by NYMAGIC (the "NYMAGIC Policy"), with a limit of liability of $5,000,000 per any one accident or occurrence and (ii) an Excess Marine Liabilities Policy of Insurance (the "Excess Policy"), with a limit of liability of $45,000,000 (up to $50,000,000 under certain circumstances) per any one accident or occurrence. *See* Exhibits "1" and "2" to Declaration of David H. Fromm in Support of Motion to Intervene ("Fromm Decl.").

With respect to the Excess Policy, NYMAGIC subscribed to 40% of the risk, American Home subscribed to 35% of the risk and Northern Assurance subscribed to 25% of the risk of the Excess Policy. *See* Exhibit "3" to Fromm Decl. at ¶¶ 4, 5 and 6. The Excess Policy also provides that with respect to "all alternations, extensions, additions, endorsements, settlement of claim, etc. New York Marine and General Insurance Company to be agreed by as lead underwriter and to be binding on all remaining Underwriters participating hereon." Exhibit "2" to Fromm Decl. at p. 4, Policy General Conditions, 2. LEADER. Accordingly, NYMAGIC is the lead underwriter on the Excess Policy. *Id.*; *See also* Exhibit "3" to Fromm Decl. at ¶ 7.

### 2. *Coverage Actions Involving Lafarge's Insurance*

At this time, three declaratory judgment actions have been filed relating to the parties rights and obligations under the NYMAGIC Policy, the American Club Policy and the Excess Policy for the claims against Lafarge as a result of Hurricane Katrina and the breakaway of Barge ING 4727. First, NYMAGIC commenced a declaratory judgment action against Lafarge for the purposes of determining NYMAGIC's obligation

and rights with respect to the appointment of counsel and payment of attorneys' fees under the NYMAGIC Policy for the underlying Hurricane Katrina claims against Lafarge. *New York Marine and General Insurance Company v. Lafarge North America, Inc.*, 05 CV 9612 (SDNY). Thereafter, in April of 2006, the American Club commenced a declaratory judgment action against Lafarge seeking a declaration that Lafarge is not entitled to insurance coverage in connection with the underlying Hurricane Katrina litigation under the American Club Policy. *American Steamship Owners Mutual Protection and Indemnity Association v. Lafarge North America, Inc.*, 06 CV 3123.

      a.   <u>The Excess Action</u>

Then, on April 2, 2008, American Home and Northern Assurance filed the instant action against Lafarge and the American Club with respect to, *inter alia*, their rights and obligations under the Excess Policy as well as vis-à-vis the American Club Policy and the NYMAGIC Policy. NYMAGIC is not a party to this action.

More specifically, in the Complaint filed by American Home and Northern Assurance, four causes of action are asserted. The first cause of action is asserted against the American Club. In this cause of action, American Home and Northern Assurance allege that Lafarge "has complied with all necessary conditions under the Certificate of Entry for coverage to attach on the Barge ING 4727 under the liability insurance provided by the Club Rules and the Certificate of Entry." Complaint of American Home and Northern Assurance (Docket No. 1) at p. 20 ¶ 76. American Home and Northern Assurance further allege that the American Club's contention that coverage is excluded is invalid. *See id.* p. 21 ¶ 82. Thus, in the first cause of action, American Home and Northern Assurance seek a judgment declaring, *inter alia*, that the American Club must

3

provide a defense and indemnification to Lafarge for the Hurricane Katrina claims. *See id.* p. 21 ¶ 77.

The second cause of action is asserted against Lafarge. In this cause of action, American Home and Northern Assurance seek a judgment declaring that, if Lafarge failed to comply with the requirements necessary to bring Barge ING 4727 within the scope of the coverage provided through the American Club, the Excess Policy does not attach until such time as the amount that would have been covered through the American Club is exhausted. *See id.* p. 22 ¶ 85. In other words, it is alleged that the subscribing underwriters to the Excess Policy should not be required to pay under the Excess Policy until an amount equivalent to the full amount of coverage provided through the American Club has been paid by Lafarge. *See id.* ¶ 86.

In the third cause of action, American Home and Northern Assurance seek a judgment declaring that Lafarge is not entitled to reimbursement of past and/or future legal fees and expenses that have been or will be made to those counsel which were separately retained by Lafarge without the consent of, and/or without consultation with, its primary and excess insurers under the NYMAGIC and Excess Policies. *See id.* p. 25 ¶ 100.

Lastly, in the fourth cause of action, which is asserted against both Lafarge and the American Club, American Home and Northern Assurance allege that the Excess Policy is excess to both the NYMAGIC Policy and the American Club Policy. *See id.* p. 26 ¶ 105. American Home and Northern Assurance seek a judgment declaring that the coverage afforded under the Excess Policy is not triggered until the limits of liability

afforded under the NYMAGIC Policy and the American Club Policy are fully exhausted. *See id.* ¶ 107.

### b. *Larfarge's Motion to Dismiss the Excess Action*

After joining issue with an Answer to the Complaint of American Home and Northern Assurance, Lafarge filed a cross-motion to dismiss this action. In its motion, Lafarge asserts, *inter alia*, that the Excess Action should be dismissed because the Court cannot grant meaningful declaratory relief without NYMAGIC as a party to the action. *See* Lafarge's Memorandum of Law In Support of the Cross-Motion To Dismiss the Complaint (Docket No. 31). Lafarge claims that NYMAGIC is the real party in interest in this action and is "an indispensable party to any action concerning the Excess Policy." *Id.* at p. 13. Lafarge also claims that a declaratory judgment in this action would be meaningless without NYMAGIC's participation because such a judgment would not be binding on NYMAGIC. *Id.* at 11-12 and 15-16. The American Club has joined Lafarge's cross-motion to dismiss and adopted the arguments set forth by Lafarge including that NYMAGIC is an indispensible party to this litigation. *See* Brief of Defendant American Steamship Owners Mutual Protection and Indemnity Association in Support of and Joining in the Cross-Motion by Defendant Lafarge North America, Inc. to Dismiss the Action (Docket No. 35).

### c. *NYMAGIC's Ratification of the Excess Action*

On June 26, 2008, NYMAGIC ratified the commencement and prosecution of this declaratory judgment action by American Home and Northern Assurance pursuant to the Rule 17 (a) of the Federal Rules of Civil Procedure. *See* Exhibit "3" to Fromm Decl. In addition, NYMAGIC agreed to be bound by a final judgment in this action after all

5

appeals have been exhausted or the time to appeal has expired, as applicable. *Id*. Now, NYMAGIC moves to intervene as a plaintiff in this action as the lead underwriter under the Excess Policy and join in all four causes of action asserted by American Home and Northern Assurance against Lafarge and the American Club in this action. A copy of NYMAGIC's proposed Intervenor Complaint is attached the Fromm Decl. as Exhibit "4".

## ARGUMENT

## POINT I

## NYMAGIC IS ENTITLED TO INTERVENE AS OF RIGHT

Rule 24 of the Federal Rule of Civil Procedure allows for two types of intervention: (i) intervention as of right and (ii) permissive intervention. A non-party such as NYMAGIC has a right to intervene where a federal statue confers such an unconditional right, or where, as is the case here, the non-party has an interest in the litigation. Rule 24 (a)(2) of the Federal Rules of Civil Procedure provides in relevant part:

> On timely motion the court must permit anyone to intervene who: …
> claims an interest relating to the property or transaction which is the
> subject matter of the action, and is so situated that disposing of the action
> may as a practical matter impair or impede the movant's ability to protect
> its interest, unless existing parties adequately represent that interest.

In the absence of a statute, the Secord Circuit requires that the following criteria are met by a party seeking to intervene: (1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action. *Kaliski v.*

6

*Bacot (In re Bank of New York Derivative Litig.)*, 320 F.3d 291, 200 (2d Cir. 2003); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001). NYMAGIC clearly satisfies each of these requirements.

### A.     **The Current Motion is Timely**

NYMAGIC's motion to intervene is timely by any measure. In making a determination of timeliness, Courts examine the totality of circumstances. *See Farmland Dairies v. Comm'r of the N.Y. State De't of Agric. and Markets,* 847 F.2d 1038, 1043-44 (2d Cir. 1998). Among the circumstances to which courts look to determine whether an intervention application is timely are: "(1) how long the applicant had notice of the interest before [it] made the motion to intervene; (2) prejudice to the existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). However, although timeliness of a motion to intervene is not determined strictly by chronology and is determined by the totality of the circumstances, the length of an applicant's delay in seeking intervention is "[a]mong the most important factors" to consider in a timeliness decision. *See Catanzano v. Wing,* 103 F.3d 223, 232 (2d Cir. 1996).

Here, Northern Assurance and American Home filed this Declaratory Judgment Action on April 2, 2008. Accordingly, this action has only been pending for less the then three and a half months. Clearly, inasmuch as NYMAGIC's application to intervene in this action is made less the four months after this action was commenced, this application is timely. *See Pereira v. National Union Fire Ins. Co.*, 2006 U.S. Dist. LEXIS 49263 (S.D.N.Y. July 12, 2006)(finding intervention motion brought two years

after commencement of the action to be timely); *Werbungs and Commerz Union Austalt v. Collectors' Guild, Ltd.,* 782 F. Supp. 870 (S.D.N.Y. 1991)(intervention sought "almost two years after Pernal was aware of its interest in the case" ruled timely); *Stutts v. De Dietrich Group*, 2005 U.S. Dist. LEXIS 31056 (E.D.N.Y. Nov. 28, 2005)(intervention timely even though brought almost two years after action commenced).

No prejudice or delay will result from the addition of NYMAGIC. This action is still at the pleading stage and no discovery has been conducted to date. *Stutts,* 2005 U.S. Dist. LEXIS 31056 at *5 (E.D.N.Y. Nov. 28, 2005)(fact that discovery had not commenced pending adjudication of various motions to dismiss warranted finding motion to intervene was timely); *International Design Concepts, LLC v. Saks, Inc.,* 486 F. Supp. 2d 229, 235 (SDNY 2007) (intervention motion held timely despite need to reopen discovery). In addition, NYMAGIC's intervention will not change the nature of the action. NYMAGIC is not adding any new issues, facts or claims to this action. NYMAGIC, as the lead underwriter under the Excess Policy, is simply joining in the four causes of actions already asserted against Defendants Lafarge and the American Club. Accordingly, allowing NYMAGIC to intervene will not complicate the case in anyway and there will not be any delay that will prejudice the original parties.

  **B.**  **NYMAGIC has a Significant Protectable Interest in this Action and a Disposition in this Action Could Impair NYAMGIC's Ability to Protect Its Interest**

An intervenor must also demonstrate an interest that is "'direct, substantial, and legally protectable" in order to satisfy the interest requirement of Rule 24(a)(2). *See Brennan v. New York City Bd. of Educ.,* 260 F.3d 123, 130-131 (2d Cir 2001); *Washington Elec. Coop.. Inc. v. Massachusetts Mon. Wholesale Elec. Co.,* 922 F.2d 92,

8

97 (2d Cir. 1990). In this situation, where there is a cognizable property at issue (insurance coverage) the Second Circuit explained that Rule 24(a) "requires not a property interest but rather, an interest relating to the property or transaction which is the subject of the action." *Brennan,* 260 F.3d at 130 (quoting Fed. R. Civ. P. Rule 24); *Weisshaus v. Swiss Bankers Ass'n*, 225 F.3d 191, 195-196 (2d Cir. 2000).

Here, NYMAGIC has a clear protectable interest. NYMAGIC is the lead underwriter on the Excess Policy to which American Home and Northern Assurance also subscribed. American Home and Northern Assurance have commenced this declaratory judgment action in order to get a determination of the parties' rights under the Excess Policy vis-à-vis the American Club Policy. Any declaration, determination or decision rendered by the Court will affect and impact NYMAGIC's obligations, duties and rights under the Excess Policy. It will, *inter alia*, affect NYMAGIC's alleged duty to pay defense costs under the Excess Policy. Moreover, NYMAGIC will be bound by any judgment entered in this action and would lose the ability to protect or have a determination of its rights under the Excess Policy once a judgment is issued in this action.

Clearly, any determination of NYMAGIC's rights under the Excess Policy without its participation in the lawsuit is precisely the potential injury that intervention is designed to prevent. Therefore, in light of the possibility that NYMAGIC's rights and obligations under the Excess Policy may be determined without its participation, disposition of this action without NYMAGIC's intervention may impair its interests and rights. *United States ex rel. Foster Wheeler Corp. v. American Sur. Co.,* 142 F.2d 726, 728 (2d Cir. 1944)(intervention proper where intervenor would have been bound by a

judgment against its surety); *Coleman Capital Corp. v. Fid. & Deposit Co.,* 43 F.R.D., 408 (S.D.N.Y. 1967)(intervenor demonstrated that "as a practical matter" its "ability to protect" its interest in the transaction at issue would be impaired or impeded by a disposition of the action).

### C. NYMAGIC's Interest Is Not Fully Protected by the Other Parties to this Action

The burden of showing that the other parties will not adequately protect the intervenor's interests "is minimal," and involves determining "whether the [parties'] interests [are] so similar to those of the [putative intervenor] that adequacy of representation [is] assured.'" *Brennan,* 260 F.3d at 133. Moreover, the intervenor is not required to demonstrate that the representation will be, for certain, inadequate. *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n. 10, 92 S. Ct. 630, 30 L. Ed. 2d 686 (1927). It need only show that the representation of its interests "may be" inadequate. *Id.* Any doubt regarding adequacy of representation should be resolved in favor of NYMAGIC. *See* 6-24 *Moore's Federal Practice – Civil* § 24.03[3][A] (2006).

Here, it is clear that NYMAGIC and Plaintiffs American Home and Northern Assurance share common rights and interests with respect to the Excess Policy. However, the NYMAGIC Policy is also implicated in this action in connection with, *inter alia*, the issue involving the stacking of Lafarge's policies and it is possible that any declaration, order or decision issued by the Court in this matter may have an impact or affect on NYMAGIC and/or the NYMAGIC Policy. Accordingly, NYMAGIC's rights with respect to the NYMAGIC policy may be overlooked, ignored or not fully represented in this matter as the other insurers do not have an interest in the NYMAGIC Policy.

10

In addition, on July 3, 2008, we wrote to counsel for Lafarge and the American Club requesting that their consent in allowing NYMAGIC to intervene in this action. *See* Exhibit "5" to Fromm Decl. In response, Lafarge accused NYMAGIC of breaching the terms and conditions of the Excess Policy by ratifying this declaratory judgment action. *See* Exhibit "5" to Fromm Decl. Lafarge is also claiming that NYMAGIC has "allowed the following underwriters to breach the [Excess P]olicy by 'authorizing' the commencement" of this action and that NYMAGIC is "shirking" its responsibilities as the lead underwriter under the Excess Policy. *Id.* In addition, Lafarge has accused NYMAGIC of alleged bad faith. *Id.* On July 16, 2008, NYMAGIC responded to, and denied, Lafarge's allegations of bad faith and breach of the Excess Policy. *See* Exhibit "7" to Fromm Decl. Therefore, inasmuch as Lafarge is accusing NYMAGIC of breaching the "Leader" Clause of the Excess Policy and of bad faith, it is clear that NYMAGIC must protect and represent itself against these baseless accusations in this matter. It cannot be left to the other parties in this action to represent NYMAGIC's interests in this regard.

## POINT II

## ALTERNATIVELY NYMAGIC SHOULD BE PERMITTED TO INTERVENE

Even if the Court determines that NYMAGIC is not entitled to intervene as of right, NYMAGIC should be entitled to permissively intervene pursuant to Fed. R. Civ. P. 24(b). Rule 24(b) provides in part:

> **(1)** *In General.* On timely motion, the court may permit anyone to intervene who:

\* \* \*

11

        **(B)**    has a claim or defense that shares with the main action a common question of law or fact.

* * *

**(3)  Delay or Prejudice.**  In exercising its discretion the court shall consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Permissive intervention is thus within the Court's discretion. In exercising that discretion, courts consider factors that include "[1] the nature and extent of the intervenors' interests, [2] the degree to which those interests are adequately represented by other parties, and [3] whether parties seeking intervention will significantly contribute to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Diversified Group v. Paul Daugerdas,* 217 F.R.D. 152 (SDNY 2003) (quoting *H.L. Havden Co. of New York, Inc. v. Siemens Medical Systems. Inc.,* 797 F.2d 85, 89 (2d Cir. 1986); *United States v. City of New York*, 198 F.3d 360, 364 (2d Cir. 1999). A district court has broad discretion in assessing the timeliness of a motion to intervene, which "defies precise definition." *Union Switch & Signal Inc. v. St. Paul Fire and Marine Ins. Co.,* 226 F.R.D. 485, 488 (SDNY 2005).

In the instant action, as stated above, NYMAGIC has moved timely, has protectable interests in the litigation, and its participation clearly will ensure full development of the factual and legal issues involved in this matter. In particular, NYMAGIC is the lead underwriter on, and subscriber to, the Excess Policy that is the subject matter of this declaratory judgment action. Of course, because NYMAGIC is lead underwriter under, and subscriber to, the Excess Policy, NYMAGIC is also entitled to equitable adjudication of the legal issues presented here. Simply put, where, as here,

12

the intervention claims involve the same questions of law and fact raised by the original action, wholesale consideration of these questions in one single lawsuit would save time and judicial resources. Notably, should NYMAGIC not intervene as a plaintiff in this action, it would have the right to commence a separate action against Lafarge and the American Club as set forth in the proposed Intervenor Complaint.

There is no dispute that NYMAGIC satisfies the requirements for permissive intervention. All of the claims and causes of action arise under the Declaratory Judgment Act and Federal Maritime Law, meaning that no question exists regarding jurisdiction. As demonstrated above, NYMAGIC has moved in a timely fashion, and NYMAGIC, as the lead underwriter under the Excess Policy, is joining the causes of action already asserted by Plaintiffs American Home and Northern Assurance with respect to the Excess Policy. NYMAGIC's intervention will not prejudice any of the parties and no additional claims or lawsuits need to be considered by the Court - meaning that judicial economy clearly is served by permitting intervention.

In addition, based upon the Cross-Motion to dismiss recently filed by Lafarge in this action, it is clear that Lafarge believes that NYMAGIC is a necessary and indispensable party to this action. *See* Docket No. 31. In fact, Lafarge unequivocally states and represents to the Court in its Memorandum of Law In Support of the Cross-Motion To Dismiss the Complaint ("Lafarge Memo") that "NYMAGIC is an indispensable party to any action where coverage under the Excess Policy will be litigated." *See* Lafarge Memo (Docket No. 31) at p. 16. Lafarge also states that the absence of any participation by NYMAGIC in this action prevents the Court from attempting to determine the legal relations and/or adjudicating the obligations of the

13

parties with respect to the Excess Policy and Lafarge's other insurance coverage. *Id.* at p. 11.  Likewise, the American Club also believes that NYMAGIC is a necessary and indispensable party to this action as the American Club has joined and supported Lafarge's Cross-Motion to Dismiss and its position that NYMAGIC must be part of this action in order for the Court to issue a binding declaratory judgment on the coverage issues involved here. *See* Brief of Defendant American Steamship Owners Mutual Protection and Indemnity Association in Support of and Joining in the Cross-Motion by Defendant Lafarge North America, Inc. to Dismiss the Action (Docket No. 35).

      Simply stated, NYMAGIC is an indispensable party to this litigation and should be permitted to intervene in this action.

## **CONCLUSION**

For the foregoing reasons, NYMAGIC's motion to intervene should be granted in its entirety.

Dated: July 16, 2008
       New York, New York

                            Respectfully submitted,

                            BROWN GAVALAS & FROMM LLP
                            Attorneys for Intervenor Plaintiff
                            *New York Marine and*
                            *General Insurance Company*

                            By: _____/S/_____
                                David H. Fromm (DF-9334)
                                Michael P. Naughton (MN-6870)
                                355 Lexington Avenue
                                New York, New York 10017
                                (212) 983-8500