**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THE NORTHERN ASSURANCE COMPANY OF
AMERICA and AMERICAN HOME ASSURANCE
COMPANY,

                                    Plaintiffs,                    **ECF CASE**

              - against -

LAFARGE NORTH AMERICA, INC. and                    Case No.: 08 CV 3289 (CSH) (AJP)
AMERICAN STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY ASSOCIATION,
INC.,

                                    Defendants.


**DEFENDANT AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION**
**AND INDEMNITY ASSOCIATION, INC.'S MEMORANDUM OF LAW IN**
**OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**


THACHER PROFFITT & WOOD LLP
Two World Financial Center
New York, New York 10281
(212) 912-7400
John M. Woods
Jennifer S. Kozar

*Attorneys for American Steamship Owners*
  *Mutual Protection and Indemnity*
  *Association, Inc.*

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ................................................................................. i

PRELIMINARY STATEMENT ...........................................................................1

FACTUAL BACKGROUND.................................................................................3

I.        The Coverage Dispute Between the American Club And Lafarge ..........................3

II.       Marine Liability Insurance Policies Issued To Lafarge ...........................................5

III.      The Status Of The Plaintiff Underwriters' Declaratory Judgment Action..............6

LEGAL ARGUMENT.............................................................................................7

POINT I       THERE ARE CONTESTED ISSUES OF MATERIAL FACT
              CONCERNING THE LANGUAGE OF THE PRIMARY AND
              EXCESS LIABILITY POLICIES ............................................................8

POINT II      THE AMERICAN CLUB NEVER INSURED LAFARGE FOR THE
              LIABILITIES ARISING FROM THE BREAKAWAY OF THE
              BARGE ING 4727 .................................................................................10

POINT III     PLAINTIFF EXCESS UNDERWRITERS ARE NOT THE PROPER PARTIES
              TO ARGUE LAFARGE'S COVERAGE UNDER ITS CERTIFICATE OF
              ENTRY WITH THE AMERICAN CLUB ............................................12

POINT IV      SUMMARY JUDGMENT SHOULD BE DENIED ON PLAINTIFF EXCESS
              UNDERWRITERS' CLAIMS REGARDING THE TIMING OF PAYMENTS
              AND STACKING OF POLICIES .........................................................13

              A.      Plaintiff Excess Underwriters Arguments Concerning Payment of
                      Lafarge's Defense Costs Willfully Ignores the Nature of the American
                      Club's Indemnification Policy....................................................13

              B.      A Determination Regarding the Stacking of the Policies is Improper
                      and Premature at this Time .........................................................16

CONCLUSION.....................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bellefonte Reinsurance Co. v. Aetna Cas. & Sur. Co.*, 590 F. Supp. 187 (S.D.N.Y. 1984) ... 17, 18

*Certain Underwriters at Lloyds, London v. St. Joe Minerals Corp.*, 90 F.3d 671 (2d Cir. 1996) 17

*Fishman v. Town of Islip*, 20 Misc.2d 180 (N.Y. Sup. Ct. 1959) ................................................. 11

*Giannullo v. City of New York*, 322 F.3d 139 (2d Cir. 2003) ......................................................... 7

*In re Prudential Lines Inc.*, 158 F.3d 65 (2d Cir. 1998) ................................................................ 14

*In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455 (S.D.N.Y. 2005) ........................ 14, 15, 16

*Nu-Way Environmental, Inc. v. Planet Ins. Co.*, No. 95 Civ. 573, 1997 WL 462010 (S.D.N.Y. Aug. 12, 1997) ............................................................................................................................. 15

*Recant v. Hardwood*, 635 N.Y.S.2d 231 (1st Dep't 1995)........................................................... 16

*Regents Ins. Co. v. Storm King Contracting, Inc.*, No. 06-CV-2879, 2008 WL 563465 (S.D.N.Y. Feb. 27, 2008) ........................................................................................................................... 11

*TH Agric. & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282 (10th Cir. 2007) ....... 15

*Trustees of Princeton University v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, No. 650202/06, 2007 WL 1063870 (N.Y. Sup. Ct. April 10, 2007) ........................................ 15

*U.S. Underwriters Ins. Co. v. Kum Gang, Inc.*, 443 F. Supp. 2d 348 (E.D.N.Y. 2006) .............. 17

*Wedtech Corp. v. Federal Insurance Co.*, 740 F. Supp. 214 (S.D.N.Y. 1990) ..................... 15, 16

## OTHER AUTHORITIES

BLACK'S LAW DICTIONARY (7th Ed.) (1999) ...............................................................................11

American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "American Club"), by and through its attorneys Thacher Proffitt & Wood LLP, hereby submits this Memorandum of Law in opposition to the cross-motion for summary judgment (the "Summary Judgment Cross-Motion") filed by The Northern Assurance Company of America and American Home Assurance Company (collectively "Plaintiff Excess Underwriters").

## PRELIMINARY STATEMENT

As an initial matter, it is very unclear precisely what relief is being sought by the Plaintiff Excess Underwriters. Their Complaint sets forth four widely disparate causes of action: two against the American Club alone, and three against Lafarge North America, Inc. ("Lafarge"). However, the instant Notice of Motion simply seeks an order "granting summary judgment," and the conclusion of the Plaintiff Excess Underwriters' Memorandum of Law in Support of their Summary Judgment Cross-Motion (the "Summary Judgment Memorandum") only asks for relief with respect to the Plaintiff Excess Underwriters' second and fourth causes of action. They do not request, for example, a finding that the American Club insures Lafarge, although they spend a good deal of their brief devoted to the subject. Plaintiff Excess Underwriters also make no mention of their cause of action against Lafarge concerning their obligation to pay Lafarge's defense costs. Thus it is difficult to respond to Plaintiff Excess Underwriters' Summary Judgment Cross-Motion.

Moreover, Plaintiff Excess Underwriters' Summary Judgment Memorandum is replete with misstatements and errors regarding the nature of the American Club's Protection and Indemnity Policy (the "P & I Policy") issued to Lafarge, as well as the claims the American Club is asserting in its declaratory judgment action against Lafarge (the "Declaratory Judgment

Action").[1]  However, after parsing the arguments and looking at the true facts of this dispute, it is clear that the Plaintiff Excess Underwriters' Summary Judgment Cross-Motion has no merit, seeks a declaration on issues not yet ripe for adjudication, and is fatally flawed due to genuine issues of material fact.

The most glaring genuine issue of material fact concerns the actual language of the policy issued by the Plaintiff Excess Underwriters (the "Excess Policy"), as well as the policy issued to Lafarge by non-party New York Marine and General Insurance Company ("NYMAGIC") (the "Primary Policy").  It is clear that both Lafarge and the Plaintiff Excess Underwriters have failed to produce authentic, executed copies of these two policies.[2]  The Court cannot address the claims raised by the Plaintiff Excess Underwriters without first reviewing and verifying the relevant language of the Excess Policy and the Primary Policy.

More importantly, the entire argument of Plaintiff Excess Underwriters rests on the erroneous assumption that the American Club covers Lafarge for the legal liabilities arising from the breakaway of the Barge ING 4727 from Lafarge's New Orleans facility during Hurricane Katrina.  As will be demonstrated in the summary judgment motion which will be filed shortly in the American Club's Declaratory Judgment Action, that is simply not the case.  The ING 4727 was never insured under Lafarge's Certificate of Entry with the American Club, nor can it be insured under the Chartered Barges clause of that Certificate of Entry.  Thus, not only does the Summary Judgment Cross-Motion fail, three out of four of Plaintiff Excess Underwriters' causes of action fail.

---

[1]    *Am. Steamship Owners Mut. Protection & Indemn. Ass'n, Inc. v. Lafarge N. Am., Inc.*, No. 06-CV-3123 (S.D.N.Y. filed Apr. 24, 2006).

[2]    While both the Declaration of Robert G. Clyne submitted in support of Lafarge's Cross-Motion to Dismiss and the Affidavit of John A.V. Nicoletti submitted in support of the Cross-Motion for Summary Judgment in the instant action purport to attach the Primary Policy and the Excess Policy as exhibits thereto, it is clear from the faces of the respective documents that these are not, in fact, the executed policies.  This is discussed in Point I, *infra*.

Moreover, since Plaintiff Excess Underwriters are not parties to the P & I Policy, Plaintiff Excess Underwriters' arguments misconstrue the actual claims that are being raised in the dispute of coverage between the American Club and Lafarge. Plaintiff Excess Underwriters are simply not the proper parties to be raising claims regarding Lafarge's Certificate of Entry with the American Club.

Finally, Plaintiff Excess Underwriters' arguments concerning the "stacking" of the policies and timing of payment of defense costs are without merit. Plaintiff Excess Underwriters fail to understand the nature of the American Club's P & I Policy as providing for indemnification. The duty to indemnify does not attach until there has been a finding of legal liability. Because there is no certainty regarding legal liability of either Lafarge or the American Club, all claims concerning the stacking of policies or timing of payments are not ripe at this time. Therefore, Plaintiff Excess Underwriters' Summary Judgment Cross-Motion should be denied.

## **FACTUAL BACKGROUND**

The American Club fully incorporates the facts included in its Response to Plaintiff Excess Underwriters' Local Civil Rule 56.1 Statement of undisputed facts here. In addition, the American Club provides the following factual background:

## I.    **The Coverage Dispute Between the American Club and Lafarge**

On or about April 2, 2008, Plaintiff Excess Underwriters filed the instant declaratory judgment action against Lafarge and the American Club. The Plaintiff Excess Underwriters' action was filed almost two years after the American Club filed its declaratory judgment action against Lafarge in April 2006, seeking a determination as to whether the terms of Lafarge's entry with the American Club can be extended to cover the Barge ING 4727, or if insured by the American Club, whether coverage is nonetheless excluded.

Lafarge has been a member of the American Club since February 20, 1999. Lafarge's Certificate of Entry with the American Club contains a Schedule of Vessels which specifically identifies the vessels that Lafarge insured with the American Club. The Barge ING 4727 is not listed on the Schedule of Vessels, nor are any Ingram barges. *See* Lafarge's 2005/2006 Certificate of Entry (the "Certificate of Entry"), attached to the Declaration of John M. Woods in Support of the American Club's Opposition to Plaintiff's Cross-Motion for Summary Judgment (the "Woods Declaration") as Ex. A.

The ING 4727 was not owned by Lafarge, but was owned and operated by Ingram Barge Company ("Ingram"). Pursuant to a transportation agreement dated December 14, 2004 between Lafarge and Ingram (the "Transportation Agreement," attached to the Affidavit of John A.V. Nicoletti in Support of Cross-Motion for Summary Judgment (the "Nicoletti Affidavit") as Ex. 8), Ingram agreed during calendar year 2005 to transport approximately 160,000 net tons of cement in covered barges from Lafarge's Joppa, Illinois plant to its New Orleans facility. The Barge ING 4727, one of the barges Ingram used to transport Lafarge's cement under the Transportation Agreement, was moored at Lafarge's New Orleans facility on the date of Hurricane Katrina in August 2005. It has been alleged that, during the hurricane, the ING 4727 broke away from her moorings and struck and breached the Industrial Canal Levee. Accordingly, claims have been asserted in litigation in New Orleans against Ingram and Lafarge, in addition to their respective insurers pursuant to the Louisiana direct action statute.

Recognizing that the ING 4727 is not included in the Schedule of Vessels, Lafarge has asserted that cover for the ING 4727 arises out of the "Chartered Barges" clause contained in its Certificate of Entry with the American Club, which provides in part:

> If Lafarge Corporation et al acquires an <u>insurable interest in any</u> <u>vessel in addition to or in substitution for those set forth herein,</u>

4

> through purchase, charter, lease or otherwise, such insurance as is
> afforded hereunder to any similar vessel shall automatically cover
> such additional vessel effective from the date and time the Assured
> acquires an insurable interest in such additional vessel.  With
> respect to a chartered, leased or similarly acquired vessel, the
> insurance hereunder automatically includes the owner as an
> additional Assured with waiver of subrogation against the owner, if
> required, effective from the date and time such vessel is insured
> hereunder.

Certificate of Entry at p. 5 (emphasis added).  The American Club has denied that Lafarge may

insure the ING 4727 under the quoted clause because the ING 4727 was not chartered by Lafarge

and because none of the pertinent conditions under the clause were satisfied with respect to the

the ING 4727.

## II.    Marine Liability Insurance Policies Issued to Lafarge

At all relevant times, Lafarge was insured under a primary marine liability policy with a

limitation of $5 million obtained from NYMAGIC, which covers, among other risks,

wharfinger's liability ("Primary Policy").  Lafarge has made a claim under this policy for its

liabilities arising from the breakaway of the ING 4727 and NYMAGIC has accepted in principle

that the claim is covered.  However, and as the Court is aware, NYMAGIC has filed a

declaratory judgment action against Lafarge seeking a ruling as to the scope of its obligation to

pay defense costs, and in particular its obligation to pay for Lafarge's chosen defense counsel,

which action is currently pending before this Court.[3]

Lafarge also obtained an excess liability policy for its marine liabilities, which follows

the primary policy (the "Excess Policy").  The Excess Policy apparently provides $45 million in

cover above the $5 million primary limit for wharfinger's liability, for total wharfinger's liability

coverage up to $50 million.   The Excess Policy is led by NYMAGIC, which underwrites forty

---

[3]    *New York Marine & Gen. Ins. Co. v. Lafarge N.A.., Inc.*, No. 05-CV-9612 (S.D.N.Y. filed Nov. 11, 2005).
Neither the American Club nor Plaintiff Excess Underwriters are parties to NYMAGIC's declaratory judgment
action against Lafarge.

percent of the risk. The remaining sixty percent is insured by the Northern Assurance Company of America (25%) and American Home Assurance Company (35%).[4]

### III.    The Status of the Plaintiff Underwriters' Declaratory Judgment Action

Plaintiff Excess Underwriters' Declaratory Judgment Complaint contains four causes of action. The first cause of action, which is asserted against the American Club and seeks a declaration that the American Club covers Lafarge for the liabilities arising from the breakaway of the ING 4727 is similar, if not identical, to the claims which are being litigated between the American Club and Lafarge. *See* ¶¶ 65-82 of the Declaratory Judgment Complaint filed by the Excess Underwriters against the American Club and Lafarge, attached to Nicoletti Affidavit as Ex. 1. Meanwhile, the fourth cause of action, which is the only other cause of action against the American Club, concerns the stacking of coverages as between the American Club's cover and the excess marine liability policy. *See id*. ¶¶ 101-107. Whether this fourth cause of action must be decided at all is dependent on the outcome of the American Club's declaratory judgment action against Lafarge.

Since the instant action has been filed, a number of currently outstanding motions have been submitted to this Court by all parties to the action. On May 19, 2008, Plaintiff Excess Underwriters filed a Motion to Consolidate the instant action with the Declaratory Judgment Action. *See* Docket No. 20 in the Instant Action. The American Club responded, and filed its Cross-Motion to Stay Proceedings with respect to Plaintiff Excess Underwriters' claims against the American Club, pending the outcome of the Declaratory Judgment Action, on June 5, 2008. *See id*. Docket No. 24. Lafarge similarly opposed the Motion to Consolidate, and filed a Cross-

---

[4]    As previously noted, Plaintiff Excess Underwriters have not produced a signed copy of the Excess Policy to the Court or attached it to any pleading, correspondence or their motion to consolidate. Accordingly, the American Club's understanding as to the limit and participation of the excess marine liability policy comes from the representations by Plaintiff Excess Underwriters' counsel to the Court at the conference held on May 12, 2008.

Motion to Dismiss with respect to the claims asserted by Plaintiff Excess Underwriters against Lafarge, on June 5, 2008. *See id.* Docket No. 29. The American Club filed its own Memorandum of Law in Support of Lafarge's Motion to Dismiss, on June 23, 2008, addressing the claims asserted by Plaintiff Excess Underwriters against the American Club. *See id.* Docket No. 35. After the instant Cross-Motion for Summary Judgment was filed on July 2, 2008, NYMAGIC filed a Motion to Intervene as Plaintiff on July 16, 2008. *See id.* Docket No. 53.

## <u>LEGAL ARGUMENT</u>

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In making a motion for summary judgment, "it is the movant's burden to show that no genuine factual dispute exists, and all reasonable inferences must be drawn in the non-movant's favor. *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The Second Circuit has specifically noted that when the movant "fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, even if no opposing evidentiary matter is presented, for the non-movant is not required to rebut an insufficient showing." *Id.* at 140-141 (citations omitted). For the reasons set forth below, Plaintiff Excess Underwriters have in fact made an insufficient showing, and therefore are not entitled to summary judgment.

**POINT I**

**THERE ARE CONTESTED ISSUES OF MATERIAL FACT
CONCERNING THE LANGUAGE OF THE
PRIMARY AND EXCESS LIABILITY POLICIES**

Summary judgment on any of the Plaintiff Excess Underwriters' claims concerning the Excess Policy and/or the Primary Policy, such as the "other insurance" conflict and the attachment points of the Excess Policy, is patently improper at this stage as there is a genuine dispute of material fact relating to the contents of the Excess Policy and the Primary Policy. While the Declaration of Robert G. Clyne submitted in support of Lafarge's Cross-Motion to Dismiss the instant action and Opposition to Plaintiff Excess Underwriters' Motion to Consolidate (the "Clyne Declaration," Docket No. 30, filed 6/5/2008) purports to include a "true and accurate copy" of the Excess Policy, the document attached thereto is, on its face, only a "Confirmation of Insurance" issued by Willis New York, Inc., the brokers and agents for Lafarge. It is not signed by any underwriter but instead is signed by "Willis New York, Inc., Brokers for the Assured."[5]  *See* Confirmation of Insurance WCM05-531, attached to the Clyne Declaration as Ex. B.

Attached to the Nicoletti Affidavit as Exhibit 4 is a document represented to be a "true and accurate copy of Joint Policy 02-0360-04," *i.e.*, the purported Excess Policy.  However, it is clear from the first page of this document that this purported policy has not been executed, as it bears only the pre-printed signatures of the Secretary and the President & CEO of International Marine Underwriters.  Below those pre-printed signatures appears the following: "[i]n witness whereof, this Company has caused this Policy to be executed below, *but this Policy shall not be*

---

[5]     For the sake of minimizing the number of duplicate submissions of pleadings and prior motions and exhibits to the Court, the American Club incorporates by reference certain named documents filed with earlier motions or submissions to the Court in the instant action.  If the Court would prefer that the American Club directly provide it with copies of all documents cited in this Opposition, including those documents attached to earlier submissions, that will be done promptly upon receiving notice that the Court would like us to do so.

*valid unless countersigned by a duly authorized representative of the Company.*" *Id.* (emphasis added). But below that there is no signature on the line marked "Countersigned by" nor is there a signature in the line for an "Authorized Representative." *See id.* at p. 1. Thus, there is no signature by the actual underwriter of the risk, or by anyone involved in the underwriting of the policy or the acceptance of risk. Accordingly, on its face the "Joint Policy" is not valid.

Furthermore, a cursory review of all the subsequent pages of the alleged Joint Policy reveals that these pages refer to an earlier policy period of May 1, 2004 through May 1, 2005. *Id.* at pp. 2-5. In addition, there are handwritten notations included throughout the document without any explanation, most notably those found on "Page 23 of 1" [sic]. *See id.* at p. 26. Moreover, <u>none of these pages of the alleged Joint Policy bear the single signature of an underwriter</u>, let alone both underwriters to the "Joint Policy." As this document is seemingly invalid, the American Club is unable to confirm the purported terms of the Excess Policy, and therefore is unable to adequately address any of the Plaintiff Excess Underwriters' claims that relate to the language and terms of the Excess Policy.

Similarly, neither Lafarge or NYMAGIC has ever produced the final executed Primary Policy issued by NYMAGIC. The Clyne Declaration purports to attach a "true and correct copy" of the Primary Policy issued to Lafarge, but like the purported Excess Policy attached to the Clyne Declaration, this attached document is instead nothing more than a "Confirmation of Insurance" issued and signed by "Willis New York, Inc., Brokers for the Assured." *See* Confirmation of Insurance, WCM050530, attached to Clyne Declaration as Ex. A. It is therefore, on its face, not an insurance policy. Nevertheless, the Nicoletti Affidavit attaches this same Confirmation of Insurance and represents that it is a "true and accurate copy" of the Primary Policy. *See* Confirmation of Insurance, WCM050530, attached to the Nicoletti

Affidavit as Ex. 5.  Accordingly, the American Club is unable to review, verify or confirm the alleged terms of both the Excess Policy and the Primary Policy, and thus there are disputed issues of material fact concerning the contents of both purported policies.  The Summary Judgment Cross-Motion must therefore be denied.

## POINT II

## THE AMERICAN CLUB NEVER INSURED LAFARGE FOR THE BARGE ING 4727

The Plaintiff Excess Underwriters' entire argument with respect to their causes of action against the American Club (and one cause of action against Lafarge) rests on the erroneous assumption that the American Club insured the ING 4727 under Lafarge's Certificate of Entry. If that is not the case – and it is not – three out of four of the Plaintiff Excess Underwriters' causes of action fail.  They are left only with the issue of the extent of their obligation to pay Lafarge's defense costs.

The American Club's full arguments as to why the ING 4727 was not insured under Lafarge's Certificate of Entry will be presented to the Court in the American Club's motion for summary judgment that will be filed in the American Club's Declaratory Judgment Action on or before August 4, 2008, the deadline for doing so in that action.  The American Club asks the Court's indulgence to incorporate the arguments in that motion in this response to Plaintiff Excess Underwriters' premature Summary Judgment Cross-Motion.  As a preview of that motion, however, the American Club avers that there is no question that the ING 4727 was not listed on Lafarge's Schedule of Vessels attached to and forming part of Lafarge's Certificate of Entry with the American Club.  Nor can Lafarge seek to add the ING 4727 under the Chartered Barges clause in the Certificate of Entry because it does not satisfy the requirements of that clause.  The barge was not purchased, chartered or leased by Lafarge, nor did Lafarge acquire

any interest in the vessel of a nature akin to that of a purchaser, charterer or leasee. *See* Transportation Agreement, attached to Nicolletti Affidavit as Ex. 8. The barge was at all times Ingram's barge and was at the Lafarge facility pursuant to an agreement between Ingram and Lafarge that specified that the barge was not under charter and remained at all times the barge of Ingram, an independent contractor. *See id*. The addition of the words "or otherwise" in the Chartered Barges clause is of no avail to Lafarge (or Plaintiff Excess Underwriters) because, under the principle of *ejusdem generis*, the phrase must be interpreted in light of, and limited to, the terms which preceded it, *i.e.* "purchase, charter or lease." *See Regents Ins. Co. v. Storm King Contracting, Inc.*, 06-CV-2879, 2008 WL 563465, at *8 (S.D.N.Y. Feb. 27, 2008) (stating that under New York Law, a court interpreting language in a contract "must employ the rule of construction known as *ejusdem generis*"). Pursuant to that rule, the phrase "or otherwise" will be interpreted to include only things of the same type as those listed. *See* BLACK'S LAW DICTIONARY (7th Ed.) (1999); *see also Fishman v. Town of Islip*, 20 Misc.2d 180, 181-82 (N.Y. Sup. Ct. 1959).

Since Lafarge had no interest even remotely similar to that of a purchaser, charterer or leasee, the phrase "or otherwise" does not expand the scope of the clause in a way that would give Lafarge the right to claim that it covered the ING 4727, or any of the thousands of other barges, not owned by Lafarge, that called at its numerous facilities in the United States on an annual basis. Thus, Plaintiff Excess Underwriters' arguments for coverage by the American Club, which are more accurately described as assumptions of coverage, fail, as does their Summary Judgment Cross-Motion.

## POINT III

**PLAINTIFF EXCESS UNDERWRITERS ARE NOT THE PROPER PARTIES
TO ARGUE LAFARGE'S COVERAGE UNDER ITS
CERTIFICATE OF ENTRY WITH THE AMERICAN CLUB**

Because the Plaintiff Excess Underwriters, as the following excess wharfinger liability underwriters, were not involved in Lafarge's obtaining P&I insurance for its own fleet of vessels, the Plaintiff Excess Underwriters have made numerous misstatements concerning the nature of the coverage as well as the dispute between the American Club and Lafarge. Additionally, Plaintiff Excess Underwriters continue to make claims which completely mischaracterize the nature of the Declaratory Judgment Action. For example, Plaintiff Excess Underwriters are completely in error by characterizing the American Club's defense as being based on a failure to satisfy a condition precedent and condition subsequent. *See* Summary Judgment Memorandum at p. 3 n.2. Moreover, Plaintiff Excess Underwriters' attempts to limit the American Club's defenses to the Transportation Agreement overlook the entire nature of the coverage dispute at issue in the Declaratory Judgment Action.

Furthermore, it is telling that Plaintiff Excess Underwriters admit that they cover Lafarge's liabilities arising from the breakaway of the ING 4727, *see* Plaintiff Excess Underwriters' Memorandum of Law In Opposition to Motion to Dismiss, Docket No. 43, at p. 7. Yet Plaintiff Excess Underwriters continue to label the American Club's claims with respect to Lafarge as "P & I in nature." *See* Summary Judgment Memorandum at pp. 3 n.2, 5. However, to do so, the Plaintiff Excess Underwriters must (and do) admit that their interpretation of the word "otherwise" in the Chartered Barges clause, as they argue it should be construed, "expand[s] the scope of available coverage beyond the traditional P & I cover which is typically limited to an insured's status as an 'owner' or 'operator' of a vessel." *Id.* at p. 5. Thus, they further admit that Lafarge was not an owner or operator of the ING 4727, and that Lafarge is

seeking to insure with the American Club risks that are not insured under "traditional P&I cover."

In any event, the assertion of these claims by Plaintiff Excess Underwriters is improper at this stage of the proceedings as the Plaintiff Excess Underwriters' Motion to Consolidate as well as the American Club's Motion to Stay are still pending. A ruling on those motions may well be determinative as to who the proper party or parties is/are to argue and adjudicate these claims. There can be no doubt that Lafarge, as the insured, whose interests are directly affected by the outcome of such a determination, is currently in the best position to adjudicate its own rights under its Certificate of Entry.[6] Accordingly, the Summary Judgment Cross-Motion is improper and must be denied.

## POINT IV

### SUMMARY JUDGMENT SHOULD BE DENIED ON PLAINTIFF EXCESS UNDERWRITERS' CLAIMS REGARDING THE TIMING OF PAYMENTS AND STACKING OF POLICIES

**A.    Plaintiff Excess Underwriters Arguments Concerning Payment of Lafarge's Defense Costs Willfully Ignores the Nature of the American Club's Indemnification Policy**

Plaintiff Excess Underwriters argue in their Summary Judgment Memorandum that the American Club's P & I Policy is "silent" as to the timing of reimbursement and defense costs. Because Section 16 of the American Club Rules does not provide specific text regarding when payment becomes due, Plaintiff Excess Underwriters erroneously reason that the American Club should contemporaneously reimburse Lafarge for its defense costs as they become due. Plaintiff Excess Underwriters' arguments regarding the timing of the payment of Lafarge's defense costs are completely unfounded, however, due to their apparent ignorance regarding the nature of P &

---

[6]    It is also telling that Plaintiff Excess Underwriters have not even suggested that Lafarge is not adequately representing its own interest with respect to coverage under the Certificate of Entry with the American Club.

I policies, such as the one issued by the American Club.  The Southern District of New York has

noted with respect to insurance policies that, "[t]he starting point for any analysis of the merits

must be the text of the insurance agreement."  *In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d

455, 463 (S.D.N.Y. 2005).  The text of American Club's P & I Rules specifically states:

> **Rule 2          Risks and Losses Covered**
>
> Each Member of the Association shall be *indemnified* in
> connection with each vessel entered in the Association for
> Protection and Indemnity insurance against any loss, damage or
> expense which the Member shall become liable to pay.

*See* American Club Rules, excerpts of which are attached to Nicoletti Affidavit as Exhibit 6

(emphasis added).

Notably, Plaintiff Excess Underwriters directly state, "when it comes to payment of

defense costs, like the duty to defend, the duty to pay or reimburse is broader than the *duty to

indemnify*."  Summary Judgment Memorandum at p. 12 (emphasis added).  The American Club,

as protection and indemnity providers, only provide indemnification to its members.  Therefore,

even if the American Club is found to provide coverage to Lafarge, the American Club's duty is

limited to indemnification.  *See In re Prudential Lines Inc.*, 158 F.3d 65, 72 (2d Cir. 1998) ("The

American Club policies require it to 'indemnify [insured] against any loss, damage or expense

which [insured] shall become liable to pay.'  Because the American Club policy mandates

payment prior to triggering the insurer's indemnification obligations, it is an indemnity policy.").

Despite Plaintiff Excess Underwriters' contentions, the American Club's obligation to

reimburse, if any, has not been triggered.  This Court has specifically noted the difference in the

timing of payments to insureds between general liability and indemnification policies: "[i]t is a

general principle under insurance law, that the obligation to pay under a liability policy arises as

soon as the insured incurs the liability for the loss, in contrast to an indemnity policy where the

obligation is to reimburse the insured for a loss that the insured has already satisfied." *WorldCom*, 354 F. Supp. 2d at 464 (citations omitted). The Tenth Circuit further highlighted this distinction in a case involving a determination of an indemnity policy: "[g]enerally, an indemnity policy creates an obligation to reimburse an already satisfied loss, rather than a contemporaneous duty to pay. Under the policies in the present case, the Insurers agree to indemnify insured entities for covered losses, rather than liabilities. The duty to pay is not, therefore, contemporaneous with the insured's obligation to pay." *TH Agric. & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1295 n.7 (10th Cir. 2007). Similarly, the American Club has agreed to *indemnify* insured entities for *covered* losses, not contemporaneously reimburse for liabilities incurred.

Given that the claims in the captioned matter concern the P & I Policy, the cases cited to by Plaintiff Excess Underwriters are inapposite. Three of the four cases Plaintiff Excess Underwriters use to support their argument that an insurer's duty to pay defense costs arises when the insured incurs the expenses actually concern insurance policies that are completely different from the P & I Policy.[7] In *Trustees of Princeton University v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, the policy contained specific language, not contained in the P & I Policy, that the Insurer would "advance Defense Costs of such Claim prior to its final disposition." No. 650202/06, 2007 WL 1063870, at *3 (N.Y. Sup. Ct. April 10, 2007). Plaintiff Excess Underwriters also cite to *In re WorldCom, Inc. Securities Litigation*[8] and *Wedtech Corp.*

---

[7]    In the fourth case cited by Plaintiff Excess Underwriters, *Nu-Way Environmental, Inc. v. Planet Ins. Co.*, the court does not make the distinction between an indemnity policy and a general liability policy, and states that the when "the policy is silent as to the timing of payment of [defense] costs, the insurer has a duty of contemporaneous payment of defense costs." No. 95 Civ. 573, 1997 WL 462010 (S.D.N.Y. Aug. 12, 1997). This decision however, has been contradicted by the Southern District's published decision in *In re WorldCom Securities Litigation*, which states, that an indemnity policy covers losses the insured has already satisfied. 354 F. Supp. 2d 455, 464 (S.D.N.Y. 2005).

[8]    As stated earlier in this section, this case also highlights the distinction between an indemnity policy and a liability policy.

15

*v. Federal Insurance Co*. which both concern Director and Officer ("D & O") Liability policies rather than indemnification policies. 354 F. Supp. 2d 455, 459 (S.D.N.Y. 2005) (D & O policy provided that "the Insurer shall advance, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim"); 740 F. Supp. 214, 221 (S.D.N.Y. 1990) (Court found insurance company had obligation to reimburse insured because policy provided Insurer "will pay on behalf of [Insured] 'all loss' for which [Insured] grants indemnification to its directors, and loss is explicitly defined to include 'defense costs.').

Due to its nature as an indemnity policy, the P & I Policy itself provides for timing of payments to the insured, if they ever become due. Plaintiff Excess Underwriters' argument that Section 16 of the American Club's policy provides a duty to contemporaneously pay because there is no specific wording about the timing completely overlooks the entire nature of an indemnity policy. *See Recant v. Hardwood*, 635 N.Y.S.2d 231, 232 (1st Dep't 1995) ("[T]he duty to defend is triggered if facts alleged in the complaint fall within the scope of coverage intended by the parties at the time the contract was made. By contrast, the duty to indemnify requires a determination of liability." (citations omitted)). The section of the P & I Policy to which Plaintiff Excess Underwriters cite is Section 16, which is part of Rule 2, and as cited above, enumerates types of covered losses the American Club will indemnify. Lafarge's liabilities, which include defense costs, would only become due if Large prevailed in the Declaratory Judgment Action, which it will not.

### B.    A Determination Regarding the Stacking of the Policies is Improper and Premature at this Time

Plaintiff Excess Underwriters' attempts at seeking a declaration regarding the stacking of the policies is simply premature at this stage of the proceedings. Firstly, it appears that the limit

of the Primary Policy has not been exhausted, and the Excess Policy is not triggered until this $5 million limit has been reached.

Secondly, at this stage of the proceedings, the American Club has no duty to contemporaneously pay expenses, as noted in Point III, Section A, and it is yet to be determined whether the American Club will be liable for any loss to Lafarge. A declaration in favor of the American Club in the Declaratory Judgment Action would mean that the American Club will have no duty to reimburse for any of Lafarge's incurred losses. This would make a determination regarding the stacking of policies, and a determination regarding "other insurance" clauses, potentially moot.

Thus, while the American Club takes issue with and disputes the Plaintiff Excess Underwriters' allegations pertaining to the stacking of the policies, including but not limited to their contentions that the American Club must pay first before NYMAGIC, and that the Excess Underwriters do not need to pay until the Primary Policy and the P&I Policy are both exhausted, it is unnecessary to list all of the reasons why Plaintiff Excess Underwriters are wrong because such considerations are not ripe for determination. *See U.S. Underwriters Ins. Co. v. Kum Gang, Inc.*, 443 F. Supp. 2d 348, 354 (E.D.N.Y. 2006) ("At this point, a determination of the insurers' respective liability exposure is nothing more than theoretical. Such a determination might be made moot by a finding of non-liability in the state court action."); *see also Certain Underwriters at Lloyds, London v. St. Joe Minerals Corp.*, 90 F.3d 671, 675 (2d Cir. 1996) ("It is by now traditional law that 'the judicial power does not extend to . . . abstract questions.'") (citations omitted); *Bellefonte Reinsurance Co. v. Aetna Cas. & Sur. Co.*, 590 F. Supp. 187, 192 (S.D.N.Y. 1984) ("This Court must heed the oft recited admonition that 'it is not the function of a United States District Court to sit in judgment of these nice and intriguing questions which

today may readily be imagined, but may never in fact come to pass.'") (citing *American Fid. & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960)).  Accordingly, the Summary Judgment Cross-Motion must be denied.

## **CONCLUSION**

Plaintiff Excess Underwriters' Summary Judgment Cross-Motion is improper at this stage of the proceedings as there are still contested issues of material fact concerning both the Primary and Excess Policies.  In addition, Plaintiff Excess Underwriters are not the proper party to be asserting claims concerning Lafarge's coverage under the Certificate of Entry.  Finally, Plaintiff Excess Underwriters misunderstand and mischaracterize the nature of the P & I Policy, and upon this misunderstanding Plaintiff Excess Underwriters make baseless claims concerning coverage, for which they have provided no support.

Accordingly, and for all of the foregoing reasons, the American Club respectfully requests that this Court deny the Summary Judgment Cross-Motion, and award such additional relief as this Court deems just and proper.

Dated:   New York, New York
　　　　　July 28, 2008

THACHER PROFFITT & WOOD LLP

By:  ＿＿/s/ John M. Woods＿＿＿＿＿
　　　　John M. Woods
　　　　jwoods@tpw.com
　　　　Jennifer S. Kozar
　　　　jkozar@tpw.com

Two World Financial Center
New York, New York 10281
(212) 912-7400

*Attorneys for American Steamship Owners*
 *Mutual Protection and Indemnity*
 *Association, Inc.*