HILL RIVKINS & HAYDEN LLP
Attorneys for Defendant
Lafarge North America, Inc.
45 Broadway – Suite 1500
New York, New York 10006
(212) 669-0600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
THE NORTHERN ASSURANCE COMPANY
OF AMERICA and AMERICAN HOME
ASSURANCE COMPANY,

                Plaintiffs,

   - against –

LAFARGE NORTH AMERICA, INC. and
AMERICAN STEAMSHIP OWNERS
MUTUAL PROTECTION AND
INDEMNITY ASSOCIATION, INC.,

              Defendants.
------------------------------------------------------------x

Index No.:
08 CV 03289 (CSH)

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN REPLY TO PLAINTIFFS' OPPOSITION TO LNA'S MOTION TO DISMISS

HILL RIVKINS & HAYDEN LLP
Attorneys for Defendant,
Lafarge North America Inc.
45 Broadway, Suite 1500
New York, New York 10006
(212) 669-0600

OF COUNSEL:

ROBERT G. CLYNE
JOHN J. SULLIVAN
ANTHONY J. PRUZINSKY

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES...................................................................... ii

PRELIMINARY STATEMENT.................................................................. 1

FACTS................................................................................................ 3

ARGUMENT......................................................................................... 3

POINT I       FOLLOWING EXCESS INSURERS HAVE
              NO CAUSE OF ACTION AGAINST LNA................................. 3

POINT II      THE COURT HAS THE DISCRETION
              TO DISMISS THE COMPLAINT........................................... 8

POINT III     IT IS UNDISPUTED THAT LNA PROPERLY
              MAINTAINED ALL PRIMARY COVERAGES
              LISTED IN THE EXCESS POLICY......................................... 11

POINT IV      NOTHING IN THE EXCESS POLICY CONDITIONS
              PAYMENT UPON LNA'S LOSS EXCEEDING THE
              LIMITS OF THE P&I POLICY............................................. 14

CONCLUSION....................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**                                                                  **Page**

Benton v. Long Mfg. N.C., Inc., 550 So. 2d 859 (La. App. Ct. 1989)         13, 16

Bovis Lend Lease LMB, Inc. v. Great American Ins. Co.,
855 N.Y.S.2d 459 (1st Dep't 2008)                                          15

Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,
411 F.3d 384 (2d Cir. 2005)                                                10

General Accident Fire & Life Ass. Corp. v. Piazza,
152 N.E.2d 236 (N.Y. 1958)                                                 18

General Motors Acceptance Corp. v. Nationwide Ins. Co.,
828 N.E.2d 959 (N.Y. 2005)                                                 17-18

Honey v. George Hyman Constr. Co., 63 F.R.D. 443 (D.D.C. 1974)             4

Insurance Corp. of New York. v. United States Fire Ins. Co.,
18 Misc. 3d 1131(A), 2008 WL 399166 (N.Y. Sup. Ct. 2008)                   16

Liberty Mutual Ins. Co. v. Insurance Co. of State of Pa.,
841 N.Y.S.2d 288 (1st Dep't 2007)                                          15-16

In re Liquidation of Midland Ins. Co., 709 N.Y.S.2d 24 (1st Dep't 2000)    16-17

Merritt v. Jefferson Ins. Co., 445 N.Y.S.2d 972 (Sup. Ct. 1982)           18

Molina v. United States Fire Ins. Co., 574 F.2d 1176 (4th Cir. 1978)      15

National Union Fire Ins. Co. of Pittsburgh v. Connecticut Indem. Co.,
2008 WL 2342121 (1st Dep't 2008)                                           18-19

New York v. AMRO Realty Corp., 936 F.2d 1420 (2d Cir. 1991)               16

Olin Corp. v. Consolidated Aluminum Corp.,
5 F.3d 10 (2d Cir. 1993)                                                   13

Platex FP, Inc. v. Columbia Cas. Co.,
622 A.2d 1074 (Del. Super. Ct. 1992)                                       16

Public Serv. Comm'n of Utah v. Wycoff Co., Inc.,
344 U.S. 237 (1952)                                                        9-10, 13

<u>Reliance Life Ins. Co. v. Burgess</u>, 112 F.2d 234 (8th Cir. 1940)                8

<u>Reserve Ins. Co. v. Pisciotta</u>, 640 P.2d 764 (Ca. 1982)                    13, 15

<u>In re September 11th Liability Ins. Coverage Cases</u>,
458 F. Supp. 2d 104 (S.D.N.Y. 2006)                              10

<u>United Coal Cos. v. Powell Constr. Co.</u>, 839 F.2d 958 (3d Cir. 1988)        4

<u>United States v. Aetna Cas. & Sur. Co.</u>, 338 U.S. 366 (1949)              4

<u>United States Fidelity & Guar. Co. v. Treadwell Corp.</u>,
58 F. Supp. 2d 77 (S.D.N.Y. 1999)                               16

<u>United States Fire Ins. Co. v. Charter Financial Group, Inc.</u>,
851 F.2d 957 (7th Cir. 1988)                                   15

<u>Wells Fargo Bank v. California Ins. Guar. Ass'n</u>,
45 Cal. Rptr. 2d 537 (Cal Ct. App. 1995)                          16

<u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277 (1995)                        8

<u>Zurich Ins. Co. v. The Heil Co.</u>, 815 F.2d 1122 (7th Cir. 1987)            15

## PRELIMINARY STATEMENT

Defendant, Lafarge North America Inc. ("LNA"), submits this memorandum of law: (1) in opposition to the cross motion for summary judgment filed by the plaintiffs, The Northern Assurance Co. of America ("NACA") and American Home Assurance Co. ("AHAC"), and (2) in reply to their opposition to LNA's motion to dismiss the declaratory judgment complaint.

NACA and AHAC do not dispute in their opposition to LNA's motion to dismiss that the Leader clause of the Excess Marine Liabilities Policy ("the Excess Policy"), vests all decision-making authority regarding LNA's claim with the lead insurer, New York Marine & General Insurance Co. ("NYMAGIC"), or that they are obligated to follow whatever coverage decisions NYMAGIC makes. Instead, NACA and AHAC base a considerable portion of their opposition to LNA's motion and their argument in favor of their summary judgment motion on a so-called Notice of Ratification, which annexed a purported "Ratification" signed by an officer of Mutual Marine Office, Inc., "authorized representative" of NYMAGIC. However, the ratification papers are not the panacea NACA and AHAC would have this Court believe. As set out in detail below, this reactionary ratification accomplishes only one thing—NYMAGIC has now ratified the breach of the Excess Policy at issue that NACA and AHAC committed when they filed their declaratory judgment complaint. As a matter of law, and pursuant to the sound exercise of its discretion, the Court now should dismiss the declaratory judgment complaint.

As for their cross motion, NACA and AHAC appear to have moved for summary judgment on the First, Second and Fourth Causes of Action in their declaratory judgment

1

complaint, but not the Third Cause of Action[1].  Because the First Cause of Action asserts a claim solely against co-defendant the American Steamship Owners Mutual Protection & Indemnity Association, Inc. ("the American Club"), LNA's opposition takes no position on the merits of the plaintiffs' motion in connection with that Cause.  LNA certainly agrees that its P&I policy with the American Club covers LNA for the claims asserted against LNA in Louisiana by the plaintiffs in the Hurricane Katrina litigation.  However, LNA submits the proper proceeding, at least before this Court, to adjudicate that coverage is the action filed by the American Club, in which LNA has filed counterclaims for breach of the P&I coverage, and a full record will be before the Court.[2]  Accordingly, the fact that LNA has not taken a position in favor of the plaintiffs' motion for summary judgment on the First Cause of Action should not be considered a waiver of and is without prejudice to its rights to have the coverage issue litigated in the American Club action.

With regard to the Causes of Action implicated in the plaintiffs' motion and addressed to LNA, the motion should be denied.  As set out in detail below and in LNA's moving papers on its motion to dismiss the complaint, NACA and AHAC are not, as a matter of law and discretion, entitled to judgment on their declaratory judgment complaint.  Moreover, the plaintiffs' coverage analysis is not based upon the language of

---

[1] Although the plaintiffs have not moved for summary judgment on their Third Cause of Action, LNA's cross motion to dismiss encompasses all causes of action in the declaratory judgment complaint.

[2] The record submitted by NACA and AHAC is incomplete and certainly cannot serve as the basis for a determination that the American Club P&I policy does not cover LNA for the claims in the Hurricane Katrina Barge Litigation.  A significant portion of the evidence relevant to the coverage issues is confidential and subject to the Stipulated Protective Order entered into between LNA and the American Club and "So Ordered" by the Court.  Under that Order, such confidential evidence is to be submitted to the Court under seal.

2

the Excess Policy at issue in this case. NACA and AHAC improperly rely on terms and conditions that are not even in the Excess Policy, while relying on lines of cases dealing with policy language entirely different from the Excess Policy at issue. Accordingly, their legal argument is fundamentally flawed so the motion must be denied, and LNA's motion to dismiss should be granted.

## FACTS

The facts relevant to this motion are stated in detail in LNA's motion to dismiss the declaratory judgment complaint, and will not be repeated herein.

## ARGUMENT

### POINT 1

### FOLLOWING EXCESS INSURERS HAVE NO CAUSE OF ACTION AGAINST LNA

The opposition of NACA and AHAC overlooks the primary basis for LNA's motion to dismiss. They oversimplify LNA's motion by stating that LNA "argue[s] that the Court cannot grant meaningful declaratory relief in the absence of [] NYMAGIC". (Opposition Memorandum at 1). The reason the Court cannot grant meaningful declaratory relief is because NACA and AHAC gave up any right to seek such relief when they contractually agreed to act as following insurers and to defer all coverage decisions to NYMAGIC. NACA and AHAC have not cited a single case that permits following insurers to take a coverage position independent of the lead insurer. Accordingly, NACA and AHAC cannot meet their threshold burden under the Declaratory Judgment Act to show that there is a substantial controversy, between parties

having adverse legal interests, of sufficient immediacy and reality to justify the declaratory judgment. Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 411 F.3d 384, 388 (2d Cir. 2005). As set out in LNA's moving memorandum of law, the declaratory judgment complaint is itself a breach of the Excess Policy where the Policy's "Leader" clause provides that LNA has to deal solely with NYMAGIC in respect of claims. Accordingly, the ratification simply compounds the improper conduct by NACA and AHAC by having NYMAGIC ratify the breach.

NACA and AHAC cannot remedy the fact that they have no cause of action by incorrectly characterizing LNA's motion as a real party in interest issue and relying on the ratification as the primary basis of their opposition.[3] This is not the typical insurance-related real party in interest case, which generally concerns whether an insurer with subrogation rights is a real party in interest in a case brought in the name of its insured. See, e.g., United States v. Aetna Cas. & Sur. Co., 338 U.S. 366, 380-81 (1949); United Coal Cos. v. Powell Constr. Co., 839 F.2d 958, 960 (3d Cir. 1988). Whereas an insured-subrogor is the party that originally has a cause of action against a third party tortfeasor that can be ratified by its insurer-subrogee, NACA and AHAC have no independent cause of action for declaratory relief against LNA. Accordingly, plaintiffs' reliance on Honey v. George Hyman Constr. Co., 63 F.R.D. 443 (D.D.C. 1974), is misplaced, as that holding does not stand for the proposition that following insurers may bring a declaratory judgment action against the insured where all coverage decisions have been ceded to a lead insurer.

---

[3] The phrase "real party in interest" does not even appear in any of LNA's moving papers.

4

The ratification papers do not achieve the result intended, because they do not transfer to NACA and AHAC any causes of action under the policy. By virtue of the express terms of the Excess Policy, causes of action for declaratory judgment under the Excess Policy could be asserted solely by NYMAGIC, and nothing in the Excess Policy permits NYMAGIC to delegate the obligation to respond to claims or assign the right to commence a declaratory judgment action to the followers. Regardless of whether NYMAGIC has ratified the complaint, LNA still is left to deal with the following insurers instead of NYMAGIC, in direct contravention of the Leader clause of the Excess Policy. When LNA accepted this insurance, it bargained for the right to deal with NYMAGIC alone, and not to have the insurers' coverage positions dictated by unfamiliar "followers" operating behind the scenes. The coverage position that the following insurers' declaratory judgment complaint seeks to establish is not a position set out by NYMAGIC, who is supposed to adjust LNA's claim, but rather is a position set out by faceless following insurers with whom LNA has had no contact.[4]

The plaintiffs' assertion at page 6 of their Memorandum in Opposition to LNA's motion to dismiss that NYMAGIC did not state a coverage position to LNA prior to the commencement of this action is absurd. The plaintiffs cite no authority for the claim that the March 26, 2008, letter from counsel for NYMAGIC did not state a coverage position, nor do they quote any language of the letter beyond the purported blanket waiver

---

[4] NYMAGIC has belatedly moved to intervene in this case, but NYMAGIC's attempt to intervene is defective in several ways. Among other things, the attempt to intervene is untimely and was filed solely as a reaction to LNA's motion to dismiss. In addition, the argument in the motion that the following insurers' cannot adequately protect NYMAGIC's interests is entirely inconsistent with the ratification, wherein NYMAGIC has agreed to be bound by the outcome of the case. Finally, the proposed intervenor complaint merely parrots the defective declaratory judgment complaint of NACA and AHAC.

language appearing at the tail end of the letter. Counsel's fervent desires cannot change the language or import of the letter. Counsel for LNA had written to NYMAGIC's counsel on March 11, 2008, to advise that defense costs had exceeded the limits of the NYMAGIC Primary Policy and to "demand that NYMAGIC and following underwriters undertake their respective obligations and immediately reimburse LNA for the sums expended to date and to assume the further defense costs that will be incurred in the EDLA proceedings". (Clyne Decl. of June 5, 2008, Exh. D). Counsel for NYMAGIC wrote back on March 26, 2008, "in response to your letter of March 11, 2008". (Clyne Exh. E). Among other things, NYMAGIC's counsel wrote, "NYMAGIC will not reimburse LNA for sums expended to date or any future unauthorized defense costs and expenses incurred by LNA". (*Id.*).

LNA made a demand for reimbursement of defense costs under the Excess Policy, and NYMAGIC as lead insurer denied that claim. NYMAGIC's March 26 letter stated no other policy defenses, so that under New York law any other defenses were waived. New York v. AMRO Realty Corp., 936 F.2d 1420, 1431-33 (2d Cir. 1991). NACA and AHAC cannot escape NYMAGIC's waiver merely on the basis of blanket non-waiver language in the March 26 letter, especially where they do not even claim that the new coverage positions they assert were not known to NYMAGIC. Furthermore, a reading of the purported non-waiver provision reveals that it refers not to the Excess Policy but to the Primary NYMAGIC Policy. AHAC and NACA quote only the second sentence of the last paragraph of the letter, when the first sentence states that the "letter is written without prejudice to NYMAGIC's position in the above referenced declaratory judgment action". The letter's caption refers only to one declaratory judgment action, which is the

action NYMAGIC commenced under the Primary Policy, and the only declaratory judgment action pending on that date in connection with any NYMAGIC policy.

In any event, whatever confusion NACA and AHAC may have had regarding NYMAGIC's coverage position has been eliminated by NYMAGIC's adjuster, who has stated on July 22, 2008, in an e-mail to NACA and AHAC, with a copy to LNA, as follows:

> The MMO primary policy is just about exhausted. I am updating my spreadsheet and will get it to you next week. As of 8/1/08 I will be sending copies of all payment requests and invoices to you for proportional payment by the excess policy. (Shelonko Reply Decl., Exh. F).

By virtue of this e-mail, which contains no reservations of rights or non-waiver language, NYMAGIC has advised NACA, AHAC and LNA that it will begin to indemnify LNA under the Excess Policy and that it expects NACA and AHAC to pay their respective proportional shares. Accordingly, because NYMAGIC has made a decision to pay, NACA and AHAC are absolutely obligated to begin indemnifying LNA and cannot be heard to argue that they do not have to pay until the American Club policy limit is reached.

Further, the plaintiffs cannot overcome their waiver problem by claiming that they are not really denying coverage, but are only seeking a determination of when their coverage attaches. Any claim on behalf of the excess insurers that they would not cover LNA until the limits of the American Club cover were reached is an attempt to assert a coverage position. Any such attempt could be made only by NYMAGIC and had to be done at or before the time NYMAGIC agreed to pick up coverage upon exhaustion of the primary NYMAGIC policy, subject only to NYMAGIC's meritless reservation regarding

the right to approve defense costs. NYMAGIC's failure to assert such a defense bars the plaintiffs' claims in their entirety.

## POINT 2

### THE COURT HAS THE DISCRETION
### TO DISMISS THE COMPLAINT

Although the words "ratify" or "ratification" appear over a dozen times in the opposition brief of NACA and AHAC, the one word that cannot be located in their brief is the word "discretion". NACA and AHAC gloss over the unavoidable fact that the declaratory judgment remedy is entirely discretionary, and instead cite to the nearly 70 year old case of <u>Reliance Life Ins. Co. v. Burgess</u>, 112 F.2d 234 (8th Cir. 1940), for the erroneous proposition that the Declaratory Judgment Act should be liberally construed. The Supreme Court recently has made clear, in no uncertain terms, that a district court may dismiss a declaratory judgment complaint, under the sound exercise of its discretion, where the case will serve no useful purpose. <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 288 (1995). This is such a case.

Based on the facts of this case, the sound exercise of the Court's discretion compels dismissal of the complaint. As stated above, the declaratory judgment complaint is itself a breach of the Excess Policy's Leader clause, which entitles LNA to deal solely with NYMAGIC. The plaintiffs' anemic attempt to attach NYMAGIC to their improper action by way of ratification does no more than make NYMAGIC a party to the breach. LNA is not obligated to deal with NACA or AHAC in any way. To the contrary, it has to deal solely with NYMAGIC, and NACA and AHAC are contractually obligated to do

whatever NYMAGIC tells them to do in respect of claims.[5]  Instead, the coaches are

pulling the locomotive, a situation that serves no useful purpose and which the Court

should not endorse.

The Second Cause of Action in the complaint of NACA and AHAC

unquestionably serves no useful purpose because it merely seeks a conditional advisory

opinion, whether LNA is self-insured "if" it did not maintain its underlying insurances

with the primary insurers.  As set out in further detail in Point 3 below, there is no dispute

that LNA did in fact maintain all underlying insurances, as no one has even alleged that

LNA did not maintain its policies.  The American Club does not maintain in its

declaratory judgment action that LNA did not maintain the P&I cover.[6]  NACA and

AHAC make no such allegation either, but in fact allege in their declaratory judgment

complaint at Paragraphs 31-32 and 75-76 that the P&I cover was in full force and effect.

Because LNA maintained its underlying policies, the entire second cause of action is

based upon a hypothetical condition, contrary to the requirement under the Declaratory

Judgment Act that "[t]he disagreement must not be nebulous or contingent but must have

---

[5] As stated in Point 1 above, NYMAGIC has now told NACA and AHAC that payments are commencing under the Excess Policy and that it expects them to pay their respective shares.

[6] The American Club's declaratory complaint does not allege that LNA failed to maintain the P&I coverage in full force and effect.  The complaint alleges that barge ING 4727 did not become a covered vessel because LNA did not acquire an insurable interest in the barge by way of purchase, charter, lease, or anything akin to a purchase, charter or lease, and/or that LNA did not acquire the barge in addition to or in substitution for vessels listed in the Certificate of Entry.  Nowhere does the Club allege in its complaint that coverage was prejudiced by a supposed failure of LNA to declare the barge or by any other error or omission by LNA. In any event, the Club would not be able to base a denial on such a claim, as LNA's Certificate of Entry provides for automatic coverage for vessels independent of LNA's obligation to report vessels in which it acquired an insurable interest.

taken a fixed and final shape". Public Serv. Comm'n of Utah v. Wycoff Co., Inc., 344 U.S. 237, 244 (1952).

The Third Cause of Action also should be dismissed because it impermissibly relies upon language of the Primary NYMAGIC Policy and duplicates the cause of action NYMAGIC has asserted thereunder. NACA and AHAC seek to avoid this inescapable conclusion by simply asserting that they seek relief under the Excess Policy rather than the Primary Policy. This assertion is false, because their complaint unquestionably seeks relief based upon the Primary Policy. Of the thirteen substantive paragraphs making up the Third Cause of Action[7], ten invoke the terms of the Primary Policy, while only three invoke the terms of the Excess Policy. The ultimate allegation in Paragraph 100 claiming that LNA is not entitled to reimbursement for its defense costs does not even refer to language in the excess policy, either directly or indirectly, but is based solely upon the provisions in the Primary Policy that NYMAGIC claims (in the Primary Policy action) give it the right to name LNA's defense counsel and pre-approve defense costs. To the extent the Third Cause of Action attempts to borrow the language of the Primary Policy, it runs afoul of the rule in the 9/11 cases that the terms and conditions of an excess policy stand on their own in the absence of any language incorporating by reference the terms of the primary policy. See In re September 11th Liability Ins. Coverage Cases, 458 F. Supp. 2d 104, 129-31 (S.D.N.Y. 2006) (analyzing each excess policy individually to determine the extent to which each policy provided coverage for defense costs, rather than allowing excess insurers to borrow terms of other excess or primary policies). Accordingly, the court should properly exercise its discretion to dismiss the Third Cause of Action.

_____

[7] The first paragraph of the Third Cause of Action is just a "repeat and reallege" paragraph.

Finally, the Fourth Cause of Action should similarly be dismissed.  In their opposition brief to the motion to dismiss and in their brief in support of their summary judgment motion, NACA and AHAC cite a number of cases addressing the interplay between primary and excess policies but do not bother to address the language of their own excess policy.  Because neither the insuring agreement nor the definition of "Ultimate Net Loss" in the Excess Policy (quoted at page 8 of LNA's moving Memorandum) contains a provision stating that the coverage applies only upon exhaustion of the coverage limits of the primary policies identified in the Schedule of Underlying Insurance, the entire line of cases upon which NACA and AHAC rely is inapposite.  NACA and AHAC falsely accuse LNA of trying to manufacture an ambiguity in the Excess Policy.  To the contrary, the plain language of the Excess Policy is unambiguous and in no way restricts coverage to losses in excess of the limits of the primary policies.  Rather than accept their obligations to indemnify LNA upon the exhaustion of the NYMAGIC Primary Policy, NACA and AHAC improperly attempt to transform LNA into their insurer, rather than properly insuring LNA as they were paid to do.

## POINT 3

### IT IS UNDISPUTED THAT LNA
### PROPERLY MAINTAINED ALL PRIMARY
### COVERAGES LISTED IN THE EXCESS POLICY

The entire premise of Point 1 of the Memorandum of Law of NACA and AHAC in support of their cross motion for summary judgment, insofar as it pertains to LNA, is based on an erroneous assumption of fact.  Contrary to the statements at pages 2 and 5 of

the Memo of Law, the American Club does not seek to avoid coverage on the basis that

LNA failed to "report" barge ING 4727.  <u>Nowhere in the American Club's declaratory</u>

<u>judgment complaint does the Club allege that LNA failed to report the barge</u>.  Instead, the

Club maintains that it is not obligated to indemnify LNA because LNA allegedly did not

have an insurable interest in the barge sufficient to implicate the automatic acquisition

provision in the Chartered Barges Clause of LNA's Certificate of Entry.  Specifically, the

Club alleges that LNA "did not acquire the Barge ING 4727 in addition to or substitution

for" the vessels listed in the Schedule of Vessel in the Certificate of Entry (American

Club Complaint ¶ 37); that LNA "did not acquire an insurable interest" in the barge (*Id.* ¶

38); and that any interest LNA acquired "was not akin to a purchase, charter or lease" (*Id.*

¶ 39).

      The plaintiffs' motion blithely ignores the fact that no party has alleged that LNA

failed to maintain the American Club cover in full force and effect or that any error or

omission by LNA prejudiced coverage.  To the contrary, LNA's P&I cover with the

American Club was in effect and fully maintained to the extent that might have been

required by the Maintenance of Underlying Insurance provision in the Excess Policy.[8]

NACA and AHAC do not allege otherwise, and in fact allege in their complaint that the

P&I coverage was valid and in full effect.  (<u>Declaratory Judgment Complaint</u>, ¶¶ 31-32).

NACA and AHAC instead seek a declaratory judgment based entirely on a hypothetical:

"if" LNA did not maintain its coverage with the American Club.  As a matter of law, a

court cannot issue a declaratory judgment on a claim that is contingent on such a

---

[8] LNA does not concede that the excess marine liability coverage is contingent in
any way on the existence of P&I cover, but assumes it solely for the purpose of these
motions.

hypothetical. Public Serv. Comm'n of Utah v. Wycoff Co., Inc., 344 U.S. 237, 244

(1952). NACA and AHAC in effect, if not expressly, are seeking an advisory opinion

based on a fact that they allege is not even true. Such advisory opinions are not permitted

by the Declaratory Judgment Act. Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d

10, 17 (2d Cir. 1993).

The cases upon which NACA and AHAC rely to support their claim that the

failure to comply with a maintenance of underlying insurance provision precludes their

having to assume coverage upon the exhaustion of the Primary NYMAGIC Policy are

inapposite. In Reserve Ins. Co. v. Pisciotta, 640 P.2d 764, (Ca. 1982), and Benton v.

Long Mfg. N.C., Inc., 550 So. 2d 859 (La. App. Ct. 1989), each insured had reduced the

policy limits of the respective primary policies below the amount required by the excess

policy. In this case, however, LNA has not reduced its coverage with the American Club,

but in fact has maintained full coverage, as NACA and AHAC concede. If the coverage

is available under the American Club coverage, it would only be because LNA's interest

in barge ING 4727 did not implicate the automatic acquisition provision of the Certificate

of Entry.

Nothing in the Excess Policy required LNA to maintain P&I insurance for every

vessel that came into LNA's custody. In fact, the Excess Policy specifically

contemplates that LNA might incur P&I liability that is not covered by an underlying

P&I policy, and nevertheless covers such risks without requiring any self-insured

retention. Paragraph A of the insuring agreement states that the Excess Policy covers

"All Protection and Indemnity risks of whatsoever nature including, but not limited to,

those covered by the Underlying Protection and Indemnity Insurances" (emphasis added).

13

Neither the insuring agreement nor the definition of Ultimate Net Loss mentions anything about claims outside of the underlying  P&I insurance being covered only if the amount of LNA's loss exceeds the primary P&I limit stated in the Schedule of Underling Insurances.

## POINT 4

### NOTHING IN THE EXCESS POLICY
### CONDITIONS PAYMENT UPON LNA'S LOSS
### EXCEEDING THE LIMITS OF THE P&I POLICY

NACA and AHAC base their motion on language that does not appear in the Excess Policy.  They also incorrectly accuse LNA of "completely ignor[ing] both the Maintenance of Underlying Insurance clause and the Schedule of Underlying Insurance". (Plaintiff's Memorandum at 6).  LNA in fact quoted the entire Maintenance clause at page 18 of its Memorandum of Law in support of its motion to dismiss and cited the schedule at page 3.  For their part, NACA and AHAC downplay the insuring agreement while imputing to the Excess Policy language that they can only wish was in the Policy. The line of cases upon which they rely is therefore inapposite, as the cases all deal with policies wherein the insuring agreement and/or ultimate net loss provision contain language conditioning payment and/or the calculation of the loss on the basis of exhaustion of the primary policies.

The Excess Policy at issue in this case contains the following insuring clause:

This policy is to indemnify the Assured in respect of the following marine liabilities (including such expenses as are set out in the definition of "ULTIMATE NET LOSS") arising out of the Assured's marine operations only:

A.    All Protection and Indemnity risks of whatsoever nature  . . .

14

B.  General Average, Collision Liabilities, Tower's Liabilities, . . .

C.  All other sums which the Assured shall become legally liable to pay . . in respect of claims made against the Assured for damages of whatsoever nature . . . (Clyne Exh. B, page 5 of 22).

Nowhere does the clause condition indemnification of LNA upon the exhaustion of the primary policies listed in the Schedule of Underlying Insurance or upon the amount of the loss exceeding the limits of the underlying policies.

In stark contrast, almost every case cited by NACA and AHAC involved an excess policy with an insuring clause that conditioned payment upon the loss exceeding a primary policy limit and/or a retained limit. See Zurich Ins. Co. v. The Heil Co., 815 F.2d 1122 (7th Cir. 1987) ("the company's liability shall be only for the ultimate net loss **in excess of** the insured's retained limit") (emphasis added); United States Fire Ins. Co. v. Charter Financial Group, Inc., 851 F.2d 957, 959 n.5 (7th Cir. 1988) ("The Company agrees to pay on behalf of the insured the ultimate net loss **in excess of** the retained limit hereinafter stated") (emphasis added); Molina v. United States Fire Ins. Co., 574 F.2d 1176, 1178 (4th Cir. 1978) (insuring clause provided coverage for "the ultimate net loss **in excess of** the retained limit which the insured shall become legally obligated to pay") (emphasis added); Reserve Ins. Co. v. Pisciotta, 640 P.2d 764, 770 (Ca. 1982) (insuring agreement stated that "[t]he Company shall only be liable for the ultimate net loss **in excess of** . . . the amount recoverable under the underlying insurance as set out in the schedule of the underlying insurance") (emphasis added); Bovis Lend Lease LMB, Inc. v. Great American Ins. Co., 855 N.Y.S.2d 459, 465 (1st Dep't 2008) (insuring provision required excess insurer to "pay on behalf of the insured that portion of the 'ultimate net loss' **in excess of** the 'retained limit'") (emphasis added); Liberty Mutual Ins. Co. v.

Insurance Co. of State of Pa., 841 N.Y.S.2d 288, 290 (1st Dep't 2007) ("policy provides that coverage thereunder is implicated by liability **in excess of** the insured's `Retained Limit'") (emphasis added); Wells Fargo Bank v. California Ins. Guar. Ass'n, 45 Cal. Rptr. 2d 537, 539 (Cal Ct. App. 1995) ("The Company shall only be liable for the ultimate net loss **the excess of** . . . the limits of the underlying insurances") (emphasis added); Benton v. Long Mfg. N.C., Inc., 550 So. 2d 859, 861 (La. App. Ct. 1989) ("The company shall only be liable for the ultimate net loss the **excess of** []the amount recoverable under the underlying insurances . . .") (emphasis added); Insurance Corp. of New York. v. United States Fire Ins. Co., 18 Misc. 3d 1131(A), 2008 WL 399166, at *7 (N.Y. Sup. Ct. 2008) (insuring clause provided to payment "on behalf of the insured for that amount of loss **which exceeds** the amount of loss payable by underlying policies described in the Declarations"); Platex FP, Inc. v. Columbia Cas. Co., 622 A.2d 1074, 1080 (Del. Super. Ct. 1992) (insuring agreement in lead policy provided coverage for "ultimate net loss in the aggregate for each annual period during the currency of this policy **in excess of** []the amount recoverable under the underlying insurance set forth under Schedule A") (emphasis added).[9]

NACA and AHAC did actually cite one case where the excess policy did not contain an insuring agreement conditioning payment upon the exhaustion of the primary policies or upon the claim exceeding a retained loss amount, but to no avail. Although they cited In re Liquidation of Midland Ins. Co., 709 N.Y.S.2d 24 (1st Dep't 2000), for

---

[9] In the eight case string cite at page 18 of their summary judgment Memorandum of Law, NACA and AHAC have included the case of United States Fidelity & Guar. Co. v. Treadwell Corp., 58 F. Supp. 2d 77 (S.D.N.Y. 1999). Although the case deals generally with the interplay among various layers of insurance, we are not able to discern the relevance of the case to the plaintiffs' argument, and can only conclude that it was included in the string cite by mistake.

the proposition that all primary policies must be exhausted before an excess policy

covers, the case actually supports dismissal of the Second and Fourth Causes of Action as

against LNA. The Appellate Division reversed a portion of the Supreme Court's

decision, holding that an excess policy like the Excess Policy in this case that had an

insuring clause that did not condition payment only upon the exhaustion of all underlying

policies or retained limits was not excess to policies where the insurer was refusing to

pay.

> The IAS court declared that the policy issued by Employers' Liability
> [primary insurer] to LAQ [the insured] must be exhausted prior to the
> attachment of Midland's coverage, due to the "Other Insurance" provisions
> of Midland's coverage. LAQ contends that since Employers' Liability has
> refused to pay on the policies, such insurance is not "collectible" insurance
> "available" to LAQ, as provided in the "Other Insurance" clause, and
> consequently should not be used to reduce LAQ's rights. We agree . . .

709 N.Y.S.2d at 35. In the present case, the other insurance clause is the only provision

of the Excess Policy that conditions payment upon the payment first under primary

coverage. However, the other insurance provision applies only "[i]f other valid and

collectible insurance with any other Insurer is available". If the American Club coverage

is not available because barge ING 4727 did not become a covered vessel under the

automatic acquisition provision of the Certificate of Entry, as the American Club has

alleged and as LNA has denied, the other insurance clause cannot allow the excess

insurers to avoid coverage to LNA, or even to delay payment, which itself is an

avoidance of coverage.

The other cases upon which NACA and AHAC rely to delay their payment until

after the loss reaches the coverage limit of the American Club are inapposite. For

example, General Motors Acceptance Corp. v. Nationwide Ins. Co., 828 N.E.2d 959

(N.Y. 2005), concerned a discrete issue of how to apportion defense costs among two primary policies where one of the two primary insurers had also issued an excess policy, which included no duty to defend. The Excess Policy in this case, however, specifically requires the excess insurers to indemnify LNA for its defense costs.

NACA and AHAC improperly seek to extend the holding in <u>General Accident Fire & Life Ass. Corp. v. Piazza</u>, 152 N.E.2d 236 (N.Y. 1958), beyond its application to the American Club. There, the court was concerned only with the interplay between the other insurance provisions of the two primary policies, concluding that the policy with the "excess" other insurance clause was excess to policy with the "pro rata" clause. <u>State Farm Fire & Cas. Co. v. LiMauro</u>, 482 N.E.2d 13 (N.Y. 1985), is also not relevant to this case, because its discussion also concerned the operation of an other insurance clause, although among excess insurers. The case of <u>Merritt v. Jefferson Ins. Co.</u>, 445 N.Y.S.2d 972 (Sup. Ct. 1982), is similarly inapplicable to LNA, because it simply holds that the coverage limit of the excess policy cannot be considered part of the aggregate coverage for the primary layer.

LNA does not dispute the general proposition that an excess policy generally does not apply until all applicable primary policies are exhausted. However, that principle does not hold where the claimed loss falls outside the coverage provided by one of the primary policies. Often, an excess policy insures against multiple risks covered by separate underlying policies. Nothing in such excess policies requires exhaustion of all underlying policies, only those whose terms actually cover the loss claimed. Accordingly, the plaintiffs' citation to the New York Appellate Division's recent decision in <u>National Union Fire Ins. Co. of Pittsburgh v. Connecticut Indem. Co.</u>, 2008 WL

2342121 (1st Dep't 2008), provides no guidance where the court in that case assumed that all primary policies covered the loss.

Because the motion of NACA and AHAC is based upon a set of assumptions at odds with the facts of this case and the terms of the Excess Policy, their arguments on both LNA's supposed self-insured retention and the stacking of policies is fatally flawed. LNA unquestionably maintained its coverage with the American Club in full force and effect, as all parties agree. If coverage is not available under the American Club cover, it could be due only to the scope of LNA's interest in barge ING 4727, not any omission on the part of LNA. In any event, the insuring clause of the Excess Policy provides coverage to LNA as soon as the Primary NYMAGIC Policy is exhausted, because the Excess Policy does not condition payment upon the loss exceeding the limits of the primary policies.

## CONCLUSION

For the foregoing reasons, and for those stated in LNA's papers in support of its motion to dismiss the declaratory judgment complaint, NACA and AHAC have no cause of action for declaratory judgment against LNA. In addition, their motion for summary judgment is based upon an erroneous interpretation of the policies at issue and the facts of the case. Accordingly, the motion for summary judgment should be denied and LNA's motion to dismiss the plaintiffs' complaint should be granted.

Respectfully submitted,

Dated:  New York, New York
        July 28, 2008

HILL RIVKINS & HAYDEN LLP
Attorneys for Defendant
Lafarge North America Inc.

By: _____
John J. Sullivan (JS 1037)
Robert G. Clyne (RC-2987)
45 Broadway, Suite 1500
New York, NY 10006
(212) 669-0600