UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE NORTHERN ASSURANCE COMPANY OF AMERICA and AMERICAN HOME ASSURANCE COMPANY,<br><br>                                  Plaintiffs,<br><br>- against -<br><br>LAFARGE NORTH AMERICA, INC. and AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC.,<br><br>                                  Defendants. | ECF CASE<br><br>Case No.: 08 CV 3289 (CSH) (AJP) |

**DEFENDANT AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION
AND INDEMNITY ASSOCIATION, INC.'S MEMORANDUM OF LAW
IN OPPOSITION TO NEW YORK MARINE AND GENERAL
<u>INSURANCE COMPANY'S MOTION TO INTERVENE AS A PLAINTIFF</u>**

THACHER PROFFITT & WOOD LLP
Two World Financial Center
New York, New York 10281
(212) 912-7400
John M. Woods
Jennifer S. Kozar

*Attorneys for American Steamship Owners
 Mutual Protection and Indemnity
 Association, Inc.*

American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "American Club"), by and through its attorneys Thacher Proffitt & Wood LLP, hereby submits this Memorandum of Law in opposition to the motion to intervene as a plaintiff (the "Motion to Intervene") filed by New York Marine and General Insurance Company ("NYMAGIC"), in the instant action initiated by The Northern Assurance Company of America and American Home Assurance Company (the "Plaintiff Excess Underwriters").

## PRELIMINARY STATEMENT

More than two years after the American Club first commenced an action against Lafarge North America, Inc. ("Lafarge") to resolve the issue of coverage of the Barge ING 4727, NYMAGIC now seeks to intervene in an action by the Plaintiff Excess Underwriters – which itself was improperly initiated – by filing an Intervenor Complaint that is effectively identical to the Declaratory Judgment Complaint filed by the Plaintiff Excess Underwriters. Because the Motion to Intervene is untimely, and because the relief sought by NYMAGIC differs from that typically provided to a party seeking to intervene in an action, the Motion to Intervene should be denied.

## FACTUAL BACKGROUND

Recognizing that the Court has already been briefed on the facts surrounding the instant action in the numerous motions previously submitted in this action, the American Club provides a brief factual background relating to the Motion to Intervene:

### I. The Coverage Dispute Between the American Club and Lafarge

On or about April 2, 2008, Plaintiff Excess Underwriters filed the instant action against Lafarge and the American Club. The Plaintiff Excess Underwriters' action was filed almost two years after the American Club filed its declaratory judgment action against Lafarge in April 2006, seeking a determination as to whether the terms of Lafarge's entry with the American Club

cover the Barge ING 4727, or if insured by the American Club, whether coverage is nonetheless excluded (the "Declaratory Judgment Action"). The Declaratory Judgment Action seeks a declaration that the Certificate of Entry issued to Lafarge by the American Club does not provide coverage for the Barge ING 4727, which is not listed on the Schedule of Vessels, nor are any other barges owned and operated by Ingram Barge Company ("Ingram").

## II.     Marine Liability Insurance Policies Issued to Lafarge

At all relevant times, Lafarge was insured under a primary marine liability policy of insurance (the "Primary Policy"), which has a limitation of $5 million obtained from NYMAGIC, and covers, among other risks, wharfinger's liability. Lafarge has made a claim under this policy for its liabilities arising from the breakaway of the Barge ING 4727 and NYMAGIC has accepted in principle that the claim is covered. However, as the Court is aware, NYMAGIC has filed a declaratory judgment action against Lafarge seeking a ruling as to the scope of its obligation to pay defense costs, and in particular its obligation to pay for Lafarge's chosen defense counsel, which action is currently pending before this Court.[1]

Lafarge also obtained an excess liability policy for Lafarge's marine liabilities, which follows the Primary Policy and was issued by NYMAGIC along with the Plaintiff Excess Underwriters (the "Excess Policy"). The Excess Policy apparently provides $45 million in cover above the $5 million primary limit for wharfinger's liability, for total wharfinger's liability coverage up to $50 million. The Excess Policy is led by NYMAGIC, which underwrites forty

---

[1] *New York Marine & Gen. Ins. Co. v. Lafarge N.A.., Inc.*, No. 05-CV-9612 (S.D.N.Y. filed Nov. 11, 2005). Neither the American Club nor the Plaintiff Excess Underwriters are parties to NYMAGIC's declaratory judgment action against Lafarge.

percent of the risk. The remaining sixty percent is insured by The Northern Assurance Company of America (25%) and American Home Assurance Company (35%).[2]

### III.   The Plaintiff Excess Underwriters' Action

The Plaintiff Excess Underwriters' Declaratory Judgment Complaint contains four causes of action. The first cause of action, which is asserted against the American Club and seeks a declaration that the American Club covers Lafarge for the liabilities arising from the breakaway of the Barge ING 4727 is similar, if not identical, to the claims which are being litigated between the American Club and Lafarge. *See* ¶¶ 65-82 of the Declaratory Judgment Complaint filed by the Plaintiff Excess Underwriters against the American Club and Lafarge (Docket No. 1).[3] The fourth cause of action, which is the only other cause of action against the American Club, concerns the stacking of coverages as between the American Club's cover and the excess marine liability policy. *See id*. ¶¶ 101-107. Whether this fourth cause of action must be decided at all is dependent on the outcome of the American Club's Declaratory Judgment Action against Lafarge. The proposed Intervenor Complaint that NYMAGIC seeks to file, attached as Exhibit 4 to the Declaration of David H. Fromm in Support of Motion to Intervene (the "Intervenor Complaint"), is word-for-word almost identical to the defective Declaratory Judgment Complaint filed by the Plaintiff Excess Underwriters, with the only changes thereto relating to the identity of the party/parties asserting the claims.

---

[2]   Neither the Plaintiff Excess Underwriters nor NYMAGIC have produced a signed copy of the Excess Policy to the Court or attached it to any motion, pleading or correspondence. Accordingly, the American Club's understanding as to the limit and participation of the excess marine liability policy comes from the representations by Plaintiff Excess Underwriters' counsel to the Court at the conference held on May 12, 2008.

[3]   For the sake of minimizing the number of duplicate submissions of pleadings and prior motions and exhibits to the Court, the American Club incorporates by reference certain submissions previously filed with the Court in the instant action. If the Court would prefer that the American Club directly provide it with copies of all papers cited in this Opposition, that will be done promptly upon receiving notice that the Court would like us to do so.

**LEGAL ARGUMENT**

Because it was filed well over two years after the American Club first initiated the Declaratory Judgment Action, NYMAGIC's Motion to Intervene is not timely despite its assertions to the contrary. Moreover, by submitting the proposed Intervenor Complaint with the Motion to Intervene through separate counsel, NYMAGIC makes clear that they do not in fact seek to <u>intervene</u> in the instant action, but are instead seeking to file a separate action, which would be consolidated, presumably, with the existing action filed by the Plaintiff Excess Underwriters. Accordingly, the Motion to Intervene should be denied as procedurally defective.

**POINT I**

**NYMAGIC'S MOTION TO INTERVENE IS UNTIMELY**

NYMAGIC's argument that the Motion to Intervene is timely since it was submitted "less than four months after this action was commenced," *see* Memorandum of Law in Support of New York Marine and General Insurance Company's Motion to Intervene as a Plaintiff, filed July 16, 2008 (Docket No. 54), at p. 7, is misleading because it fails to acknowledge that the instant action itself is untimely. The Plaintiff Excess Underwriters did not file their action against the American Club and Lafarge until nearly two years after the American Club first initiated the Declaratory Judgment Action. Accordingly, NYMAGIC's Motion to Intervene was effectively submitted two years and four months after the very coverage dispute at issue in the first cause of action of the proposed Intervenor Complaint was first presented to the Court, and is therefore untimely. This type of bootstrap argument is thus a transparent fiction.

Moreover, while NYMAGIC's Motion to Intervene was filed approximately four months after the Plaintiff Excess Underwriters initiated the instant action, much had happened in those four months prior to NYMAGIC's submission: (1) the Plaintiff Excess Underwriters moved to consolidate the instant action with the Declaratory Judgment Action (*see* Docket No. 20); (2) the

4

American Club opposed the Plaintiff Excess Underwriters' motion to consolidate and filed its Cross-Motion to Stay Proceedings with respect to the Plaintiff Excess Underwriters' claims against the American Club, pending the outcome of the Declaratory Judgment Action (*see* Docket No. 24); (3) Lafarge similarly opposed the motion to consolidate, and filed a Cross-Motion to Dismiss with respect to the claims asserted by the Plaintiff Excess Underwriters against Lafarge (*see* Docket No. 29); the American Club filed its own Memorandum of Law in Support of Lafarge's Motion to Dismiss addressing the claims asserted by the Plaintiff Excess Underwriters against the American Club (*see* Docket No. 35); and the Plaintiff Excess Underwriters filed a Cross-Motion for Summary Judgment (*see* Docket No. 39). In light of the fact that a number of dispositive motions are currently pending before the Court – and were pending prior to NYMAGIC's attempts to join in this action – NYMAGIC's Motion to Intervene is merely another example of the Excess Policy's underwriters' thinly veiled attempts to cloud the issues and delay resolution of the coverage dispute already before this Court.

Moreover, NYMAGIC has arguably already waived any right it has to contest its obligation to provide coverage to Lafarge under the terms of the Excess Policy. *See* Memorandum of Law in Opposition to [the Plaintiff Excess Underwriters'] Motion for Summary Judgment and in Reply to [the Plaintiff Excess Underwriters'] Opposition to [Lafarge's] Motion to Dismiss, filed July 28, 2008 (Docket No. 60), at pp. 5-7 (arguing that NYMAGIC has already stated a coverage position by virtue of its response to Lafarge's March 11, 2008 letter to NYMAGIC's counsel demanding reimbursement of Lafarge's expenditures to date and that NYMAGIC assume further defense costs, and an email from NYMAGIC's adjuster to the Plaintiff Excess Underwriters, copying Lafarge, stating that the adjuster "will be sending copies

of all payment requests and invoices to you for proportional payment by the excess policy.").[4] Accordingly, the Motion to Intervene should be denied, and NYMAGIC should not be permitted to file its proposed Intervenor Complaint.

## POINT II

### NYMAGIC'S EFFORTS TO JOIN THE INSTANT ACTION ARE PROCEDURALLY FLAWED

The American Club notes that while NYMAGIC has labeled its efforts to join in the instant action as a "motion to intervene," it is actually seeking to file a separate action. Neither NYMAGIC nor the Plaintiff Excess Underwriters have proposed submitting an Amended Complaint in the instant action naming all three excess underwriters as plaintiffs. Instead, NYMAGIC has submitted a separate proposed Intervenor Complaint, to be filed by separate counsel not acting as co-counsel to the Plaintiff Excess Underwriters' counsel. Accordingly, the proper procedure for joining in this action would have been for NYMAGIC to file a separate complaint and then move to consolidate its action with the action initiated by the Plaintiff Excess Underwriters. NYMAGIC has thus followed a procedurally incorrect course of action in attempting to assert claims against the American Club and Lafarge in the instant action.

In the event that NYMAGIC is nonetheless permitted to file its Intervenor Complaint, the American Club reserves the right to assert against NYMAGIC any and all of the arguments and/or motions that have been asserted against the Plaintiff Excess Underwriters to date, including but not limited to those arguments asserted in the Opposition to Motion to Consolidate and Cross-Motion to Stay Proceedings with respect to the Plaintiff Excess Underwriters' claims against the American Club, pending the outcome of the Declaratory Judgment Action, filed on

---

[4] The American Club in no way admits to any of Lafarge's statements pertaining to coverage allegedly provided by the American Club to Lafarge that have been included in the Memorandum of Law in Opposition to [Plaintiff Excess Underwriters'] Motion for Summary Judgment and in Reply to [Plaintiff Excess Underwriters'] Opposition to [Lafarge's] Motion to Dismiss, filed July 28, 2008 (Docket No. 60).

June 5, 2008 (Docket No. 24) and the Memorandum of Law in Support of Lafarge's Motion to Dismiss, filed on June 23, 2008 (Docket No. 35), as well as any additional arguments and/or motions that are proper.

## **CONCLUSION**

NYMAGIC's Motion to Intervene is untimely and fails to comply with the proper procedures for joining in the instant action. Accordingly, and for all of the foregoing reasons, the American Club respectfully requests that this Court deny NYMAGIC's Motion to Intervene, and award such additional relief as this Court deems just and proper.

Dated:  New York, New York
          August 4, 2008

THACHER PROFFITT & WOOD LLP

By:      /s/ John M. Woods
         John M. Woods
         jwoods@tpw.com
         Jennifer S. Kozar
         jkozar@tpw.com

Two World Financial Center
New York, New York 10281
(212) 912-7400

*Attorneys for American Steamship Owners
 Mutual Protection and Indemnity
 Association, Inc.*