UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

| | |
|---|---|
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY, | 05 Civ. 09612(CSH) |
| Plaintiff, | ACTION No. 1 |
| - against – | |
| LAFARGE NORTH AMERICA, INC., | |
| Defendant. | |

-----------------------------------------------------------X

| | |
|---|---|
| THE NORTHERN ASSURANCE COMPANY OF AMERICA and AMERICAN HOME ASSURANCE COMPANY, | 08 Civ. 3289 (CSH) |
| Plaintiffs, | |
| - against – | ACTION No. 2 |
| LAFARGE NORTH AMERICA, INC. and AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC., | |
| Defendants. | |

-----------------------------------------------------------X

| | |
|---|---|
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY, | |
| Intervenor Plaintiff, | **ANSWER TO INTERVENOR COMPLAINT WITH COUNTERCLAIMS OF DEFENDANT LAFARGE NORTH AMERICA INC. IN ACTION NO. 2** |
| - against – | |
| LAFARGE NORTH AMERICA, INC. and AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC., | |
| Defendants. | |

-----------------------------------------------------------X

1

Defendant, Lafarge North America Inc. ("LNA"), by and through its attorneys, Hill Rivkins & Hayden LLP, as and for its Answer to the Intervenor Complaint of Plaintiff, New York Marine and General Insurance Company ("NYMAGIC") and as and for its counterclaims against all plaintiffs in Action No. 2, respectfully states upon information and belief as follows:

1.     LNA admits that the Intervenor Complaint implicates a controversy under a policy of excess marine liability insurance issued to LNA by NYMAGIC and plaintiffs The Northern Assurance Co. of America ("NACA") and American Home Assurance Co. ("AHAC"), but denies the remaining allegations of paragraph 1 of the Intervenor Complaint.

2.     LNA admits that there are several third party lawsuits pending against LNA for Hurricane Katrina claims, but except as so specifically admitted, denies the remaining allegations of paragraph 2 of the Intervenor Complaint.

3.     LNA denies the allegations of paragraph 3 of the Intervenor Complaint, and specifically denies that NYMAGIC is entitled to the relief sought.

4.     LNA admits that NYMAGIC states that the instant action is brought under the Federal Declaratory Judgment Act, 28 U.S.C. §2201, but except as so specifically admitted, denies that NYMAGIC is entitled to a declaratory judgment in the instant action.

5.     LNA admits that this Court has admiralty jurisdiction over this matter pursuant to 28 U.S.C. § 1333 and that this is an admiralty claim within the meaning of Rule 9(h), but otherwise denies the remaining allegations of paragraph 5 of the Intervenor Complaint.

6.     LNA admits that the Intervenor Complaint implicates a controversy under a policy of excess marine liability insurance issued to LNA by NYMAGIC and plaintiffs The

Northern Assurance Co. of America ("NACA") and American Home Assurance Co.

("AHAC"), but denies the remaining allegations of paragraph 6 of the Intervenor Complaint.

7.      LNA admits that there is or was a pending action in this district but denies the

remaining allegations contained in paragraph 7 of the Intervenor Complaint.

8.      LNA is without knowledge or information sufficient to form a belief as to the

allegations contained in paragraph 8 of the Intervenor Complaint.

9.      LNA is without knowledge or information sufficient to form a belief as to the

allegations contained in paragraph 9 of the Intervenor Complaint.

10.      LNA is without knowledge or information sufficient to form a belief as to the

allegations contained in paragraph 10 of the Intervenor Complaint.

11.      LNA is without knowledge or information sufficient to form a belief as to the

allegations contained in paragraph 11 of the Intervenor Complaint.

12.      LNA is without knowledge or information sufficient to form a belief as to the

allegations contained in paragraph 12 of the Intervenor Complaint.

13.      LNA admits the allegations contained in paragraph 13 of the Intervenor

Complaint.

14.      LNA admits the allegations contained in paragraph 14 of the Intervenor

Complaint.

15.      LNA admits the allegations contained in paragraph 15 of the Intervenor

Complaint.

16.      LNA admits the allegations contained in paragraph 16 of the Intervenor

Complaint, except that LNA believes that the American Club has its principal place of

business at 1 Battery Park Plaza.

17.     LNA admits the allegations contained in paragraph 17 of the Intervenor Complaint.

18.     LNA admits that NYMAGIC issued a Primary Marine Liabilities Policy to LNA effective May 1, 2005, but is otherwise without knowledge or information sufficient to form a belief as to truth of the remaining allegations contained in paragraph 18 of the Intervenor Complaint.

19.     LNA is without knowledge or information sufficient to form a belief as to truth of the allegations contained in paragraph 19 of the Intervenor Complaint.

20.     LNA admits the allegations contained in paragraph 20 of the Intervenor Complaint.

21.     LNA admits that NYMAGIC as lead underwriter issued an Excess Marine Liabilities Policy to LNA for the period May 1, 2005, to May 1, 2006, with coverage up to $50,000,000, but otherwise is without knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 21 of the Intervenor Complaint.

22.     LNA admits that the Primary Marine Liabilities Policy issued by NYMAGIC includes the quoted language, without emphasis, but denies the remaining allegations contained in paragraph 22 of the Intervenor Complaint.

23.     LNA is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 23 of the Intervenor Complaint; in addition, paragraph 23 of the Intervenor Complaint calls solely for a legal conclusion for which no factual response is required.

24.     LNA denies the allegations contained in paragraph 24 of the Intervenor Complaint.

25.     LNA is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 25 of the Intervenor Complaint.

26.     LNA admits that it has incurred reasonable defense costs in excess of $7.5 million and is claiming against NYMAGIC, as well as against NACA and AHAC, for the recovery of same, but except as specifically so admitted, LNA denies the remaining allegations contained in paragraph 26 of the Intervenor Complaint.

27.     LNA admits the allegations contained in paragraph 27 of the Intervenor Complaint.

28.     LNA admits the allegations contained in paragraph 28 of the Intervenor Complaint, except it avers that: (a) the Member-Specific Provisions are in the body of the applicable Certificate of Entry; and (b) there was no Exhibit 1 attached to the Intervenor Complaint served upon LNA.

29.     Paragraph 29 of the Intervenor Complaint calls for a legal conclusion to which no response is required.

30.     LNA admits the allegations contained in paragraph 30 of the Intervenor Complaint.

31.     LNA admits the allegations contained in paragraph 31 of the Intervenor Complaint.

32.     LNA admits the allegations contained in paragraph 32 of the Intervenor Complaint.

33.     LNA admits the allegations contained in paragraph 33 of the Intervenor Complaint.

34.     LNA admits the allegations contained in paragraph 34 of the Intervenor Complaint, and it further avers that it did in fact tender additional premium to the American Club.

35.     LNA admits the allegations contained in paragraph 35 of the Intervenor Complaint.

36.     LNA admits the allegations contained in paragraph 36 of the Intervenor Complaint.

37.     LNA is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 37 of the Intervenor Complaint; in addition, paragraph 37 of the Intervenor Complaint calls solely for a legal conclusion for which no factual response is required.

38.     LNA admits the allegations contained in paragraph 38 of the Intervenor Complaint.

39.     LNA admits that NYMAGIC issued an Excess Marine Liabilities Policy to which NACA and AHAC subscribe as following underwriters, but otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 39 of the Intervenor Complaint.

40.     LNA is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 40 of the Intervenor Complaint.

41.     LNA is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 41 of the Intervenor Complaint.

42.     LNA admits the allegations contained in paragraph 42 of the Intervenor Complaint.

43.     LNA is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 43 of the Intervenor Complaint.

44.     LNA admits that the Excess Marine Liabilities Policy contains a clause addressing underlying insurance, but denies the remaining allegations of Paragraph 44 of the Intervenor Complaint.

45.     LNA is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 45 of the Intervenor Complaint.

46.     LNA is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 46 of the Intervenor Complaint.

47.     LNA admits the Excess Policy contains the quoted language but otherwise denies the allegations contained in paragraph 47 of the Intervenor Complaint.

48.     LNA is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 48 of the Intervenor Complaint.

49.     LNA admits the allegations contained in paragraph 49 of the Intervenor Complaint.

50.     LNA admits the allegations contained in paragraph 50 of the Intervenor Complaint.

51.     LNA admits the allegations contained in paragraph 51 of the Intervenor Complaint.

52.     LNA admits Barge ING 4727 became adrift from her moorings during of after Hurricane Katrina made landfall, and avers that Barge ING 4727 played no role in any levee failures in New Orleans, but otherwise is without knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 52 of the Intervenor Complaint.

53.     LNA admits that at least four lawsuits have been filed against LNA, and that the plaintiffs in some of the suits have made class action allegations, but otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 53 of the Intervenor Complaint.

54.     LNA admits the allegations contained in paragraph 54 of the Intervenor Complaint.

55.     LNA admits that allegations in the complaint in the *Boutte* action implicate LNA's marine liability coverages with the American Club, NYMAGIC, NACA and AHAC, but otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 55 of the Intervenor Complaint.

56.     LNA admits that allegations in the complaint in the *Mumford* action implicate LNA's marine liability coverages with the American Club, NYMAGIC, NACA and AHAC, but otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 56 of the Intervenor Complaint.

57.     LNA admits that allegations in the third party complaints in the *Ingram* limitation action implicate LNA's marine liability coverages with the American Club, NYMAGIC, NACA and AHAC, but otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 57 of the Intervenor Complaint.

58.     LNA admits that the *Mumford* and *Boutte* actions include allegations that LNA was at all relevant times the owner, operator and/or was in control of barge ING 4727, but otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 58 of the Intervenor Complaint.

59.    LNA admits the allegations contained in paragraph 59 of the Intervenor Complaint.

60.    LNA admits its counsel wrote to the American Club on March 3, 2006, regarding its claim for indemnification arising from Hurricane Katrina, but otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 60 of the Intervenor Complaint.

61.    LNA admits the allegations contained in paragraph 61 of the Intervenor Complaint.

62.    LNA admits the allegations contained in paragraph 62 of the Intervenor Complaint.

63.    LNA admits the allegations contained in paragraph 63 of the Intervenor Complaint.

64.    LNA is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 64 of the Intervenor Complaint.

## AS AND FOR AN ANSWER TO THE FIRST CAUSE OF ACTION

65.    LNA repeats and incorporates its Answers to paragraphs 1 through 64 as if fully set forth herein.

66.    LNA: (a) denies that any document is annexed as Exhibit 2 to the Intervenor Complaint served upon it; and (b) admits that counsel for the American Club sent a letter on or about April 21, 2006, to counsel for LNA, which purported to communicate a denial of coverage for LNA's claim, and that the American Club filed the Club D.J. Action, but otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 66 of the Intervenor Complaint.

67.    LNA admits the allegations contained in paragraph 67 of the Intervenor Complaint.

68.    LNA admits that the first cause of action in the Club D.J. Action complaint makes several allegations and respectfully directs the Court to that pleading, but otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 68 of the Intervenor Complaint.

69.    LNA: (a) denies that any document is annexed as Exhibit 3 to the Intervenor Complaint; but (b) otherwise admits the allegations contained in paragraph 69 of the Intervenor Complaint.

70.    LNA admits that the Transportation Agreement contains the language quoted in paragraph 70 of the Intervenor Complaint, without the emphasis,  and otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in that paragraph.

71.    LNA admits the allegations contained in paragraph 71 of the Intervenor Complaint.

72.    LNA admits the allegations contained in paragraph 72 of the Intervenor Complaint.

73.    LNA admits the allegations contained in paragraph 73 of the Intervenor Complaint.

74.    LNA admits the allegations contained in paragraph 74 of the Intervenor Complaint.

75.     LNA admits the allegations contained in paragraph 75 of the Intervenor Complaint, and further avers that it actually tendered the required premium to the American Club.

76.     LNA admits the allegations contained in paragraph 76 of the Intervenor Complaint.

77.     LNA admits that the American Club is liable under the Certificate of Entry and the Club Rules (1) to provide LNA with defense costs in the underlying Katrina related litigations, and (2) to reimburse LNA for the costs of defending the Club D.J. Action, but otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 77 of the Intervenor Complaint.

78.     LNA admits that the second cause of action in the Club D.J. Action complaint makes several allegations and respectfully directs the Court to that pleading, but otherwise denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 78 of the Intervenor Complaint.

79.     LNA is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 79 of the Intervenor Complaint; in addition, paragraph 79 of the Intervenor Complaint calls solely for a legal conclusion for which no factual response is required.

80.     LNA admits the allegations contained in paragraph 80 of the Intervenor Complaint.

81.     LNA is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 81 of the Intervenor Complaint.

82.    LNA is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 11 of the Intervenor Complaint.

## AS AND FOR AN ANSWER TO THE SECOND CAUSE OF ACTION

83.    LNA repeats and incorporates its Answers to paragraphs 1 through 82 as if fully set forth herein.

84.    LNA admits the quoted language appears in the "excess policy", but otherwise denies the allegations contained in paragraph 84 of the Intervenor Complaint.

85.    LNA denies the allegations contained in paragraph 85 of the Intervenor Complaint, and further avers that the allegations of Paragraph 85 of the Intervenor Complaint are improper in a purported complaint for a declaratory judgment because they are based upon a hypothetical that the NYMAGIC, NACA and AHAC have all alleged to be untrue.

86.    LNA denies the allegations contained in paragraph 86 of the Intervenor Complaint.

## AS AND FOR AN ANSWER TO THE THIRD CAUSE OF ACTION

87.    LNA repeats and incorporates its Answers to paragraphs 1 through 86 as if fully set forth herein.

88.    LNA admits that the quoted language appears, without emphasis, in the primary marine liabilities policy issued by NYMAGIC, but denies the remaining allegations contained in paragraph 88 of the Intervenor Complaint.

89.    LNA admits that NYMAGIC was not permitted to name legal defense counsel for LNA without LNA's consent but otherwise denies the remaining allegations contained in paragraph 89 of the Intervenor Complaint.

90.      LNA denies the allegations contained in paragraph 90 of the Intervenor Complaint.

91.      LNA denies the allegations contained in paragraph 91 of the Intervenor Complaint.

92.      LNA denies the allegations contained in paragraph 92 of the Intervenor Complaint.

93.      LNA denies the allegations contained in paragraph 93 of the Intervenor Complaint.

94.      LNA admits that NYMAGIC retained the law firm of Sutterfield & Webb in connection with the litigation of the third party claims asserted in New Orleans but otherwise denies knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations contained in paragraph 94 of the Intervenor Complaint.

95.      LNA admits that it paid and/or incurred expenses in excess of $7.5 million in defense of the underlying Katrina Claims, but except as so specifically admitted, denies the remaining allegations contained in paragraph 95 of the Intervenor Complaint.

96.      LNA admits that it has made a claim for reimbursement of defense costs under the MMO Policy and the Excess Marine Liabilities Policy, but otherwise denies the remaining allegations contained in paragraph 96 of the Intervenor Complaint.

97.      LNA admits that the "excess policy" contains the quoted language, without emphasis, but otherwise denies the allegations contained in paragraph 97 of the Intervenor Complaint.

98.      LNA denies the allegations contained in paragraph 98 of the Intervenor Complaint.

99.    LNA denies the allegations contained in paragraph 99 of the Intervenor Complaint.

100.    LNA denies the allegations contained in paragraph 100 of the Intervenor Complaint.

### AS AND FOR AN ANSWER TO THE FOURTH CAUSE OF ACTION

101.    LNA repeats and incorporates its Answers to paragraphs 1 through 100 as if fully set forth herein.

102.    LNA is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 102 of the Intervenor Complaint; in addition, paragraph 102 of the Intervenor Complaint calls solely for a legal conclusion for which no factual response is required.

103.    LNA is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 103 of the Intervenor Complaint; in addition, paragraph 103 of the Intervenor Complaint calls solely for a legal conclusion for which no factual response is required.

104.    LNA is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 104 of the Intervenor Complaint; in addition, paragraph 104 of the Intervenor Complaint calls solely for a legal conclusion for which no factual response is required.

105.    LNA denies the allegations contained in paragraph 105 of the Intervenor Complaint.

106.    LNA is without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 106 of the Intervenor Complaint; in addition, paragraph

106 of the Intervenor Complaint calls solely for a legal conclusion for which no factual response is required.

107.    LNA denies the allegations contained in paragraph 107 of the Intervenor Complaint.

**AS AND FOR A FIRST**
**<u>AFFIRMATIVE DEFENSE</u>**

108.    The Intervenor Complaint fails to state a claim against LNA upon which relief can be granted.

**AS AND FOR A SECOND**
**<u>AFFIRMATIVE DEFENSE</u>**

109.    The intervening plaintiff is estopped from asserting any causes of action against LNA or otherwise seeking to disclaim coverage on any grounds.

**AS AND FOR A THIRD**
**<u>AFFIRMATIVE DEFENSE</u>**

110.    The allegations in the Intervenor Complaint are not justiciable, as, *inter alia*, they are not ripe for adjudication.

**AS AND FOR A FOURTH**
**<u>AFFIRMATIVE DEFENSE</u>**

111.    The intervening plaintiff has sustained no damage, nor is it exposed to any recoverable damages that can support this action.

**AS AND FOR A FIFTH**
**<u>AFFIRMATIVE DEFENSE</u>**

112.    LNA is entitled to all rights and defenses available under the New York State Insurance Law, and/or any other applicable statutory provision.

## AS AND FOR A SIXTH
## AFFIRMATIVE DEFENSE

113.   LNA is entitled to the benefit of all rights and defenses set out in all policies of insurance applicable to its claims.

## AS AND FOR A SEVENTH
## AFFIRMATIVE DEFENSE

114.   The intervenor plaintiff's causes of action are barred because of waiver.

## AS AND FOR AN EIGHTH
## AFFIRMATIVE DEFENSE

115.   The intervenor plaintiff's causes of action are barred under the doctrines of mootness, *res judicata* and/or collateral estoppel.

## AS AND FOR A NINTH
## AFFIRMATIVE DEFENSE

116.   LNA reserves the right to assert additional affirmative defenses should additional facts be obtained through discovery.

## AS AND FOR A FIRST COUNTERCLAIM
## AGAINST NYMAGIC, NACA and AHAC

117.   LNA repeats and incorporates its responses and averments as contained in Paragraphs "1" through "116" as if set forth fully herein.

118.   LNA was at all times in compliance with all of its obligations under the applicable Excess Marine Liabilities Policy.

119.   LNA has incurred significant legal expenses and litigation costs in excess of $8,000,000, to date, in connection with the investigation and defense of claims asserted against LNA in connection with Hurricane Katrina for which the applicable Excess Marine Liabilities Policy require the plaintiffs, The Northern Assurance Company of America,

American Home Assurance Company and New York Marine and General Insurance Company, to indemnify LNA.  LNA has and will continue to incur legal and other expenses recoverable under the applicable Excess Marine Liabilities Policy throughout the pendency of the claims against it.

120.    To date, the plaintiffs, The Northern Assurance Company of America, American Home Assurance Company and New York Marine and General Insurance Company, have breached their obligations under the applicable Excess Marine Liabilities Policy by failing to pay for and/or indemnify LNA for any of its recoverable legal and other expenses arising from claims asserted against it in connection with Hurricane Katrina, despite LNA's due demand.

121.    As a direct result of plaintiffs' breach, LNA has suffered damages to date of no less than $8,000,000 and said damages will increase throughout the pendency of the claims against it in the Hurricane Katrina litigation in New Orleans.

## AS AND FOR A SECOND COUNTERCLAIM AGAINST NYMAGIC, NACA and AHAC

122.    LNA repeats and incorporates its responses and averments as contained in Paragraphs "1" through "121" as if fully set forth herein.

123.    The Excess Policy to which NYMAGIC, NACA and AHAC have subscribed, requires them to indemnify LNA for "all sums which [LNA] shall become legally liable to pay or by contract or agreement become liable to pay in respect of claims made against [LNA] for damages arising from the of whatsoever nature on account of" the third party claims asserted against LNA as a result of the Hurricane Katrina litigation, including any and all liability, legal defense costs, legal investigative costs, liability and expense arising from the defense of the claims against it in the Hurricane Katrina litigation in New Orleans.

124.    NYMAGIC, NACA, and AHAC have wrongfully refused to indemnify LNA for its legal investigative and legal defense costs arising from the defense of the claims against it in the Hurricane Katrina litigation in New Orleans under the applicable Excess Marine Liabilities Policy.

125.    An actual and justiciable controversy exists between LNA and NYMAGIC, NACA and AHAC concerning the extent to which NYMAGIC, NACA and AHAC are, and will be, obligated to indemnify LNA for its legal investigative and legal defense costs arising from the defense of the claims against it in the Hurricane Katrina litigation in New Orleans under the applicable Excess Marine Liabilities Policy.

126.    LNA is entitled to judgment declaring that NYMAGIC, NACA and AHAC are obligated to indemnify LNA for all of its legal investigative and legal defense costs as a result of the claims against it in the Hurricane Katrina litigation in New Orleans under the applicable Excess Marine Liabilities Policy.

## AS AND FOR A THIRD COUNTERCLAIM
## AGAINST NACA and AHAC

127.    LNA repeats and incorporates its responses and averments as contained in Paragraphs "1" through "126" as if fully set forth herein.

128.    The Excess Marine Liabilities Policy denotes NYMAGIC as the Leader among the insurers and provides that any decisions by NYMAGIC in respect of claims are binding upon NACA and AHAC as following insurers.

129.    NYMAGIC has made certain payments to and/or on behalf of LNA, under the Excess Marine Liabilities Policy, in connection with the cost of expert witnesses, arising from the investigation and defense of claims asserted against LNA in connection with Hurricane

Katrina, and has requested that NACA and AHAC pay their respective proportionate shares of such payments.

130.    NACA and AHAC, in violation of their obligations under the Excess Marine Liabilities Policy and in violation of their good faith obligations as insurers licensed by the New York State Department of Insurance, have to date failed and/or refused to make indemnification payments as directed by NYMAGIC.

131.    An actual and justiciable controversy exists between LNA and NYMAGIC, NACA and AHAC concerning the extent to which NACA and AHAC are obligated to make payments to and/or on behalf of LNA under the Excess Marine Liabilities Policy as directed by NYMAGIC.

132.    LNA is entitled to judgment declaring that NACA and AHAC are obligated to make all payments to and/or on behalf of LNA under the Excess Marine Liabilities Policy as directed by NYMAGIC.

**WHEREFORE**, LNA respectfully prays as follows:

1.    For judgment dismissing NYMAGIC's intervenor complaint, with prejudice;

2.    For judgment on its First Counterclaim against NYMAGIC, NACA and AHAC for the full amount of its damages, plus interest;

3.    For judgment on its Second Counterclaim declaring that the plaintiffs, NYMAGIC, NACA and AHAC are obligated to indemnify LNA for its legal investigative and legal defense costs arising from the defense of the claims against it in the Hurricane Katrina litigation in New Orleans under the applicable Excess Marine Liabilities Policy;

4.     For judgment on its Third Counterclaim declaring that the plaintiffs, NACA and

       AHAC are obligated to make all payments to and/or on behalf of LNA under the

       Excess Marine Liabilities Policy as directed by NYMAGIC

5.     For all costs of suit, including attorneys' fees;

6.     For such other and further relief as this Court deems just and proper.


Dated: New York, New York
       November 10, 2008


                         HILL RIVKINS & HAYDEN LLP
                         Attorneys for Defendant/Counterclaim Plaintiff,
                         Lafarge North America Inc.



                By: _____
                         John J. Sullivan
                         JSullivan@hillrivkins.com
                         Robert G. Clyne
                         RClyne@hillrivkins.com
                         45 Broadway – Suite 1500
                         New York, New York 10006
                         (212) 669-0600

To:    Thacher Proffitt & Wood LLP
       Two World Financial Center
       New York, NY 10281
       212-912-7400

       Brown, Gavalas & Fromm LLP
       355 Lexington Avenue
       New York, NY 10017
       212-983-8500

       Nicoletti, Hornig & Sweeney
       Wall Street Plaza
       88 Pine Street, 7th Floor
       New York, NY 10005
       212-220-3830