**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY,<br><br>　　　　　　　　　　　　　Plaintiff,<br><br>　　　- against -<br><br>LAFARGE NORTH AMERICA, INC.,<br><br><br>　　　　　　　　　　　　　Defendant. | **ECF CASE**<br><br>Case No.: 05 CV 9612 (CSH) (AJP) |
| THE NORTHERN ASSURANCE COMPANY OF AMERICA and AMERICAN HOME ASSURANCE COMPANY,<br><br>　　　　　　　　　　　　　Plaintiffs,<br><br>　　　- against -<br><br>LAFARGE NORTH AMERICA, INC. and AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC.,<br><br>　　　　　　　　　　　　　Defendants. | **ECF CASE**<br><br>Case No.: 08 CV 3289 (CSH) (AJP) |
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY,<br><br>　　　　　　　　　　　　　Intervenor-Plaintiff,<br><br>　　　- against -<br><br>LAFARGE NORTH AMERICA, INC., and AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC.,<br><br>　　　　　　　　　　　　　Defendants. | |

**DEFENDANT AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION
AND INDEMNITY ASSOCIATION, INC.'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFFS' AND INTERVENOR PLAINTIFF'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

THACHER PROFFITT & WOOD LLP
Two World Financial Center
New York, New York 10281
(212) 912-7400
John M. Woods
Jennifer S. Kozar

*Attorneys for American Steamship Owners
Mutual Protection and Indemnity
Association, Inc.*

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................ i

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ...................................................................................... 3

STANDARD OF PROOF ........................................................................................... 4

LEGAL ARGUMENT ............................................................................................... 4

POINT I       THIS COURT'S ORDER GRANTING THE AMERICAN CLUB'S
MOTION FOR  SUMMARY JUDGMENT ON THE ISSUE OF
COVERAGE HAS ALREADY DETERMINED THE ISSUE AT BAR .............. 4

      A.    The Court Properly Interpreted the Meaning of the Term "Or
Otherwise" In Determining that Coverage for the Barge ING 4727
Does Not Exist Under Lafarge's Certificate of Entry with the
American Club ................................................................................... 5

      B.    Lafarge's Status as Bailee Is Insufficient to Provide for Coverage for
the Barge ING 4727 by the American Club Pursuant to Lafarge's
Certificate of Entry ........................................................................... 9

      C.    The Court's Prior Coverage Determination Is In Line With the Parties'
Intent ................................................................................................. 10

POINT II      PLAINTIFF EXCESS UNDERWRITERS ARE NOT THE PROPER
PARTIES TO ARGUE LAFARGE'S COVERAGE UNDER ITS
CERTIFICATE OF ENTRY WITH THE AMERICAN CLUB AND THEY
ARE BARRED BY THE DOCTRINE OF RES JUDICATA FROM
RELITIGATING THE ISSUE ............................................................................ 12

POINT III     THERE ARE CONTESTED ISSUES OF MATERIAL FACT
CONCERNING THE LANGUAGE OF THE PRIMARY AND EXCESS
LIABILITY POLICIES ..................................................................................... 14

POINT IV     SUMMARY JUDGMENT SHOULD BE DENIED ON PLAINTIFF
EXCESS UNDERWRITERS' CLAIMS REGARDING THE TIMING OF
PAYMENTS AND STACKING OF POLICIES .................................................. 16

      A.    Plaintiff Excess Underwiters' Arguments Regarding the Stacking of
the Policies are Irrelevant in Light of the Court's Determination that
the American Club Does Not Provide Coverage to Lafarge for the
Barge ING 4727 ................................................................................ 16

      B.     The "Other Insurance" Clauses Provide Further Support That
Lafarge's Certificate of Entry Does Not Provide Coverage for
Liabilities Relating to the Barge ING 4727............................................... 18

CONCLUSION........................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>CASES</u>

*Buckeye Cellulose Corp. v. Atlantic Mut. Ins. Co.*, 643 F.Supp 1030 (S.D.N.Y. 1989) .............. 12

*Cauff, Lippman & Co. v. Apogee Fin. Group, Inc.,* 807 F.Supp. 1007 (S.D.N.Y. 1992)............ 13

*Dunham v. Omaha & Council Bluffs Street Ry. Co.*, 106 F.2d 1 (2d Cir. 1939)........................... 8

*Estate of Riefberg*, 58 N.Y.2d 134, 141, 446 N.E.2d 424 (1983).................................................7-8

*Estee Lauder International, Inc., v. Worldwide Marine Services, Inc.*, No. 87 CIV. 7498 (RWS), 1989 WL 126067 (S.D.N.Y. Oct. 13, 1989) ............................................................................. 19

*Fishman v. Town of Islip,* 20 Misc.2d 180 (Sup. Ct. 1959) ......................................................... 6

*Giannullo v. City of New York*, 322 F.3d 139 (2d Cir. 2003) ....................................................... 4

*Highlands Ins. Co. v. PRG Brokerage, Inc.,* No. 01 Civ. 2272, 2004 WL 35439 (S.D.N.Y. Jan. 6, 2004)............................................................................................................ 13

*In Re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455 (S.D.N.Y. 2005) ............................. 17, 18

*Kinek v. Paramount Commc'ns, Inc.,* 22 F.3d 503 (2d Cir. 1994)................................................ 11

*Kipper v. Universal Underwriters Group*, 304 A.D.2d 62 (4th Dep't 2003) ............................... 19

*Matter of Bath & Hammonds R.R. Co. v. New York State Dept. of Envtl Conservation*, 73 N.Y.2d 434 (1989)................................................................................................................ 8

*Mosca v. Ford Motor Credit Co.*, 150 A.D.2d 656 (2d Dep't 1989)............................................ 19

*Nu-Way Environmental, Inc. v. Planet Ins. Co.*, No. 95 Civ. 573, 1997 WL 462010 (S.D.N.Y. Aug. 12, 1997) ......................................................................................................................... 18

*Port Chester Elec. Constr. Corp. v. Atlas*, 40 N.Y.2d 652, 655 (1976) ....................................... 13

*Regents Ins. Co. v. Storm King Contracting, Inc*., No. 06 Civ. 2879 (LBS), 2008 WL 563465 (S.D.N.Y. Feb. 27, 2008).......................................................................................................... 6

*Society of Professionals in Dispute Resolution, v Mt. Airy Ins. Co.*, No. Civ.A.3:97-CV-0071-D, Civ.A.3:97-CV-0090-D, 1997 WL 711446 (N.D. Tex Nov. 7, 1997)................................................................................................. 20

*Trustees of Princeton University v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, No. 650202/06, 2007 WL 1063870 (N.Y. Sup. Ct. April 10, 2007) ........................................ 18

*United Parcel Service, Inc. v. Amer. Motorists Ins. Co.*, 12 A.D.3d 437 (2d Dep't 2004) .......... 19

*Utica Mut. Ins. Co. v. Travelers Ins. Co.,* 213 A.D.2d 983 (4th Dep't 1995) ............................. 19

*Wedtech Corp. v. Federal Ins. Co.*, 740 F. Supp. 214 (S.D.N.Y. 1990)....................................... 18

*Zurich American Ins. Co.*, 397 F.3d 158 (2d Cir. 2005)................................................................ 7

## <u>OTHER AUTHORITIES</u>

BLACK'S LAW DICTIONARY (7th Ed.) (1999).................................................................................. 6

## <u>REGULATIONS</u>

Fed. R. Civ. P. 56(c) ................................................................................................................ 4

American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "American Club"), by and through its attorneys Thacher Proffitt & Wood LLP, hereby submits this Memorandum of Law in opposition to the motion for summary judgment (the "Summary Judgment Motion") filed by Plaintiffs The Northern Assurance Company of America ("Northern Assurance") and American Home Assurance Company ("American Home") and joined in by Intervenor Plaintiff New York Marine and General Insurance Company ("NYMAGIC") (collectively "Plaintiff Excess Underwriters").

## PRELIMINARY STATEMENT

Undeterred by this Court's unequivocal adverse decision on the exact same subject, Plaintiff Excess Underwriters move – in the case of Northern Assurance and American Home, for the second time – for summary judgment against the American Club on issues related to coverage under Lafarge North America, Inc's ("Lafarge") entry with the American Club for claims arising from the breakaway of Ingram Barge Company's ("Ingram") Barge ING 4727. They do so despite the fact (1) that they are neither parties to nor intended third-party beneficiaries of the insurance contract between the American Club and Lafarge, and thus are not the proper parties to litigate the issue of whether coverage exists thereunder; and (2) that this Court has already determined in its Order dated September 18, 2008 (the "Order") and Memorandum Opinion dated September 29, 2008 (the "Memorandum Opinion," attached to the Declaration of Jennifer S. Kozar (the "Kozar Declaration") as Exhibit A) in the American Club's declaratory judgment action against Lafarge[1] that Lafarge's Certificate of Entry with the American Club (the "Certificate of Entry," attached to the Kozar Declaration as Exhibit B) did not cover the Barge ING 4727.  As the Court previously noted on page four of its August 4, 2008

---

[1]     *American Steamship Owners Mutual Protection and Indemnity Association, Inc., v. Lafarge North America, Inc.*, Civil Action No. 06 CV 3123 (CSH/AJP).

Memorandum Opinion and Order in the action by Northern Assurance and American Home against Lafarge and the American Club, the Excess Underwriters' actions against the American Club involve "precisely the issue…resolved in" or are "directly dependent" upon the outcome of the American Club's declaratory judgment action against Lafarge.  *See* Memorandum Opinion and Order, *Northern Assur. Co. of Am., et al. v. Lafarge N.A., Inc., et al.*, Case No. 08 CV 3289 (CSH)(AJP), Docket No. 71, at p. 4 (dated August 4, 2008).  The Plaintiff Excess Underwriters' entire argument with respect to their causes of action against the American Club (and one cause of action against Lafarge) rests on a foundation and assumption that the American Club provided coverage for the Barge ING 4727 under Lafarge's Certificate of Entry.  However, the Court has already determined that such coverage does not exist.

Additionally, Plaintiff Excess Underwriters' Memorandum of Law in Support of their Summary Judgment Motion (the "Summary Judgment Memorandum") is replete with misstatements and errors regarding the nature of the American Club's Protection and Indemnity ("P & I") Policy issued to Lafarge.  However, the most glaring omission concerns the actual language of the policy issued by the Plaintiff Excess Underwriters (the "Excess Policy"), as well as the policy issued to Lafarge by non-party New York Marine and General Insurance Company ("NYMAGIC") (the "Primary Policy").  It is clear that both Lafarge and the Plaintiff Excess Underwriters have failed to produce authentic, executed copies of these two policies.  Thus, even if the Order and Memorandum Opinion did not already resolve the issues of coverage that are the subject of Plaintiff Excess Underwriters' Summary Judgment Motion – which they did – the Court still would have to deny the Summary Judgment Motion because it can not address the claims raised by the Plaintiff Excess Underwriters without first seeing the actual Excess Policy and the Primary Policy.

Finally, Plaintiff Excess Underwriters' arguments concerning the "stacking" of the policies and timing of payment of defense costs are without merit, as the Court has already held that the American Club did not provide coverage for the Barge ING 4727; accordingly, the American Club cannot be held responsible for the payment of Lafarge's defense costs. Moreover, Plaintiff Excess Underwriters' argument that the so-called "escape" clause found in the insurance agreement between Lafarge and the American Club obligates the American Club to indemnify Lafarge misconstrues the case law, which instead further supports the finding that the American Club is not liable for Lafarge's costs.   Accordingly, Plaintiff Excess Underwriters' Summary Judgment Motion should be denied.

## **FACTUAL BACKGROUND**

Mindful of the Court's familiarity with the facts surrounding the issue of coverage for losses resulting from the breakaway of the Barge ING 4727, the American Club respectfully refers to and fully incorporates the facts included in its Motion for Summary Judgment[2] and related filings submitted by the American Club in *American Steamship Owners Mutual Protection and Indemnity Association, Inc., v. Lafarge North America, Inc.*, Civil Action No. 06 CV 3123 (CSH/AJP), as well as its Response to Plaintiff Excess Underwriters' Local Civil Rule 56.1 Statement of undisputed facts.

---

[2]      For the sake of minimizing the number of duplicate submissions of pleadings and prior motions and exhibits to the Court, the American Club incorporates by reference, repeats, and realleges all arguments raised in its Motion for Summary Judgment against Lafarge, and all accompanying and related filings, in the action titled *American Steamship Owners Mutual Protection and Indemnity Association, Inc., v. Lafarge North America, Inc.*, Civil Action No. 06 CV 3123 (CSH/AJP).  If the Court would prefer that the American Club directly provide it with copies of all documents cited in this Opposition, including those documents attached to earlier submissions, that will be done promptly upon receiving notice that the Court would like us to do so.

## STANDARD OF PROOF

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In making a motion for summary judgment, "it is the movant's burden to show that no genuine factual dispute exists, and all reasonable inferences must be drawn in the non-movant's favor.  *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  The Second Circuit has specifically noted that when the movant "fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, even if no opposing evidentiary matter is presented, for the non-movant is not required to rebut an insufficient showing." *Id.* at 140-141 (citations omitted).  For the reasons set forth below, Plaintiff Excess Underwriters have in fact made an insufficient showing, and cannot make such a showing in light of the Court's prior coverage decisions, and therefore are not entitled to summary judgment.

## LEGAL ARGUMENT

### POINT I

### THIS COURT'S ORDER GRANTING THE AMERICAN CLUB'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF COVERAGE HAS ALREADY DETERMINED THE ISSUE AT BAR

While Plaintiff Excess Underwriters' Summary Judgment Memorandum reads like an appeal of the Court's Order and Memorandum Opinion in favor of the American Club on the issue of coverage, the fact of the matter is that this Court has determined the American Club did not provide cover to Lafarge for claims arising from the breakaway of the Barge ING 4727, and

thus has already decided the fundamental question at issue in the instant motion.  Moreover, while Plaintiff Excess Underwriters devote pages of the Summary Judgment Memorandum arguing that the doctrine of *ejusdem generis* was incorrectly applied to the dispute between the American Club and Lafarge, Plaintiff Excess Underwriters' proposed interpretation of the terms included in Lafarge's Certificate of Entry ignores the plain language of the agreement between Lafarge and the American Club, and contradicts the principles set forth in the very cases they rely on.

> **A.    The Court Properly Interpreted the Meaning of the Term "Or Otherwise" In Determining that Coverage for the Barge ING 4727 Does Not Exist Under Lafarge's Certificate of Entry with the American Club**

In determining that  Lafarge's Certificate of Entry does not provide it with coverage for losses resulting from the breakaway of the Barge ING 4727, the Court noted that "[w]hen properly applied, *ejusdem generis* operates to avoid ambiguity, not resolve it."  Memorandum Opinion at p. 12.   While Plaintiff Excess Underwriters attempt at length to show that the coverage analysis employed by the Court in the Memorandum Opinion is flawed, the principle of *ejusdem generis* is, as previously determined by this Court, applicable to the interpretation of that phrase in Lafarge's insurance contract.  In fact, the very purpose of the principle of *ejusdem generis* is to limit the scope of contract interpretation, and thereby prevent the confusion that Plaintiff Excess Underwriters attempt to create in their Summary Judgment Memorandum with respect to the meaning of the phrase "purchase, charter, lease or otherwise" included in Lafarge's Certificate of Entry with the American Club.  That is, the <u>principle</u> of *ejusdem generis* is designed to prevent such wide-ranging interpretation of the phrase "or otherwise" so as not to render all the words which precede it meaningless.

Three clear and similar terms precede the phrase "or otherwise" in the Chartered Barges Clause included in Lafarge's Certificate of Entry with the American Club – "purchase, charter,

lease."  As discussed in the Memorandum of Law in Support of the American Club's Motion for Summary Judgment, pursuant to the rule of *ejusdem generis*, a phrase like the "or otherwise" included in the Chartered Barges Clause will be interpreted to include only things of the same type as those listed.  *See* BLACK'S LAW DICTIONARY (7th Ed.) (1999), at p. 535; *see also Fishman v. Town of Islip*, 20 Misc.2d 180 (Sup. Ct. 1959).  Here, this means that the words "or otherwise" will only apply where Lafarge has acquired an interest in a vessel that is in the nature of or akin to a purchase, charter or lease.

The Court has already determined, as discussed in the Memorandum Opinion, that Lafarge held no such interest in the Barge ING 4727, and that the American Club therefore cannot be held liable for any losses relating to the breakaway of the barge.  Indeed, as this Court has acknowledged, the Transportation Agreement pursuant to which Ingram shipped dry cement on the Barge ING 4727 for Lafarge, "specifically provides that it shall not be construed 'as a contract by [Lafarge] for the chartering, hiring or leasing of any barge…of [Ingram] to be provided hereunder" – including the Barge ING 4727.  *See* Memorandum Opinion at p. 16.   The addition of the words "or otherwise" in the Chartered Barges Clause is of no avail to Lafarge (or Plaintiff Excess Underwriters) because, under the principle of *ejusdem generis*, the phrase must be interpreted in light of, and limited to, the terms which preceded it, *i.e.* "purchase, charter or lease" – and Lafarge plainly did not have such an interest in the barge.   *See* Memorandum Opinion at p. 17; *see also Regents Ins. Co. v. Storm King Contracting, Inc.*, No. 06-CV-2879 (LBS), 2008 WL 563465, at *8 (S.D.N.Y. Feb. 27, 2008) (stating that under New York Law, a court interpreting language in a contract "must employ the rule of construction known as *ejusdem generis*").

While they attempt to establish that the Court's reading of the term "or otherwise" was incorrect because it "gave the term no meaning or effect," Plaintiff Excess Underwriters themselves note that "[i]n interpreting an insurance contract under New York law, a court must strive to 'give meaning to every sentence, clause, and word.'" *Zurich American Ins. Co.*, 397 F.3d 158, 165 (2d Cir. 2005) (citation omitted).   Yet their purported analysis of the Chartered Barges Clause interprets the phrase "purchase, charter, lease, or otherwise" to mean purchase, charter, lease or "anything else," thereby effectively providing Lafarge with coverage for <u>any</u> vessel, and rendering the words "purchase, charter, lease" superfluous.   *See* Summary Judgment Memorandum at p. 8.   Plaintiff Excess Underwriters fail to cite to any cases that remotely suggest that contractual provisions should be applied so expansively as to effectively read out the key terms providing guidance as to the intended scope of coverage, as they would have the Court do here.

Indeed, the cases that Plaintiff Excess Underwriters do cite to in their Summary Judgment Memorandum fail to support their interpretation of the phrase "purchase, charter, lease or otherwise" because the courts in these cases considered and ultimately declined to employ the doctrine of *ejusdem generis* under vastly different sets of facts from the coverage dispute at issue.   For example, Plaintiff Excess Underwriters misleadingly cite *Estate of Riefberg*, where just one term preceded the phrase "or otherwise," not multiple terms such as "purchase, charter, lease" as found in Lafarge's Certificate of Entry.   This factual difference is significant because where just one term precedes "or otherwise," the principle of *ejusdem genesis* will not have the same application.   As stated by the *Estate of Riefberg* court:

> "[W]hile the *ejusdem generis* rule, by which a series of specific words describing things or concepts of a particular sort are used to explain the meaning of a general one in the same series frequently is resorted to as an interpretative rule, it is rare that a single word,

> though illustrative of a particular genus or idea will reliably reveal
> the intent behind a general one."

*Estate of Riefberg*, 58 N.Y.2d 134, 141, 446 N.E.2d 424, 428 (1983) (emphasis added and citations omitted).

Plaintiff's reliance on *Dunham v. Omaha & Council Bluffs Street Ry. Co.*, 106 F.2d 1 (2d Cir. 1939) is equally misplaced. In *Dunham*, the Court engaged in two separate analyses of the term "or otherwise" as read in conjunction with two distinct phrases. In neither instance, however, did the term "or otherwise" follow a series or list of words which would make the use of *ejusdem generis* applicable. The language of the provision of the mortgage agreement stated:

> under no circumstances shall the holder of any bond or coupon, or
> any number of such holders, have any right to institute any action
> at law upon any coupon or coupons, or otherwise, or any suit or
> proceedings in equity, or otherwise.

106 F.2d at 3.

While the Court considered the meaning of the term "or otherwise" when read alongside the phrase "any coupons or coupons," and when read alongside the phrase "any suit or proceedings in equity," neither preceding phrase included a list or series of terms. Accordingly, this case is not instructive in the instant coverage analysis, which involves a phrase where three related terms – "purchase, charter, lease" – precede the term "or otherwise."

*Matter of Bath & Hammonds R.R. Co. v. New York State Dept. of Envtl Conservation*, 73 N.Y.2d 434 (1989), also effectively supports the coverage determination made by this Court in the Memorandum Opinion. There, petitioners argued that the court should employ *ejusdem generis* along with a rule of construction known as *expressio unius est exclusio alterius* to reach the conclusion that the Commissioner of the Department of Environmental Conservation (the "DEC") did not have power to use eminent domain to acquire land for purposes of fish and wildlife management. The Court refused to resort to those canons of construction because to do

8

so would directly contradict another statute that empowered the Commissioner of the DEC to "acquire any real property which he deems necessary for any of the purposes or functions of the department, by purchase or as provided in the eminent domain procedure law." Unlike *Matter of Bath & Hammonds R.R. Co.*, this Court clearly resorted to *ejusdem generis* to assist in ascertaining the clear intent of the parties, not to override the intent of the parties.

Accordingly, Plaintiff Excess Underwriters have failed to provide any support for their erroneous position that the Court erred in determining that Lafarge's Certificate of Entry did not provide coverage for the Barge ING 4727, because it was not a vessel in which Lafarge had acquired an interest that was in the nature of or akin to a purchase, charter or lease. Their Summary Judgment Motion therefore also fails and must be denied.

> **B.      Lafarge's Status as Bailee Is Insufficient to Provide for Coverage for the Barge ING 4727 by the American Club Pursuant to Lafarge's Certificate of Entry**

Plaintiff Excess Underwriters attempt to argue that Lafarge's status as a bailee of the Barge ING 4727 was sufficient to provide Lafarge with an insurable interest in the barge that falls within the scope of coverage as provided for in the Chartered Barges Clause. *See* Summary Judgment Memorandum at pp. 6-9. The Court has already fully analyzed the bailment relationship between Lafarge and Ingram, however, and has concluded that this relationship did not provide Lafarge with an interest that falls within the ambit of the Chartered Barges Clause. Specifically, the Court noted that "Lafarge's relationship to the barge ING 4727 was that of a bailee and its duty that of a wharfinger…. If Lafarge negligently failed to secure the ING 4727 at its wharf as Hurricane Katrina bore down, its negligence was that of a wharfinger." Memorandum Opinion at p. 16. The court continued by stating:

> "[i]n the case at bar, Lafarge has wharfinger's insurance, but the catastrophic amount of damages far exceeds the coverage, and Lafarge would like to claim

9

under additional policies.  Understandable enough:  but *ejusdem generis*, together with 'the attendant circumstances in which the agreement was made,'…preclude Lafarge from seeking coverage under its P&I policy with the American Club.

*Id*.

Thus, Lafarge's status as a wharfinger and a bailee of the Barge ING 4727 is legally insufficient to confer coverage for losses resulting from the breakaway of the barge under the Chartered Barges Clause.  Since Lafarge had no interest even remotely similar to that of a purchaser, charterer or leasee, the phrase "or otherwise" does not expand the scope of the clause in a way that would give Lafarge the right to claim that it covered the ING 4727, or any of the thousands of other barges, not owned by Lafarge, that called at its numerous facilities in the United States on an annual basis.  *See* Memorandum Opinion at p. 17 ("Lafarge, having specifically agreed with Ingram in the Transportation Agreement that it could not be characterized as having chartered, hired or leased the barge, may not now be heard to say that its relationship with the barge falls within the phrase "purchase, charter, lease or otherwise" contained in its contract with the American Club.  Lafarge's construction loads 'otherwise' with a heavier cargo than it can carry…").  Accordingly, Plaintiff Excess Underwriters' arguments for coverage by the American Club fail, as does their Summary Judgment Motion.

### C.    The Court's Prior Coverage Determination Is In Line With the Parties' Intent

Plaintiff Excess Underwriters argue that the Court failed to ascertain the intent of the parties to that agreement as to the scope of coverage thereunder because it did not look to the "four corners" of the agreement between the American Club and Lafarge.  To the contrary, the Court discussed the parties' intent in the Order at length, and expressly stated that "the core question for a court in determining whether a particular insurance policy covers a particular

claim is to divine the parties' intent." Memorandum Opinion at p. 10.  The Court concluded that

Lafarge's coverage argument was inconsistent with the intent of the parties, and found it was

> impossible to conclude that the parties to this insurance contract intended to extend coverage to Ingram's fleet of barges supplied to transport Lafarge's cement, barges in which Lafarge contractually renounced any interest through charter, hire or lease, and whose identity was unknown and unknowable until Ingram dispatched one of its barges to load a particular Lafarge cement cargo.

Memorandum Opinion at p. 18.

This finding is consistent with the extrinsic evidence as to the parties' intent that is available in this matter, as discussed at length in the American Club's Motion for Summary Judgment and related filings.  Under New York law, the Court can look to extrinsic evidence to determine and give effect to the intent of the parties. *Kinek v. Paramount Commc'ns, Inc.*, 22 F.3d 503, 509 (2d Cir. 1994) (stating that extrinsic evidence regarding the parties' intent is properly considered when the contract is ambiguous).  As set forth in the American Club's Motion for Summary Judgment, the deposition testimony of Lafarge's insurance broker, Ms. Joanne Fedchin, clearly demonstrates that it was never her intent for the P&I coverage placed with the American Club, even with the Chartered Barges Clause, to cover the third-party Barge ING 4727 which merely delivered cargo under the Transportation Agreement with Ingram.[3] Moreover, Lafarge's own belated attempts, through its counsel, to declare and tender premium for just the Barge ING 4727 on March 31, 2006, and then for over 3,000 third-party owned barges on February 14, 2008 that called at its France Road terminal in New Orleans, Louisiana and its Joppa, Illinois terminal between 1999 and 2006, in fact confirm Lafarge's original understanding that neither the Barge ING 4727 nor the thousands of third-party barges calling at its facilities were covered by the American Club.  While seeking (years later) to add these

---

[3]       As discussed in the American Club's Motion for Summary Judgment, Ms. Fedchin was Lafarge's agent in negotiating and purchasing the P & I coverage for Lafarge.

thousands of vessels to the American Club's coverage and tendering premium for them was a profound act of desperation, Lafarge no doubt understood that it was necessary to try to do so because its failure to previously report any of the over 3,000 third-party owned vessels operating under transportation agreements and similar arrangements proved conclusively that Lafarge never intended the Chartered Barges Clause to cover third-party owned and operated vessels, such as the Barge ING 4727.

All of the extrinsic evidence clearly demonstrates that Lafarge did not intend the Chartered Barges Clause to provide cover for the Barge ING 4727, but even if any ambiguities were to remain, they must be construed against Lafarge, as the language used was supplied by its broker Marsh.  *Buckeye Cellulose Corp. v. Atlantic Mut. Ins. Co.*, 643 F.Supp 1030, 1038 (S.D.N.Y. 1989) (finding that ambiguities must be construed against the insured because the policy language was provided by the insured's brokers).  Thus, the Court correctly ascertained the intent of the parties in determining that the American Club did not provide coverage for the Barge ING 4727.  Because this intent refutes the Plaintiff Excess Underwriters' argument in their Summary Judgment Memorandum as to the existence of coverage for the Barge ING 4727, their Summary Judgment Motion must be denied.

## POINT II

### PLAINTIFF EXCESS UNDERWRITERS ARE NOT THE PROPER PARTIES TO ARGUE LAFARGE'S COVERAGE UNDER ITS CERTIFICATE OF ENTRY WITH THE AMERICAN CLUB AND THEY ARE BARRED BY THE DOCTRINE OF RES JUDICATA FROM RELITIGATING THE ISSUE

This Court has previously recognized that the Plaintiff Excess Underwriters are not the proper parties to litigate the coverage dispute between the American Club and Lafarge.  *See* Memorandum Opinion and Order, *Northern Assur. Co. of Am., et al. v. Lafarge N.A., Inc., et al.*,

Case No. 08 CV 3289 (CSH)(AJP), Docket No. 71, at p. 4 (dated August 4, 2008).  That determination was proper then and remains so, given that the Primary Excess Underwriters have no different or additional basis on which to claim coverage than Lafarge.  Accordingly, because the exact same issue of whether or not the American Club provided coverage to Lafarge for liabilities relating to the breakaway of the Barge ING 4727 has already been litigated and decided by this Court, the Plaintiff Excess Underwriters' claims against the American Club are barred by the doctrine of *res judicata*, and their motion for summary judgment should not be granted.

While Excess Underwriters may argue that they have standing to litigate the issue of coverage under Lafarge's Certificate of Entry with the American Club as beneficiaries to the contract, to do so they must show that they were an intended third-party beneficiary, not merely an incidental beneficiary, and the language of the contract must express an intent to that effect. *Highlands Ins. Co. v. PRG Brokerage, Inc.*, No. 01 Civ. 2272, 2004 WL 35439, at *14 (S.D.N.Y. Jan. 6, 2004) (holding that non-parties to automobile insurance policies did not have standing to seek declaratory judgments regarding those policies, where record did not reveal intent to make them third-party beneficiaries); *Cauff, Lippman & Co. v. Apogee Fin. Group, Inc.*, 807 F.Supp. 1007, 1019 (S.D.N.Y. 1992) ("A person who is not a party to the contract may bring an action for breach of contract if she or he is an intended beneficiary, and not merely an incidental beneficiary of the contract."); *see also Port Chester Elec. Constr. Corp. v. Atlas*, 40 N.Y.2d 652, 655 (1976).  The Plaintiff Excess Underwriters cannot meet this standard, as they were clearly not intended third-party beneficiaries of Lafarge's contract with the American Club.  No mention of the Plaintiff Excess Underwriters ever appears in Lafarge's Certificate of Entry with the American Club, and indeed there is no suggestion that the American Club was even aware of the

13

Plaintiff Excess Underwriters or their coverage.  Accordingly, the Plaintiff Excess Underwriters lack standing to argue issues relating to the existence of coverage by the American Club, and their motion for summary judgment on its claims against the American Club should therefore be denied.

## POINT III

**THERE ARE CONTESTED ISSUES OF MATERIAL FACT
CONCERNING THE LANGUAGE OF THE
PRIMARY AND EXCESS LIABILITY POLICIES**

Even if this Court's prior coverage determination in the Order and Memorandum Opinion did not prevent Plaintiff Excess Underwriters from moving for summary judgment against the American Club – which it plainly does – summary judgment on any of the Plaintiff Excess Underwriters' claims concerning the Excess Policy and/or the Primary Policy, such as the "other insurance" conflict and the attachment points of the Excess Policy, is patently improper as there is a genuine dispute of material fact relating to the contents of the policy issued to Lafarge by Northern Assurance and American Home (the "Excess Policy") and the policy issued to Lafarge by NYMAGIC (the "Primary Policy").  While the Declaration of Robert G. Clyne submitted in support of Lafarge's Motion for Summary Judgment against the Plaintiff Excess Underwriters (the "Clyne Declaration," filed 11/13/2008) purports to include a "true and accurate copy" of the Excess Policy, the document attached thereto is, on its face, only a "Confirmation of Insurance" issued by Willis New York, Inc., the brokers and agents for Lafarge, not the Plaintiff Excess Underwriters.  It is therefore not signed by any underwriter but instead is signed by "Willis New York, Inc., Brokers for the Assured."  *See* Confirmation of Insurance WCM05-531, attached to the Clyne Declaration as Ex. B.

14

Attached to the Affidavit of John A.V. Nicoletti in Support of Motion for Summary Judgment (the "Nicoletti Affidavit" filed 11/13/2008) as Exhibit 4 is a document represented to be a "true and accurate copy of Joint Policy 02-0360-04," *i.e.*, the purported Excess Policy. However, it is clear from the first page of this document that this purported policy has not been executed, as it bears only the pre-printed signatures of the Secretary and the President & CEO of International Marine Underwriters.  Below those pre-printed signatures appears the following: "[i]n witness whereof, this Company has caused this Policy to be executed below, *but this Policy shall not be valid unless countersigned by a duly authorized representative of the Company*." *Id.* (emphasis added).  But below that there is no signature on the line marked "Countersigned by" nor is there a signature in the line for an "Authorized Representative."  *See id.* at p. 1.  Thus, there is no signature by the actual underwriter of the risk, or by anyone involved in the underwriting of the policy or the acceptance of risk.  Accordingly, on its face the "Joint Policy" is not valid.

Furthermore, a cursory review of all the subsequent pages of the alleged Joint Policy reveals that these pages refer to an earlier policy period of May 1, 2004 through May 1, 2005. *Id*. at pp. 2-5.  In addition, there are handwritten notations included throughout the document without any explanation, most notably those found on "Page 23 of 1" [sic].  *See id.* at p. 26. Moreover, none of these pages of the alleged Joint Policy bear the signature of any underwriter, let alone both underwriters to the "Joint Policy."  As this document is seemingly a draft or a mark-up of a prior year policy, unsigned, the American Club is unable to confirm the purported terms of the Excess Policy, and therefore is unable to adequately address any of the Plaintiff Excess Underwriters' claims that relate to the language and terms of the Excess Policy.

Similarly, neither Lafarge nor NYMAGIC has ever produced the final executed Primary Policy issued by NYMAGIC.  The Clyne Declaration purports to attach a "true and correct copy" of the Primary Policy issued to Lafarge, but like the purported Excess Policy attached to the Clyne Declaration, this attached document is instead nothing more than a "Confirmation of Insurance" issued and signed by "Willis New York, Inc., Brokers for the Assured."  *See* Confirmation of Insurance, WCM050530, attached to Clyne Declaration as Ex. A.  It is therefore, on its face, not an insurance policy.  Nevertheless, the Nicoletti Affidavit attaches this same Confirmation of Insurance and represents that it is a "true and accurate copy" of the Primary Policy.  *See* Confirmation of Insurance, WCM050530, attached to the Nicoletti Affidavit as Ex. 5.  Accordingly, the American Club is unable to review, verify or confirm the alleged terms of both the Excess Policy and the Primary Policy, and thus there are disputed issues of material fact concerning the contents of both purported policies.  The Summary Judgment Motion must therefore be denied.

## POINT IV

### SUMMARY JUDGMENT SHOULD BE DENIED ON PLAINTIFF EXCESS UNDERWRITERS' CLAIMS REGARDING THE TIMING OF PAYMENTS AND STACKING OF POLICIES

**A.   Plaintiff Excess Underwiters' Arguments Regarding the Stacking of the Policies are Irrelevant in Light of the Court's Determination that the American Club Does Not Provide Coverage to Lafarge for the Barge ING 4727**

As discussed *supra*, this Court has already determined that the American Club did not provide coverage to Lafarge for losses arising from the breakaway of the Barge ING 4727. Therefore, Plaintiff Excess Underwriters' arguments regarding the stacking of coverage and the American Club's purported obligation to indemnify Lafarge first are irrelevant.

The Southern District of New York has noted with respect to insurance policies that "[t]he starting point for any analysis of the merits must be the text of the insurance agreement." *In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 463 (S.D.N.Y. 2005).  The text of American Club's P & I Rules specifically states:

> **Rule 2          Risks and Losses Covered**
>
> Each Member of the Association shall be indemnified in connection with *each vessel entered in the Association for Protection and Indemnity insurance* against any loss, damage or expense which the Member shall become liable to pay.

*See* American Club Rules, excerpts of which are attached to Nicoletti Affidavit as Exhibit 6 (emphasis added).

In their Summary Judgment Memorandum, Plaintiff Excess Underwriters erroneously reason that because Section 16 of the American Club Rules does not provide specific text regarding when payment for defense costs becomes due, the American Club should contemporaneously reimburse Lafarge for its costs as they become due.  What Plaintiff Excess Underwriters' argument ignores, however, is that in order for the American Club to have a duty to pay Lafarge's costs, the Barge ING 4727 would have to have been entered with the American Club, pursuant to the express language of Rule 2.   Because the Court has already determined that Lafarge's Certificate of Entry did not extend coverage to the Barge ING 4727, the American Club cannot be found liable for Lafarge's defense costs.

Moreover, given that the claims in the captioned matter concern the P & I Policy, the cases cited to by Plaintiff Excess Underwriters are inapposite.  Three of the four cases Plaintiff Excess Underwriters use to support their argument that an insurer's duty to pay defense costs arises when the insured incurs the expenses actually concern insurance policies that are

completely different from the P & I Policy.[4]  In *Trustees of Princeton University v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, the policy contained specific language, not contained in the P & I Policy, that the Insurer would "advance Defense Costs of such Claim prior to its final disposition."  No. 650202/06, 2007 WL 1063870, at *3 (N.Y. Sup. Ct. April 10, 2007).  Plaintiff Excess Underwriters also cite to *In re WorldCom, Inc. Securities Litigation,* 354 F. Supp. 2d 455, 459 (S.D.N.Y. 2005), and *Wedtech Corp. v. Federal Ins. Co.*, 740 F. Supp. 214, 221 (S.D.N.Y. 1990), which both concern Director and Officer ("D & O") Liability policies rather than indemnification policies.

Thus, Plaintiff Excess Underwriters' contentions notwithstanding, the American Club has never had an obligation to reimburse Lafarge for its defense costs, and this Court's determination that the American Club did not provide coverage for the Barge ING 4727 under the Certificate of Entry it issued to Lafarge effectively precludes Lafarge from seeking reimbursement for its costs from the American Club.   Accordingly, Plaintiff Excess Underwriters' Summary Judgment Motion must be denied.

### B.   The "Other Insurance" Clauses Provide Further Support That Lafarge's Certificate of Entry Does Not Provide Coverage for Liabilities Relating to the Barge ING 4727

The Plaintiff Excess Underwriters further err in arguing that because the American Club Rules contain a "no liability" or  "escape" clause while the Primary Policy contains an "excess" clause, the American Club is required to contribute and indemnify Lafarge first for any liabilities relating to the Barge ING 4727.  Their argument not only ignores this Court's determination that the American Club did not provide coverage for liabilities relating to the breakaway of the Barge

---

[4]      In addition, *Nu-Way Environmental, Inc. v. Planet Ins. Co.*, No. 95 Civ. 573, 1997 WL 462010 (S.D.N.Y. Aug. 12, 1997), does not support Plaintiff Excess Underwriters' contentions in light of the fact that this Court has already determined that the American Club did not provide coverage for the Barge ING 4727 under Lafarge's Certificate of Entry.

ING 4727, but also is purportedly made through case law that actually further establishes that the American Club provides no coverage for liabilities relating to the Barge ING 4727.

Under New York Law, "no liability" clauses, like the one found in the American Club's rule are valid and enforceable and given effect by courts. *United Parcel Service, Inc. v. Amer. Motorists Ins. Co.*, 12 A.D.3d 437 (2d Dep't 2004). The Primary Excess Underwriters cite three cases that stand for an exception to the general rule, namely that where there is a conflict between a primary and an excess insurer the primary insurer cannot escape liability on the basis of a no-liability clause. *See* Summary Judgment Memorandum at pp. 18-19.  In these cases, the policies contained excess clauses for very specific situations, and thus it was clearly the intent of the parties for one policy to be primary and the other to be excess in those specific instances.[5] As the cases cited by the Excess Underwriters explain, the rationale for that rule is that excess insurance does not generally constitute other applicable insurance coverage as contemplated by a general "no liability" clause. *See Kipper v. Universal Underwriters Group*, 304 A.D.2d 62, 65 (4th Dep't 2003); *Utica Mut. Ins. Co. v. Travelers Ins. Co.,* 213 A.D.2d 983 (4th Dep't 1995); *Mosca v. Ford Motor Credit Co.*, 150 A.D.2d 656, 658 (2d Dep't 1989).

Moreover, courts should not enforce an excess insurance clause against an insurer whose policy bore an extremely remote connection to the specific risk in question. *See Estee Lauder International, Inc., v. Worldwide Marine Services, Inc.*, No. 87 CIV. 7498 (RWS), 1989 WL 126067, at *6 (S.D.N.Y. Oct. 13, 1989) (enforcing an escape clause and explaining that "this clearly is not a case in which enforcement of the escape clause would work some unfair actuarial surprise upon the carrier against whom enforcement of the escape clause is sought").  Instead,

---

[5] *See Kipper v. Universal Underwriters Group*, 304 A.D.2d 62, 65 (4th Dep't 2003) (plaintiff's policy provided that coverage provided for a vehicle not owned by insured "shall be excess over any other collectible insurance."); *Utica Mut. Ins. Co. v. Travelers Ins. Co.,* 213 A.D.2d 983 (4th Dep't 1995) (policy provided coverage for loss to property, but excluded property covered under any other policy in which it is more specifically described, except for the excess of the amount due).

courts should enforce excess insurance clauses where the coverage provided by the policies at issue is concurrent.  *See Society of Professionals in Dispute Resolution, v Mt. Airy Ins. Co.*, No. Civ.A.3:97-CV-0071-D, Civ.A.3:97-CV-0090-D, 1997 WL 711446, at *3 (N.D. Tex Nov. 7, 1997).

In this case, as the Plaintiff Excess Underwriters themselves point out, NYMAGIC issued a Primary Policy that specifically provided coverage for the breakaway of vessels from Lafarge's New Orleans facility.  The Excess Policy also specifically provides excess coverage for the breakaway of vessels from Lafarge's New Orleans facility.  This is precisely the type of other insurance that was contemplated by the "no liability" clause in the American Club Rules, as Lafarge had both primary and excess coverage in place for the loss in question.

Lafarge's policy with NYMAGIC and its Certificate of Entry with the American Club both provide primary coverage, but for different types of risks.  While the Primary Policy issued by NYMAGIC specifically provides coverage for liabilities relating to the breakaway of vessels from Lafarge's marine terminals, Lafarge's coverage with the American Club was limited to providing P & I cover for vessels owned by Lafarge.  Moreover, NYMAGIC has not even disputed coverage and has been paying defense costs.  Accordingly, the cases cited by the Excess Underwriters are inapplicable to the case at hand, and Lafarge's no liability clause should be enforced.

## CONCLUSION

Plaintiff Excess Underwriters' Summary Judgment Motion on its claims against the American Club is improper in light of this Court's prior determination that the American Club did not provide coverage under Lafarge's Certificate of Entry for claims arising from the breakaway of the Barge ING 4727.  In addition, Plaintiff Excess Underwriters are not the proper parties to be moving for summary judgment on claims concerning Lafarge's coverage under the

Certificate of Entry.  Finally, Plaintiff Excess Underwriters misunderstand and mischaracterize the nature of the P & I Policy, and upon this misunderstanding Plaintiff Excess Underwriters make baseless claims concerning coverage, for which they have provided no support.

Accordingly, and for all of the foregoing reasons, the American Club respectfully requests that this Court deny Plaintiff Excess Underwriters' Summary Judgment Motion, and award such additional relief as this Court deems just and proper.

Dated:   New York, New York
            December 11, 2008

THACHER PROFFITT & WOOD LLP

By:     /s/ John M. Woods
        John M. Woods
        jwoods@tpw.com
        Jennifer S. Kozar
        jkozar@tpw.com

        Two World Financial Center
        New York, New York 10281
        (212) 912-7400

        *Attorneys for American Steamship Owners*
        *Mutual Protection and Indemnity*
        *Association, Inc.*