**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>      - against -<br><br>LAFARGE NORTH AMERICA, INC.,<br><br>                    Defendant. | **ECF CASE**<br><br>Case No.: 05 CV 9612 (CSH) (AJP) |
| THE NORTHERN ASSURANCE COMPANY OF AMERICA and AMERICAN HOME ASSURANCE COMPANY,<br><br>                    Plaintiffs,<br><br>      - against -<br><br>LAFARGE NORTH AMERICA, INC. and AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC.,<br><br>                    Defendants. | **ECF CASE**<br><br>Case No.: 08 CV 3289 (CSH) (AJP) |
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY,<br><br>                    Intervenor-Plaintiff,<br><br>      - against -<br><br>LAFARGE NORTH AMERICA, INC., and AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC.,<br><br>                    Defendants. | |

**AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE CAUSES OF ACTION BY NEW YORK MARINE AND GENERAL INSURANCE COMPANY, THE NORTHERN ASSURANCE COMPANY OF AMERICA AND AMERICAN HOME ASSURANCE COMPANY AGAINST THE AMERICAN <u>CLUB OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT</u>**

**MAY IT PLEASE THE COURT:**

Defendant American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "American Club"), by and through its attorneys, Thacher Proffitt & Wood LLP, hereby submits this memorandum of law in further support of its motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss the causes of action against the American Club contained in the declaratory judgment actions brought by (i) plaintiffs American Home Assurance Company and the Northern Assurance Company of America, and (ii) intervenor plaintiff New York Marine and General Insurance Company (collectively, the "Excess Underwriters"), which are consolidated under Case No. 08 CV 3289, or alternatively, to grant the American Club summary judgment under Federal Rule of Civil Procedure 56 declaring that the American Club does not insure Defendant Lafarge North America, Inc. ("Lafarge") for liabilities relating to the breakaway of Ingram Barge Company's Barge ING 4727 from Lafarge's New Orleans terminal facility on or about August 29, 2005.

<u>**PRELIMINARY STATEMENT**</u>

The Excess Underwriters' Memorandum of Law in Opposition to the American Club's Motion to Dismiss (the "Memorandum in Opposition") does not include any new arguments that effectively refute the reasons why the Excess Underwriters' claims should be dismissed or decided summarily in the American Club's favor, as set forth in the American Club's motion papers. As noted in the American Club's motion papers, the Excess Underwriters are neither

2

parties to nor intended beneficiaries of the insurance policy issued by the American Club to Lafarge, and the case law and other authorities that the Excess Underwriters seek to rely upon fail to show that they have any basis for standing to assert claims against the American Club regarding coverage under that policy.  Moreover, while Excess Underwriters argue that *res judicata* should not bar their claims against the American Club, it is clear that (1) Excess Underwriters were in privity with Lafarge through their marine liabilities excess policy; and (2) their interests are aligned with, and identical to, Lafarge's with respect to the issue of whether the American Club provides coverage for liabilities relating to the breakaway of the Barge ING 4727.  As a result, Excess Underwriter's actions are barred by the doctrine of *res judicata* and should be dismissed.

## ARGUMENT

I.  **EXCESS UNDERWRITERS' CLAIMS MUST BE DISMISSED BECAUSE THEY LACKING STANDING TO ADJUDICATE THE ISSUE OF COVERAGE UNDER LAFARGE'S INSURANCE POLICY WITH THE AMERICAN CLUB**

   A.  **Excess Underwriters Are Not Parties To Or Intended Beneficiaries of Lafarge's Certificate of Entry**

The Excess Underwriters are not parties to the insurance contract between the American Club and Lafarge and therefore lack standing to assert claims against the American Club regarding the issue of coverage provided thereunder.  While the Excess Underwriters argue that they need not be identified at the time Lafarge's Protection and Indemnity ("P&I") policy with the American Club was placed in order to be intended beneficiaries of that policy and thus entitled to litigate the issue of coverage, they are unable to establish that they were <u>ever</u> recognized as intended beneficiaries of the policy.  Indeed, the Excess Underwriters are not mentioned in Lafarge's Certificate of Entry with the American Club, and there is no suggestion that the American Club was even aware of the Excess Underwriters or their coverage.  This, of

3

course, is to be expected, since the American Club and the Excess Underwriters insured completely different risks. There would be no need for the coverages to overlap, and indeed any such overlap would be patently unintentional, not to mention wasteful of Lafarge's premium dollars. Under these circumstances, it simply cannot be argued that Lafarge, let alone the American Club, ever intended the Excess Underwriters to be third-party beneficiaries of the insurance contract between the American Club and Lafarge.

Moreover, the Excess Underwriters' reliance on case law and other authorities recognizing the duties of a primary insurer to establish that Lafarge intended to give them the benefit of its contract with the American Club is misguided at best since it is clear that the American Club provided P&I insurance – and not primary marine insurance underlying the Excess Underwriters' coverage – to Lafarge. Specific primary marine liabilities coverage was instead provided to Lafarge by New York Marine and General Insurance Company ("NYMAGIC"), as recognized by NYMAGIC itself. Accordingly, the Excess Underwriters cannot show that they were intended beneficiaries of the contract between Lafarge and the American Club, and their claims against the American Club must be dismissed.

> **B.** **Excess Underwriters Have No Causes of Action Against the American Club in Light of This Court's Previous Decision that the American Club Did Not Provide Coverage for the Barge ING 4727**

Plaintiff Excess Underwriters' argument that it has an independent cause of action against the American Club for breach of duty of good faith is clearly unfounded in light of this Court's prior determination that the American Club does not insure Lafarge against losses arising from the breakaway of the Barge ING 4727, since that vessel is not entered with the American Club. Based on that ruling, the American Club cannot be held responsible for Lafarge's defense costs, and thus cannot breach a duty it did not owe. *See Island Lathing & Plastering, Inc. v. Travelers*

*Indemnity Co.*, 161 F. Supp. 2d 278, 284 (S.D.N.Y. 2001) (holding that insurers had no duty to defend insured in separate action because insured's allegations did not bring the case within the coverage of the policies issued by the insurers); *see also 47 Mamaroneck Ave. Corp. v. Hartford Fire Ins. Co.*, 50 A.D.3d 952, 953 (2d Dep't 2008) (upholding lower court's decision granting insurer's motion for summary judgment on issue of coverage, in which the court found that there was no duty to defend because there was no coverage under policy of insurance).  Accordingly, Excess Underwriters do not have a right of action against the American Club, independent or otherwise, and their claims against the American Club must be dismissed.

## II.     THE EXCESS UNDERWRITERS' ACTIONS AGAINST THE AMERICAN CLUB ARE BARRED BY THE DOCTRINE OF *RES JUDICATA*

This Court already determined that the Chartered Barges Clause in Lafarge's Certificate of Entry with the American Club does not provide cover to Lafarge for the Barge ING 4727. Contrary to the Excess Underwriters' assertions, the Excess Underwriters' claims against the American Club are barred under the doctrine of *res judicata* as a result of this Court's coverage decision in favor of the American Club because Lafarge and the Excess Underwriters were in privity.  Moreover, even if the Excess Underwriters and Lafarge were not in privity, *res judicata* would still bar the Excess Underwriters' claims because the Excess Underwriters' interests are aligned with, and were adequately represented by, Lafarge.

### A.     Excess Underwriters and Lafarge Were in Privity

The Excess Underwriters and Lafarge were in contractual privity through the marine liabilities excess policy issued to Lafarge by the Excess Underwriters.  Indeed, while the Excess Underwriters assert that they have conflicting interests with Lafarge with respect to other coverage issues, they do not dispute that, with respect to the actual issue decided by this Court (*i.e.*, whether or not the American Club provides coverage for liabilities relating to the

breakaway of the Barge ING 4727), the Excess Underwriters' interests are aligned with Lafarge's. Both Lafarge and the Excess Underwriters would benefit from a decision that the American Club provided coverage for the Barge ING 4727, and while the Excess Underwriters may not be pleased with the Court's determination that no such coverage by the American Club exists, they are not entitled to circumvent that decision by falsely alleging that their interests are not aligned with Lafarge's.

In addition, the cases relied upon by the Excess Underwriters to show that Lafarge could not have represented their interests not only fail to support the Excess Underwriters' argument, but also <u>support</u> the argument that the claims are barred by the doctrine of *res judicata*. As these cases explain, insurers and insureds are in privity for the purpose of determining whether or not issue preclusion attaches to a prior adjudication. *See Greenway Center, Inc., v. Essex Ins. Co.*, 475 F.3d 139, 149 (3d Cir. 2007) (stating "in general, for issue preclusion purposes, an insurer is in privity with its insured"); *Levitz v. Nationwide Ins. Co.*, 167 F. Supp 2d 748, 750 (E.D. Pa. 2001). Moreover, "insurers and insureds are in privity for assessing the [issue preclusion] consequences of the prior adjudication of a particular issue unless in that prior adjudication the interests of the insured and insurer conflicted on that issue." *Levitz*, 167 F. Supp at 750. Here, there is simply no conflict between Lafarge and the Excess Underwriters with respect to their positions on the issue of whether the American Club provided coverage for the Barge ING 4727. Nothing shows this clearer than the Excess Underwriters' own Motion for Summary Judgment in the instant action, which reads very much like an appellate brief and asserts the identical arguments already raised by Lafarge in its Opposition to the American Club's Motion for Summary Judgment. The very arguments raised by the Excess Underwriters here were already rejected by this Court in the American Club's declaratory judgment action, and the Court should

therefore find that the Excess Underwriters' claims against the American Club are barred by the doctrine of *res judicata*.

### B. Excess Underwriters' Interests were Adequately Represented

Even if this Court were to find that the privity requirement of *res judicata* is not satisfied here, this doctrine would still bar the Excess Underwriters' claims because their interests were adequately represented by Lafarge. While the Excess Underwriters assert the same faulty argument when claiming that the "adequate representation" exception to the privity requirement is not satisfied – namely, that the Excess Underwriters' and Lafarge's interests are not aligned – the Excess Underwriters' and Lafarge's interests in the actual coverage issue decided by this Court are, as discussed *supra*, not only clearly aligned, but are in fact identical.

Finally, the Excess Underwriters' assertion that the Court has not protected its interests by denying their various attempts to interfere in the coverage dispute between the American Club and Lafarge is incorrect. The test for determining if a court took care to protect a non-party's interests is not whether or not the non-party was permitted to participate in the action. Indeed, were that the case, there would be no need for the "adequate representation" exception at all. Moreover, this Court did protect the Excess Underwriters' interests when it recognized, on page five (5) of its August 4, 2008 Memorandum Opinion and Order that the resolution of the American Club's action against Lafarge would substantially narrow the issues and ultimately save the parties from needless or duplicative expenditure of resources.

### CONCLUSION

For all of the foregoing reasons, as well as the reasons discussed in the Memorandum of Law In Support of the Motion to Dismiss, this Court should grant the American Club's Motion to Dismiss the Causes of Action by the Excess Underwriters, or in the alternative grant the

American Club Summary Judgment and find, as it already has, that Lafarge's Certificate of Entry did not provide cover for the Barge ING 4727.

Dated: New York, New York
December 22, 2008

THACHER PROFFITT & WOOD LLP

By: /s/    John M. Woods

John M. Woods
jwoods@tpw.com
Jennifer S. Kozar
jkozar@tpw.com

Two World Financial Center
New York, New York 10281
(212) 912-7400

*Attorneys for American Steamship Owners Mutual Protection and Indemnity Association, Inc.*